IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. _____ ) ) Judge _____ |
| ANITA ALVAREZ, Cook County State's Attorney, in her official capacity, | ) ) ) |
| Defendant. | ) ) |

# COMPLAINT

Plaintiff the American Civil Liberties Union of Illinois ("the ACLU"), by its attorneys, as its Complaint against defendant Anita Alvarez, in her official capacity as the Cook County State's Attorney, states as follows:

## I. NATURE OF THE CASE

1. This is a civil rights action challenging the constitutionality of the Illinois Eavesdropping Act, 720 ILCS 5/14 ("the Act"), as applied to the audio recording of police officers, without the consent of the officers, when (a) the officers are performing their public duties, (b) the officers are in public places, (c) the officers are speaking at a volume audible to the unassisted human ear, and (d) the manner of recording is otherwise lawful. This application of the Act violates the First Amendment to the U.S. Constitution. The ACLU seeks declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201 *et seq*.

2. For nearly a century, the ACLU has sought to protect and to expand the civil liberties and civil rights of all persons in Illinois. It has engaged in this

1

constitutionally protected pursuit through public education, including publication through a variety of media, and advocacy before courts, legislatures, and administrative agencies. The corollary right to gather, receive, and record information on matters of public importance relating to civil liberties and civil rights is integral to, and a necessary component of, these other protected activities.

3. In the exercise of these rights, the ACLU intends to undertake a program of monitoring police activity in public places by means including common audio/video recording devices. Specifically, the ACLU intends to audio record police officers, without the consent of the officers, when (a) the officers are performing their public duties, (b) the officers are in public places, (c) the officers are speaking at a volume audible to the unassisted human ear, and (d) the manner of recording is otherwise lawful (hereinafter "the ACLU program"). Where appropriate, the ACLU intends to disseminate such recordings to the public, and also to use these recordings to petition the government for redress of grievances through its advocacy program.

4. The Act makes audio recording police officers in these circumstances a felony. Due to a reasonable fear of arrest and prosecution, the ACLU is restrained from engaging in this conduct. This suit seeks a declaration that such conduct is constitutionally protected, and an injunction against enforcement of the Act as applied to the ACLU program.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4).

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

### III. THE PARTIES

7. The ACLU is a non-profit, non-partisan, statewide organization with more than 20,000 members and supporters dedicated to protecting and expanding the civil rights and civil liberties guaranteed by the Constitutions and civil rights laws of the United States and the State of Illinois.

8. Defendant Anita Alvarez is the Cook County State's Attorney. In this capacity, she is charged with the enforcement of the criminal laws of the State of Illinois, including the Act. She is sued solely in her official capacity for purposes of declaratory and injunctive relief.

### IV. FACTS

**A.   The right to gather, receive, and record information**

9. The right to gather, receive, and record information is grounded in the Free Speech Clause of the First Amendment. This right is further grounded in:

    (a)   the Petition Clause of the First Amendment, if the purpose of gathering, receiving, or recording the information is to use it to petition government for redress of grievances; and

    (b)   the Free Press Clause of the First Amendment, if the purpose of gathering, receiving, or recording the information is to publish and disseminate it to other people.

10. This First Amendment right to gather, receive, and record information includes the right to audio record police officers in the circumstances described herein.

**B.   The ACLU's exercise of its right to gather, receive, and record information**

11. In pursuing its objectives of protecting and expanding civil rights and civil

liberties, the ACLU regularly gathers, receives, and records information from numerous sources, including by observing events in public places.

12. After gathering, receiving, and recording information, the ACLU regularly publishes and disseminates that information to the general public, and regularly presents that information to government bodies as part of the ACLU's efforts to petition the government for redress of grievances.

13. The ACLU regularly engages in its own expressive activity in public places, and regularly records its own expressive activity at these events.

C. **The ACLU program**

14. The ACLU often monitors and observes police conduct in public places. In doing so, the ACLU seeks not only to observe and record the manner in which government employees perform their duties, but also to improve police practices, and to deter and detect any unlawful police interference with constitutional liberties. For example, the ACLU often monitors and observes police conduct at expressive activity in public places, including when the ACLU is engaged in its own expressive activity.

15. The ACLU often gathers, receives, and records information about police practices, and then publishes and disseminates that information to the general public, and uses that information to petition government for redress of grievances.

16. The ACLU intends to undertake the aforementioned program of audio recording police officers, and using and disseminating such recordings. This program would include recording police conduct at expressive activity in public places, including when the ACLU is engaged in its own expressive activity.

### D. A benefit of audio recording the police

17. While most police officers perform their duties in a lawful manner, some police officers abuse their authority.

18. In many cases, the only evidence of what happened during an encounter between police officers and civilians – including whether police officers and/or civilians behaved lawfully – will be the conflicting testimony of police officers and civilians.

19. In many cases, audio recordings of police-civilian encounters will provide critical evidence that is not available from testimony, photographs, or silent videos.

