## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| THE AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS, | |
| Plaintiff, | 10 C 5235 |
| vs. | Honorable Judge Suzanne B. Conlon |
| ANITA ALVAREZ, | |
| Defendant. | |

### DEFENDANT'S MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT

Defendant, ANITA ALVAREZ, State's Attorney of Cook County ("State's Attorney Alvarez" or the "State's Attorney"), through her assistants, PATRICK T. DRISCOLL, JR., PAUL A. CASTIGLIONE, and JAMES C. PULLOS, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, moves this Honorable Court to dismiss all claims. In support of this motion, Defendant state as follows:

### INTRODUCTION

On August 19, 2010, plaintiff American Civil Liberties Union of Illinois ("ACLU" or "Plaintiff") filed its Complaint (hereinafter, the "Complaint" or "Compl.") against State's Attorney Alvarez seeking declaratory and injunctive relief from prosecution under the Illinois Eavesdropping Act, 720 ILCS 5/14 ("the Act"). *See* Compl. ¶ 1. Plaintiff alleges that it intends to undertake a program of monitoring police activity, by means of audio recording police officers, without consent, while the officers are engaged in public duties in a public place, speaking at volume audible to the human ear, and the manner of recording is "otherwise lawful." Compl. ¶ 3. Plaintiff alleges that it has a right under the First Amendment to engage in such conduct, citing various principles such as the right to free speech, to petition government for

redress of injuries and of a free press. Compl. ¶¶ 9-22. Plaintiff contends that the Act inhibits these First Amendment rights because the Act will subject Plaintiff to prosecution for audio recording police officers. Compl. ¶¶ 23-34.

## STANDARD OF REVIEW

In deciding a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, this Court may properly look beyond the jurisdictional allegations of the Complaint and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). Under Rule 12(b)(6) a claim may be dismissed if, as a matter of law, "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (*quoting Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984)). While a district court will dismiss a complaint when no relief can be granted under a set of facts consistent with the allegations, the court should not strain to find inferences not plainly apparent from the face of the complaint. *Hishon*, 467 U.S. at 73.

The pleading standard in Rule 8 does not require more than detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* A complaint will not suffice if it tenders naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2008).

## ARGUMENT

### I. PLAINTIFF LACKS STANDING TO BRING A CLAIM FOR INJUNCTIVE RELIEF AGAINST THE STATE'S ATTORNEY.

Plaintiff does not have standing to bring a claim for injunctive relief against the State's Attorney. Unless a case or controversy is present, no federal court has the jurisdiction to decide whether a federal, state, or local law is constitutional. *Golden v. Zwickler*, 394 U.S. 103, 110 (1969); *see also Alvarez v. Smith*, 130 S. Ct. 576, 580 (2009). Standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In order to establish standing for prospective injunctive relief, a plaintiff must show, *inter alia*, that it is under threat of an actual and imminent injury in fact. *Summers v. Earth Island Institute*, 129 S. Ct. 1142, 1149 (2009).

A person need not risk arrest before bringing a pre-enforcement challenge under the First Amendment. *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2717 (2010). Nonetheless, in order to present a justiciable controversy, a party must assert more than a wholly speculative possibility of criminal consequences. *Babbit v. United Farm Workers Nat'l Union*, 442 U.S. 289, 302 (1979). *See also Goldhamer v. Nagode*, ___ F.3d ___, 2010 U.S. App. LEXIS 18325 (7th Cir. September 2, 2010) (holding that the plaintiff lacked standing to bring a facial challenge to a law that did not apply by its terms to their desired conduct).

In *Goldhamer*, the plaintiff sought prospective relief: an order enjoining the City of Chicago from enforcing a provision of Chicago's Municipal Code prohibiting disorderly conduct on the grounds that the provision violated the First Amendment. The Seventh Circuit recognized that a plaintiff bringing such a challenge "must show that it has `an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder.'" *Goldhamer*, 2010 U.S. App.