20. Indeed, on many occasions in the last decade, audio/video recordings made by civilians of police-civilian encounters have helped to resolve testimonial disputes about alleged police misconduct. Sometimes these audio/video recordings have tended to disprove allegations of police misconduct, and sometimes they have tended to prove allegations of police misconduct.

21. Federal, state, and local law enforcement agencies have deployed tens of thousands of audio/video recording devices for purposes of documenting certain interactions between police officers and civilians. For example, many police squad cars are equipped with audio/video recording devices that document traffic stops. One law enforcement purpose of these audio/video recording devices is to deter and detect police misconduct, and to disprove false accusations of police misconduct.

22. Indeed, as more fully explained below, *see infra* ¶¶ 26-27, the Illinois Eavesdropping Act exempts audio/video recordings made by police of conversations between police and civilians during traffic stops, in order to protect both the civilians and the officers from false testimony about these conversations. There is no constitutionally

valid basis for allowing police to make such audio recordings, while criminalizing the conduct of civilians who do so.

E. **The Illinois Eavesdropping Act**

23. The Illinois Eavesdropping Act criminalizes the use of a machine to record certain conversations – even if the conversations are not private. Specifically:

    (a) The Act provides that "[a] person commits eavesdropping when he . . . [k]nowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation . . . unless he does so . . . with the consent of all of the parties to such conversation . . . ." 720 ILCS 5/14-2(a)(1)(A).

    (b) The Act defines "conversation" to mean "any oral communication between 2 or more persons *regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation*." 720 ILCS 5/14-1(d) (emphasis added).

    (c) The Act defines "eavesdropping device" to include "any device capable of being used to hear or record oral conversation . . . ." 720 ILCS 5/14-1(a).

    (d) The Act provides that a first offense of eavesdropping is a Class 4 felony, 720 ILCS 5/14-4(a), which is punishable by a sentence of imprisonment of one to three years, 730 ILCS 5/5-4.5-45.

24. The legislative purpose of extending the Act to non-private conversations was to criminalize civilian audio recordings of police officers performing their public duties in public places. Specifically:

    (a) In 1986, in *People v. Beardsley*, 115 Ill. 2d 47 (Ill. 1986), the Illinois Supreme Court held that an element of the criminal offense created by the then-

existing version of the Act was "circumstances which entitle [the parties to a conversation] to believe that the conversation is *private* and cannot be heard by others who are acting in a lawful manner." 115 Ill. 2d at 53 (emphasis added). The *Beardsley* case involved a motorist who audio recorded a police officer during a traffic stop. *Id.* at 48-49. The Court held that this motorist did not violate the Act, because the conversation was not private.

        (b)      Eight years later, in 1994, Illinois amended the Act with Public Act 88-677, also known as House Bill 356. This new law adopted the current definition of "conversation," to wit: "any oral communication between 2 or more persons regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation."

        (c)      On May 19, 1994, during Senate floor debate regarding this bill, the Senate sponsor stated that the bill had earlier passed out of that chamber "to reverse the Beardsley eavesdropping case . . . ." *See* Tr. at p. 42.

    25.      In this regard, the current Illinois Eavesdropping Act is abnormal. The federal ban on audio recording certain conversations, and the vast majority of such state bans, extend only to private conversations – as the Illinois Eavesdropping Act did, before it was amended in 1994 for the purpose of reversing the *Beardsley* decision. Only a handful of states have extended their eavesdropping bans to non-private conversations. And most of those states, unlike Illinois, do not extend their prohibitions to open and obvious recording, as opposed to secret recording.

26.     The Illinois Eavesdropping Act exempts certain audio recordings by law enforcement officials of conversations between law enforcement officials and members of the general public.  Examples include:

(a)     Conversations recorded "simultaneously with the use of an in-car video camera" during "traffic stops, pedestrian stops," and similar events.  720 ILCS 5/14-3(h).

(b)     Conversations with a civilian who is "an occupant of a police vehicle."  720 ILCS 5/14-3(h-5).

(c)     Conversations recorded "during the use of a taser or similar weapon or device" if the device is equipped with audio recording technology.  720 ILCS 5/14-3(h-10).

27.     The legislative purpose of the statutory exemptions in the preceding paragraph is to deter and detect police misconduct, and rebut false accusations of police misconduct.  Specifically:

(a)     In 2009, Illinois amended the Act with Public Act 96-670, also known as House Bill 1057.  This new law amended the foregoing exemption (h) to its current form, and created the foregoing exemptions (h-5) and (h-10).

(b)     On April 2, 2009, during House debate regarding this bill, the House sponsor stated as follows the legislative purpose:

> When there's audio, then there is no question as to what was said or what wasn't said and if someone is accused of doing something or saying something, this is the proof that they would have as a citizen also, not only for protection of law enforcement, but for the citizens to have the proof in hand as to what actually happened at that particular [moment].