LEXIS 18325 at *12, *citing Babbit*, 442 U.S. at 298. A person who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have expressly threatened to prosecute him; however, the statute must cover the conduct that the person intends to engage in. *Majors v. Bell*, 317 F.3d 719, 721 (7th Cir. 2003).

Although standing in no way depends on the merits of the Plaintiff's contention, standing does turn on the nature and source of the claim asserted. *Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009). Standing requires litigants to establish an injury to an interest that the law protects when it is wrongfully invaded and this is quite different from requiring them to establish a meritorious legal claim. *Id.* However, while a litigant need not definitively establish that a right of his has been infringed, he "must have a colorable claim to such a right" to satisfy Article III. *Id.*

"Ripeness is a justiciability doctrine designed to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003). Ripeness is related to standing in that if a threatened injury is sufficiently imminent to establish standing, the constitutional requirements of the ripeness doctrine will necessarily be satisfied. *Bauer v. Shepard*, 634 F. Supp. 2d 912, 936 (N.D. Ind. 2009). The difference between an abstract question calling for an advisory opinion and a ripe "case or controversy" is one of degree, not discernable by any precise test. *Babbitt*, 442 U.S. at 297. To demonstrate ripeness in a pre-enforcement challenge, a Plaintiff must show that the issues are fit for judicial decision and that the Plaintiff will suffer a hardship if the court withholds consideration. *Metro. Milwaukee Ass'n of Commerce v. Milwaukee County*, 325 F.3d 879, 882 (7th Cir. 2003). Hardship is established if (1) enforcement is certain, only delayed, or (2) even if the enforcement is not certain, the mere threat of future

enforcement has a present concrete effect and a later challenge will cause irremediably adverse consequences. *Id.*

Based upon the allegations in the Complaint, there are two distinct types of situations where Plaintiff intends to audio record the police. In the first, where an ACLU member wishes to audio record criminal conduct by the police directed toward him or her, Plaintiff lacks standing to bring a facial First Amendment challenge because the Act exempts such recording from criminal liability. In the second, where Plaintiff seeks to audio record unlawful conduct by the police directed toward some third party, Plaintiff lacks standing because the allegations in the Complaint fail to demonstrate a threat of imminent injury.

### A.   Plaintiff lacks standing because It is not under threat of an imminent injury.

Plaintiff and its members are not under threat of an actual and imminent injury. "The irreducible constitutional minimum of standing" requires an "injury in fact," which is an invasion of a legally protected interest which is: (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Lujan*, 504 U.S. at 560 (citations omitted). "Plaintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983), *quoting Baker v. Carr*, 369 U.S. 186, 204 (1962). Abstract injury is not enough. *Id.* Plaintiff must show that it "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged official conduct and the injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." *Id.* at 101-102 (internal citations omitted). For two reasons, ACLU cannot meet this burden.

First, the complaint alleges that some members of the ACLU wish to audio record police misconduct. Compl. ¶¶ 18-22. Indeed, Plaintiff alleges that audio recordings can determine

"whether police officers and/or civilians behaved lawfully." Compl., ¶ 18. Consequently, some of the conduct in which the ACLU's members wish to engage (*i.e.*, the recording, without consent, of criminal conduct) does not violate the Act. *See* 720 ILCS 5/14-3(i) (2010). Section 14-3(i) of the Act exempts from criminal liability the audio recording of a conversation made by a person who is a party to the conversation under reasonable suspicion that another party to the conversation is committing, is about to commit, or has committed a criminal offense, if there is reason to believe that evidence of the criminal offense may be obtained by the recording. *Id*. To the extent that Plaintiff claims that it members wish to audio record conversations with a policeman where the policeman is committing a criminal offense against the ACLU member, Plaintiff lacks Article III standing to bring a facial challenge to the Act, as it does not criminalize such conduct. *Id;, see also Goldhamer*, 2010 U.S. App. LEXIS 18325 at *14-*16.