*See* Tr. at pp. 83-84. *See also id.* at p. 84 (stating that such audio recording provides "protection for both" police and civilians).

28. Police officers performing their public duties in public places, and speaking at a volume audible to the unassisted human ear, have no reasonable expectation that the words they speak are private and will not be recorded, published, and disseminated.

**F.     Application of the Act to audio recording the police**

29. As intended by the Illinois General Assembly, police officers and prosecutors have used the Act to arrest and prosecute members of the general public who made audio recordings of police officers performing their public duties in public places and speaking at a volume audible to the unassisted human ear.

30. For example, defendant the Cook County State's Attorney currently is prosecuting a civilian for allegedly violating the Act by audio recording a police officer who was arresting him in a public place. The civilian moved to dismiss, arguing that the application of the Act to his audio recording violated the First Amendment. Defendant successfully opposed the motion. The eavesdropping charges are now pending. *See People v. Drew*, No. 10-cr-4601 (Cook County Circuit Ct.).

31. At least three other State's Attorneys in Illinois have brought eavesdropping charges under the Act against civilians who made audio recordings of police officers performing their public duties in public places:

    (a)     The Champaign County State's Attorney in 2004. *See People v. Thompson*, No 04-cf-1609 (6th Judicial Circuit Ct.).

(b)     The Crawford County State's Attorney in 2009.  *See People v. Allison*, No. 09-cf-50 (2nd Judicial Circuit Ct.).

(c)     The DeKalb County State's Attorney in 2009.  *See People v. Parteet* (16th Judicial Circuit Ct.).

**G.    Necessity of and entitlement to injunctive relief**

32.    The ACLU would like to undertake the aforementioned program of making audio recordings of police officers.

33.    The ACLU has a reasonable fear that if it does so, defendant the Cook County State's Attorney will prosecute the ACLU for violation of the Act.  The ACLU is thus chilled and deterred by the Act and by defendant from undertaking the aforementioned program.

34.    Unless enjoined by this Court, defendant will continue to prosecute, pursuant to the Act, people who audio record police officers performing their public duties in public places.

35.    The ACLU is suffering, and will continue to suffer, irreparable harm as a result of the denial of the opportunity to undertake the aforementioned program.

36.    The ACLU has no adequate remedy at law.

## V. CLAIM FOR RELIEF

37.    The allegations of paragraphs 1 through 36 are realleged and incorporated by reference as if fully set forth herein.

38.    The Act violates the First Amendment to the U.S. Constitution, as applied to the audio recording of police officers, without the consent of the officers, when (a) the officers are performing their public duties, (b) the officers are in public places, (c) the

officers are speaking at a volume audible to the unassisted human ear, and (d) the manner of recording is otherwise lawful.

39. Among other things, this application of the Act is unlawful because:

(a) The Free Speech Clause of the First Amendment protects the right to gather, receive, or record the information at issue herein.

(b) The Free Speech Clause and the Petition Clause of the First Amendment protect the right to gather, receive, or record the information at issue herein for purposes of using that information to petition government for redress of grievances.

(c) The Free Speech Clause and the Free Press Clause of the First Amendment protect the right to gather, receive, or record the information at issue herein for purposes of disseminating and publishing that information to other people.

## VI. PRAYER FOR RELIEF

WHEREFORE, the ACLU respectfully requests the following relief:

A. Entry of a declaratory judgment holding that the Act violates the First Amendment, as applied to the audio recording of police officers, without the consent of the officers, when (a) the officers are performing their public duties, (b) the officers are in public places, (c) the officers are speaking at a volume audible to the unassisted human ear, and (d) the manner of recording is otherwise lawful.

B. Entry of a preliminary injunction, and then a permanent injunction, that enjoins defendant the Cook County State's Attorney from prosecuting plaintiff the ACLU, and its officers, board members, employees, agents, and volunteers, under the Act for audio recording police officers, without the consent of the officers, when (a) the officers are performing their public duties, (b) the officers are in public places, (c) the

officers are speaking at a volume audible to the unassisted human ear, and (d) the manner of recording is otherwise lawful.

  C. Award the ACLU its reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

  D. Award such other and further relief as this Court may deem just and proper.

  DATED: August 18, 2010

Respectfully submitted:

\_\_/s/ Adam Schwartz\_\_\_\_
Counsel for plaintiff

| | |
|---|---|
| HARVEY GROSSMAN | RICHARD J. O'BRIEN |
| ADAM SCHWARTZ | LINDA R. FRIEDLIEB |
| KAREN SHELEY | MATTHEW D. TAKSIN |
| Roger Baldwin Foundation of ACLU, Inc. | Sidley Austin LLP |
| 180 N. Michigan Ave. Suite 2300 | One South Dearborn |
| Chicago, IL 60601 | Chicago, IL 60603 |
| (312) 201-9740 | (312) 853-7000 |