Second, Plaintiff has alleged no facts demonstrating a probability of imminent injury in situations where its members are not the subject of unlawful behavior by the police.  It is sheer speculation on the part of Plaintiff that its members will happen onto a confrontation between the police and third parties. "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes - that the injury is certainly impending." *Lujan,* 504 U.S. at 564, n. 2.  Standing is "substantially more difficult to establish where the plaintiff is not himself the object of the government action or inaction that he challenges.  *Id*. at 561.  Imminence has been stretched beyond its purpose in this instance.

B.   **Plaintiff has not demonstrated an actual injury.**

1.   **Plaintiff does not have a right to non-consensual audio recordings.**

Defendant has discovered no court that has recognized a First Amendment right to audio record a conversation. *Matheny v. County of Alleghany*, 2010 U.S. Dist. LEXIS 24189 (W.D. Pa. March 16, 2010) (concluding that a First Amendment right to record the police was not clearly established); *Kelly v. Borough of Carlisle*, 2009 U.S. Dist. LEXIS 37618 (M.D. Pa. May 4, 2009) (same). The Seventh Circuit has held United States Constitution does not guarantee the right to record a public event. *Potts v. City of Lafayette*, 121 F.3d 1106, 1111 (7th Cir. 1997)(holding that a plaintiff did not have a First Amendment right to tape record a public rally). Defendant submits that the act of audio recording a policeman or anyone else is conduct that does not implicate the First Amendment and that the Act's prohibition on non-consensual audio recordings does not violate the First Amendment.

Plaintiff is precluded from audio recording any conversations without consent of all parties to such conversation, including encounters between law enforcement and citizens. The Act narrowly restricts the audio recording of conversations; however, this restriction does not interfere with the right to *receive* information. It is merely the right to make an audio recording of information which is prohibited. Plaintiff, through its members, may document any occurrence or speech in other manners, according to the law. Nevertheless, in this matter, Plaintiff is not entitled a right to *record* since precedent has not articulated such a right. *See id.* Therefore, Plaintiff cannot show that it will suffer an injury because the law does not recognize the Plaintiff's injury as a constitutional right.

Plaintiff's assertion that the Act violates a constitutional right to receive information mistakes the nature of such a right. The Act's prohibition against the interception of any conversation without consent is firmly grounded in the First Amendment. "Freedom of speech

presupposes a willing speaker." *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976). If a willing speaker exists, the freedom of speech protection is afforded "to the communication, to its source and to its recipients both." *Id.* The right to receive information "is an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution" because "the right to receive ideas follows ineluctably from the *sender's* First Amendment right to send them." *Bd. of Educ., Island Trees Union Free Sch. Dist Number 26 v. Pico*, 457 U.S. 853, 867 (1982)(emphasis original). A plaintiff has standing to assert First Amendment right to receive speech only if the plaintiff can demonstrate a willing speaker. *Ind. Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549 (7th Cir. 2007). The right to willingly speak is superior to the right to receive, and the derivative right to receive is not triggered until after the speaker voluntarily assents to participate in a conversation. A willing speaker also has the right to restrict the manner in which his speech is delivered, including being surreptitiously recorded.  The Act merely ensures that this derivative right to receive does not usurp the speaker's right and preserves all speakers' rights to willingly participate in conversations.

Plaintiff asserts that the right to receive exists without regard to the speaker's intentions, and that Plaintiff's members will, *without consent*, audio record police officers engaged in the execution of their official duties. Compl.¶ 38. The complaint overlooks a crucial prerequisite in First Amendment jurisprudence: the existence of a willing speaker.

Plaintiff necessarily concedes, through its pleadings, that it intends to record the conversation of an unwilling speaker.  Plaintiff has asserted a right to receive without first establishing a willing speaker. Above all else, Plaintiff intends to record the speech of a police officer *without* his or her consent.  Plaintiff's proposal seeks to elevate the right to receive above the right to speak -- a proposal which, in effect, turns the First Amendment on its head. Plaintiff

may only receive information from a willing speaker, and Plaintiff has no right to receive without this predicate requirement. Because the Plaintiff intends to specifically refrain from seeking consent of police officers, these officers are not willing speakers. As a consequence, Plaintiff does not have any constitutional right to receive any speech of a non-consenting and unwilling police officer.

2. **Plaintiff has not demonstrated that it is exposed to a real injury of the denial of its right to petition government.**

Plaintiff has not pleaded a real and actual injury of being denied the right to petition the government for the redress of grievances. Nothing in the Act either explicitly or implicitly prohibits Plaintiff from petitioning the government for the redress of any grievances. At best, Plaintiff can simply assert that the Act may deprive Plaintiff of only one form of evidence in support of its grievance – an audio recording of speech that will, by definition, have been heard by other witnesses (including the member of Plaintiff who seeks to make the recording).

Initially, Plaintiff's assertion that it will incur such an injury is wholly speculative. In order to establish the denial of this right, Plaintiff assumes that its members' encounter with the police will result in a cause of action or complaint regarding the conduct of the targeted police officers. Plaintiff's speculative allegations presume that its members are facing imminent threat of misconduct by officers. These hypothetical allegations are insufficient to establish the required injury necessary to establish standing. *See Lyons*, 461 U.S. at 101-102.

Moreover, Plaintiff asserts that the right to petition government for redress necessarily incorporates the right to receive *specific* evidence or discovery for purposes of its petition. In order for a party to receive discovery or evidentiary information, a willing speaker must exist. *Bond*, 585 F.3d at 1078. In the absence of a willing speaker, an Article III court must dismiss the action for lack of standing. *Id.* As stated, *supra*, Plaintiff has not established a willing speaker

for the conversation it wants to record. Moreover, the Plaintiff's Complaint asserts that the lack of audio recording evidence will impair the ability to successfully prove a case against the government by denying the recording of "critical evidence." Compl. ¶ 19. Despite the Plaintiff's assertion, there is no constitutional right to compel the recording of this "critical evidence." Moreover, Plaintiff's allegations that it cannot is unsupported by the voluminous federal civil rights litigation against law enforcement and the frequency of success on such claims, *without audio recording by the Plaintiff.*

### 3. The Act does not prohibit the freedom of press.

The Plaintiff further alleges that the Act prohibits its rights under the Free Press clause of the First Amendment. The press serves as the information-gathering agent of the public, and it cannot be prevented from reporting what it learned and what the public was entitled to know. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 609 (1978). The First Amendment generally grants the press no right to information superior to that of the general public. *Id.* "It has generally been held that the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally," even where news gathering is hampered. *Pell v. Procunier*, 417 U.S. 817, 833 (1974). The Constitution does not require government to accord the press special access to information not shared by members of the public. *Id.* Moreover, the Constitution does not impose on government the affirmative duty to make sources of information available to journalists which is not available to members of the public generally. *Id.* at 834-35.

First, and fatally to this claim, Plaintiff makes no factual allegations to establish that it constitutes the "press" or why it would fall under the protection of the Free Press Clause. However, assuming *arguendo* that Plaintiff possesses a right under such Clause, Plaintiff has not alleged a violation of such right by the Act. Because Plaintiff, if asserting press privileges, is not

afforded any greater rights to receive information than that of the general public, the Plaintiff is not entitled to any greater right to audio record than members of the general public. The status of being the "press" adds nothing to the First Amendment analysis in this case. Moreover, the Act only limits the means of how information may be retained. The Act does not target restricting press access or rights. The Act's restriction on audio recording applies to everyone, including the press. Therefore, the Act does not prohibit the freedom of the press.

## II.   THE COURT SHOULD ABSTAIN PURSUANT TO *YOUNGER v. HARRIS.*

The *Younger* abstention doctrine prohibits federal interference and requires dismissal of this lawsuit. In *Ex parte Young*, 209 U.S. 123 (1908), the Court established the doctrine "that when absolutely necessary for protection of constitutional rights courts of the United States have power to enjoin state officers from instituting criminal actions." *Younger v. Harris*, 401 U.S. 37, 45 (1971). "But this may not be done except under extraordinary circumstances where the danger of irreparable loss is both great and immediate." *Id.* "Ordinarily, there should be no interference with such officers" and "[t]he accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection." *Id.* The threat to the Plaintiff's federally protected right must be one that cannot be eliminated by his defense against a single criminal prosecution. *Id.* at 46.

Moreover, "[a] criminal prosecution under a statute regulating expression usually involves imponderables and contingencies that themselves may inhibit the full exercise of First Amendment Freedoms," but this "chilling effect" should not by itself justify federal intervention. *Id.* at 50 (*quoting Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965)). The existence of a "chilling

11

effect," even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action. *Id.* at 51.[1]

Here, Plaintiff expressly seeks to "enjoin defendant the Cook County State's Attorney from prosecuting plaintiff" for engaging in conduct that violates the Act. Compl., Wherefore Cl., ¶ B. It is, of course, axiomatic that selective prosecution of criminal laws could implicate the Equal Protection Clause. *See Wayte v. United States*, 470 U.S. 598, 608 (1984). Thus, by asking this Court to enjoin State's Attorney Alvarez from prosecuting Plaintiff's members who engage in conduct that violates the, Plaintiff essentially asks for an order enjoining all prosecutions under Illinois' Eavesdropping statute. Indeed, the relief requested in this lawsuit is an order that would enjoin ongoing, *see People v. Drew*, 10 CR 4601, and future criminal prosecutions in State court. The *Younger* abstention doctrine prohibits the entry of such an order.

Moreover, the Seventh Circuit has recognized that the applicability of *Younger* abstention is contingent on the ability of a litigant to advance the federal constitutional claims in the federal lawsuit in the State forum. *See Brunken v. Lance*, 807 F.2d 1325, 1331 (7th Cir. 1986) (recognizing that A key aspect of *Younger* abstention "is that state courts are just as able to enforce federal constitutional rights as federal courts"). The *Drew* case, referenced in Plaintiff's complaint at ¶ 30, illustrates this very point. In fact, Plaintiff alleges that Drew "moved to

---

[1]     Where a statute does not directly abridge free speech, but while regulating a subject within the State's power, tends to have the incidental effect of inhibiting First Amendment rights, it is well settled that the statute can be upheld if the effect on speech is minor in relation to the need for control of the conduct and the lack of alternative means for doing so." *Id.* Although there may be extraordinary circumstances which justify federal intervention through an injunction, the usual prerequisites to federal intervention require bad faith and harassment. *Id.* at 53. in this matter, Plaintiff does not show the Cook County State's Attorney has or intends to use the Act in bad faith and in order to harass a class of citizens. Plaintiff identifies a matter currently in the Circuit Court of Cook County, *People v. Drew*, 10 CR 4601, as an example of a pending prosecution under the Act. Compl. ¶ 30. Plaintiff does not assert this prosecution is undertaken for harassment purposes or initiated in bad faith. Moreover, the Plaintiff does not allege that future prosecutions will be in bad faith or for harassment purposes. Under *Younger*, the Plaintiff has not identified the extraordinary circumstances which justify federal invention of the Act.

dismiss, arguing that the application of the Act to his audio recording violated the First Amendment [and that] Defendant successfully opposed the motion."

Consequently, the *Younger* abstention doctrine prohibits the entry of an order enjoining State's Attorney Alvarez from prosecuting *People v. Drew* or other alleged violations of the Act.

## III. PLAINTIFF'S CITATION TO CERTAIN EXEMPTIONS IN THE ACT ALLOWING THE POLICE TO AUDIORECORD CONVERSATIONS IS IRRELEVANT.

Plaintiff notes that the Act exempts conversations with a civilian who is the occupant of a police car, 720 ILCS 5/14-3(h)(b), and conversations recorded "simultaneously with the use of an in-car video camera during traffic and pedestrian stops," 720 ILCS 5/14-3(a). Compl., ¶ 26. For two reasons, these exemptions have no relevance to the present lawsuit.

First, Plaintiff has not filed an equal protection claim and allegations of disparate treatment in the Act are of no moment. Second, and perhaps more importantly, the police and the public are not similarly situated. The Fourth Amendment regulates the conduct of the police. Members of the public, in contrast, are not state actors subject to the constraints imposed by the Constitution.

## IV. THE ACT IS A CONSTITUTIONAL TIME, PLACE, AND MANNER CONSTRAINT.

Assuming, *arguendo,* that the Act implicates free speech rights, the Act is a valid time, place, and manner constraint. In order to "sustain a time, place, or manner restriction on First Amendment activities, the government must show that the restriction (1) is justified without reference to the content of the regulated speech; (2) is narrowly tailored to serve a significant governmental interest; and (3) leaves open ample alternative channels for communication of the information." *Potts*, 121 F.3d at 1111.

First, the Act does not regulate any specific content of speech but rather, prevents the non-consensual *recording* of speech, regardless of the content of the conversation at issue.

Second, the Act is narrowly tailored to further the rights of speakers to be recording only if after consent is given. The Act protects the speaker's right to privacy by precluding the dissemination of any utterances which are made without all participants' consent. Third, the Act does not place constraints on receiving and/or transcribing all forms of non-consensual communication. For example, in this case, the Plaintiff may watch and listen to encounters between citizens and police officers, and take notes recording such encounters.

Plaintiff's right to receive speech is not absolute. The right of free speech is not absolute at all times and under all circumstances. *Chaplinsky* v. *New Hampshire*, 315 U.S. 568, 571 (1942). The Supreme Court has long recognized that some forms of expression are not entitled to any protection at all under the First Amendment, despite the fact that they could reasonably be thought protected under its literal language. *See Roth* v. *United States*, 354 U.S. 476 (1957). In *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940), the Court stated that "[t]he offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. "It includes not only violent acts but acts and words likely to produce violence in others." *Id.*

Plaintiff alleges that the Act's application will affect its mission to conduct surveillance of police officers in their official duties. The Act's purpose is to protect the rights of the speaker and their privacy interests; however, assuming *arguendo* that Plaintiff has a narrow right to audio record a police officer, the Act further provides a time, place, and manner constraint on this conduct. Although, the Act protects the privacy and speech of *all* participants to a conversation, an additional protection, as it applies to police officers, is that the Act allows officers to perform their tasks without harassment and prevents breach of the peace.

Plaintiff's proposal implicitly stands for the proposition that the furtherance of its First Amendment rights may justify harassment or a breach of the peace. Plaintiff represents that it,

14

through its members, will audio record encounters between police officers and private citizens. However, since neither law enforcement nor members of the ACLU are clairvoyant, the predictability of encounters is non-existent without premeditation. Realistically, the ACLU can only achieve its desired goal of recording encounters with police during consensual encounters (which Plaintiff specifically alleges will not occur), or through implicating the Fourth Amendment that a crime was or will be committed. Implicitly, Plaintiff intends to capture encounters from start to finish through planned actions which will provoke a police officer's response pursuant to the Fourth Amendment. As a result, Plaintiff suggests that the First Amendment is not constrained by acts of lawlessness in order to receive, gather, and record the conduct of police officers.

Alternatively, if Plaintiff's proposal represents a goal to audio record chance encounters between police officers and civilians, Plaintiff's proposal will disregard those civilian-participants engaged in the conversation with a police officer. In other words, Plaintiff also intends to non-consensually audio record these citizens as well. Plaintiff's proposal will have intrusive effects on these citizens' privacy and speech interests.

Respectfully Submitted,

ANITA ALVAREZ
State's Attorney of Cook County

By:     /s/ James C. Pullos
        James C. Pullos
        ARDC#6275728

Patrick T. Driscoll, Jr.
Donald J. Pechous
Paul A. Castiglione
Jeffrey S. McCutchan
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-5105