**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

THE AMERICAN CIVIL LIBERTIES
UNION OF ILLINOIS,

            Plaintiff,

   vs.

ANITA ALVAREZ,

            Defendant.

10 C 5235

Honorable Judge
Suzanne B. Conlon

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR A PRELIMINARY INJUNCTION**

Defendant, ANITA ALVAREZ, State's Attorney of Cook County ("State's Attorney
Alvarez" or the "State's Attorney"), through her assistants, PATRICK T. DRISCOLL, JR., DONALD J.
PECHOUS, PAUL A. CASTIGLIONE, JEFFREY S. MCCUTCHAN, and JAMES C. PULLOS, respond to
Plaintiff's Motion for a Preliminary Injunction as follows:

**INTRODUCTION**

Plaintiff American Civil Liberties Union of Illinois (the "ACLU") filed a motion for a
preliminary injunction of any prosecutions by the State's Attorney against any members of the
ACLU under the Illinois Eavesdropping Act, 720 ILCS 5/14-1 ("the Act").  On a motion for a
preliminary injunction, the movant must show that: (1) there is a likelihood of success on the
merits of the case, (2) no adequate remedy at law exists, (3) the movant will suffer irreparable
harm if the injunction is not granted, (4) the irreparable harm the nonmovant will suffer if the
injunction is granted is not greater than the irreparable harm to the movant if relief is denied, and
(5) the effect of granting the injunction will not harm the on the "public interest." *Meridian Mut.*
*Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1114 (7th Cir. 1997).  Plaintiff has not

established these elements and, as a result, this Honorable Court should deny Plaintiff's motion

for a preliminary injunction.

## ARGUMENT

### I. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION IMPROPERLY SEEKS THE ULTIMATE RELIEF SOUGHT IN THE CASE.

A preliminary injunction is, to be sure, "an 'extraordinary and drastic remedy,' 11A C.

Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, p 129 (2d ed. 1995) [and]

is never awarded as of right." *Munaf v. Geren*, 128 S. Ct. 2207, 2219 (2008), *citing Yakus* v.

*United States*, 321 U.S. 414, 440 (1944). It is well established that the purpose of a preliminary

injunction is to maintain the *status quo*, and not to give the moving party affirmative relief

equivalent to the ultimate relief sought. *Brown v. Kerr-McGee Chem. Corp.,* 767 F.2d 1234,

1240 (7th Cir. 1985). The *status quo* is "the last peaceable, uncontested status of the parties

which preceded the actions giving rise to the issue in controversy." *St. Charles Mfg. Co. v. St.*

*Charles Furniture Corp*., 482 F. Supp. 397, 405 (N.D. Ill. 1979).

Here, the last peaceable, uncontested status was the continued operation of the Act. In its

motion for preliminary injunction, the ACLU asks this Court to enjoin the State's Attorney from

prosecuting Plaintiff and its members from audio-recording the police in violation of the Act.

(Docket #18, Memorandum in Support of Plaintiff's Motion for Preliminary Injunction at 15.)

The ACLU's complaint asks for the exact same relief. *Compare* Complaint (Docket #1) at

Wherefore Clause, ¶ B.

Plaintiff, therefore, does not seek to preserve the *status quo* but rather seeks affirmative

relief equivalent to the ultimate relief sought. On that basis alone, this Honorable Court should

deny Plaintiff's motion for preliminary injunction. As discussed more fully below, Plaintiff does

not establish all of the requirements for preliminary injunctive relief and, on that additional basis, the motion should be denied.

## II.    THE *YOUNGER* ABSTENTION DOCTRINE PROHIBITS THE PRECISE INJUNCTIVE RELIEF THAT PLAINTIFF SEEKS HERE.

### A.    The Honorable Court Should Abstain From Enjoining Prosecutions Against Violations Of The Act Pursuant To The *Younger* Abstention Doctrine.

As an initial matter (and as stated in Defendant's motion to dismiss), in accordance with the *Younger* abstention doctrine, this Court should abstain from federal interference and deny Plaintiff's motion to preliminarily enjoin the State's Attorney from prosecuting violations of the Act in State court.

In *Ex parte Young*, 209 U.S. 123 (1908), the Court established the doctrine "that when absolutely necessary for protection of constitutional rights courts of the United States have power to enjoin state officers from instituting criminal actions." *See Younger v. Harris*, 401 U.S. 37, 45 (1971). "But this may not be done except under extraordinary circumstances where the danger of irreparable loss is both great and immediate." *Id.* "Ordinarily, there should be no interference with such officers" and "[t]he accused should first set up and rely upon his defense in the state courts, even though this involves a challenge of the validity of some statute, unless it plainly appears that this course would not afford adequate protection." *Id.* The threat to the Plaintiff's federally protected right must be one that cannot be eliminated by his defense against a single criminal prosecution. *Younger*, 401 U.S at 46.

The existence of a "chilling effect," even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action. *Id.* at 51. Where a statute does not directly abridge free speech, but while regulating a subject within the State's power, tends to have the incidental effect of inhibiting First Amendment rights, it is well

3

settled that the statute can be upheld if the effect on speech is minor in relation to the need for control of the conduct and the lack of alternative means for doing so." *Id.* Although there may be extraordinary circumstances which justify federal intervention through an injunction, the usual prerequisites to federal intervention require bad faith and harassment. *Id.* at 53.

Under the *Younger* abstention doctrine, federal courts are required to abstain from "enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, (3) offer an adequate opportunity for review of constitutional claims, and (4) no extraordinary circumstances of bias or harassment exist which auger against abstention." *Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cir. 1998).

Here, Plaintiff expressly seeks to "enjoin defendant the Cook County State's Attorney from prosecuting plaintiff" for engaging in conduct that violates the Act. (*See* Compl., Wherefore Cl., ¶ B.) The Seventh Circuit has recognized that the applicability of *Younger* abstention is contingent on the ability of a litigant to advance the federal constitutional claims in the federal lawsuit in the State forum. *See Brunken v. Lance*, 807 F.2d 1325, 1331 (7th Cir. 1986) (recognizing that a key aspect of *Younger* abstention "is that state courts are just as able to enforce federal constitutional rights as federal courts"). The *Drew* case, referenced in Plaintiff's complaint at ¶ 30, illustrates this very point. In fact, Plaintiff alleges that Drew "moved to dismiss, arguing that the application of the Act to his audio recording violated the First Amendment [and that] Defendant successfully opposed the motion."

Consequently, the *Younger* abstention doctrine prohibits the entry of an order preliminarily or permanently enjoining State's Attorney Alvarez from prosecuting *People v. Drew* or other alleged or anticipated violations of the Act.

### III.   PLAINTIFF DOES NOT MEET THE REQUIREMENTS FOR PRELIMINARY INJUNCTIVE RELIEF.

#### A.    Plaintiff Is Not Likely To Succeed On The Merits Of Its Complaint.

##### 1.    The Act Does Not Violate the First Amendment.

Plaintiff is not likely to prevail because the Act's prohibition of non-consensual audio recording conversations does not infringe any First Amendment liberties.   As stated in Defendant's motion to dismiss, Defendant has discovered no authority that has recognized a First Amendment right to audio record a conversation.  *See Matheny v. County of Alleghany*, 2010 U.S. Dist. LEXIS 24189 (W.D. Pa. March 16, 2010) (concluding that a First Amendment right to record the police was not clearly established); *Kelly v. Borough of Carlisle*, 2009 U.S. Dist. LEXIS 37618 (M.D. Pa. May 4, 2009) (same).   The Seventh Circuit has held United States Constitution does not guarantee the right to record a public event.  *Potts v. City of Lafayette*, 121 F.3d 1106, 1111 (7th Cir. 1997) (holding that a plaintiff did not have a First Amendment right to tape record a public rally).   The Act only serves as a restriction on recording conversations without consent.

Plaintiff's assertion that the Act violates a constitutional right to receive information is inaccurate.  In fact, the Act's prohibition against the interception of any conversation without consent is firmly grounded in the First Amendment's free speech clause.  "Freedom of speech presupposes a willing speaker."  *Virginia State Bd. of Pharmacy v. Viriginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976).  If a willing speaker exists, the freedom of speech protection is afforded "to the communication, to its source and to its recipients both."  *Id.*  The right to receive information "is an inherent corollary of the rights of free speech and press that are explicitly guaranteed by the Constitution" because "the right to receive ideas follows

ineluctably from the *sender's* First Amendment right to send them." *Bd. of Educ., Island Trees Union Free Sch. Dist Number 26 v. Pico*, 457 U.S. 853, 867 (1982)(emphasis original).

A plaintiff has standing to assert First Amendment right to receive speech only if the plaintiff can demonstrate a willing speaker. *Ind. Right to Life, Inc. v. Shepard*, 507 F.3d 545, 549 (7th Cir. 2007). The right to willingly speak is superior to the right to receive, and the derivative right to receive is not triggered until after the speaker voluntarily assents to participate in a conversation. A willing speaker also has the right to restrict the manner in which his speech is delivered, including being surreptitiously recorded. The Act merely ensures that the derivative right to receive does not usurp the speaker's right and preserves all speakers' rights to willingly participate in conversations. Plaintiff neither alleges nor demonstrates the existence of any willing speaker who's rights are thwarted by the Act, and such a speaker, Plaintiff cannot prevail on its claim that its First Amendment right to receive will be infringed.

Moreover, Plaintiff has not demonstrated it will be denied a right to receive information. Plaintiff cannot dispute that it will be present for any conversation that it wishes to record. In Plaintiff's example of observing police conduct, Plaintiff does not articulate how, despite its presence for any such conversation, it will be denied a right to receive that information simply because audio recording is prohibited. Audio recording is not a constitutional right and any right of Plaintiff to receive speech is separate and apart from the issue of recording such speech. Nevertheless, Plaintiff makes repeated attempts to augment the right to receive with an unrecognized right to record. Plaintiff alleges that the right to speak and the right to record are

"flip sides of the same coin."[1]  (Docket #18, Arg., § I(B).) Plaintiff's analogy is misplaced -- there is no First Amendment right to record.

Plaintiff's theory is that the right to receive speech allows the listener to control the parameters and ensure the optimal means by which a speaker's words are memorialized.  In this case, Plaintiff contends that audio recording public conversations are a necessary extension of the right to speak and the right to record.  Plaintiff's argument creates a slippery slope where ubiquitous "public" surveillance may chill the speaker's right to control his or her speech.  It is not surprising, then, that no authority articulating a First Amendment right to audio record exists.

In sum, Plaintiff has provided no authority to demonstrate a likelihood of success on the merits in order to enjoin the State's Attorney from prosecuting violations of the Act.  The Act serves only to prohibit the audio recording of conversations; however, this restriction in no way interferes with Plaintiff's right to *receive* information.

### 2. Plaintiff has not demonstrated the Act violates its right to petition government or the freedom of press.

Plaintiff asserts the Act denies the right to petition government for the redress of grievances and freedom of the press; however, in its motion for preliminary injunction, Plaintiff appears to abandon this position.  In so far as Plaintiff attempts to raise the merits of these claims in any fashion, Defendant incorporates its arguments from Defendant's motion to dismiss. (Docket # 19; Arg., § I(B)(2),(3).  Plaintiff has not argued the merits of the Act's interference with the right to petition the government for the redress of grievances and freedom of press.

---

[1] Although Plaintiff has not advanced the argument in this case, the logical extension of Plaintiff's contention would require the overturning of all eavesdropping statutes involving the recording (ever surreptitiously) of a conversation by one of its participants.  The First Amendment does not command such a result.

Specifically, the Act does not explicitly or implicitly prohibit Plaintiff from petitioning the government for the redress of any grievances.

It is significant to note that the Constitution does not require government to accord the press special access to information not shared by members of the public. *Pell v. Procunier*, 417 U.S. 817, 833 (1974). Moreover, the Constitution does not impose on government the affirmative duty to make sources of information available to journalists which is not available to members of the public generally. *Id.* at 834-35. Plaintiff – an entity which is not the press - certainly does not have any enhanced expectation to audio record.

### 3. The Act Is A Constitutional Time, Place And Manner Constraint.

Assuming, *arguendo,* that the Act implicates free speech rights, the Act is content-neutral and a valid time, place, and manner constraint. The right of free speech is not absolute at all times and under all circumstances. *Chaplinsky* v. *New Hampshire*, 315 U.S. 568, 571 (1942). The Supreme Court has long recognized that some forms of expression are not entitled to any protection at all under the First Amendment, despite the fact that they could reasonably be thought protected under its literal language. *See Roth* v. *United States*, 354 U.S. 476 (1957). In *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940), the Court stated that "[t]he offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. "It includes not only violent acts but acts and words likely to produce violence in others." *Id.* In order to "sustain a time, place, or manner restriction on First Amendment activities, the government must show that the restriction (1) is justified without reference to the content of the regulated speech; (2) is narrowly tailored to serve a significant governmental interest; and (3) leaves open ample alternative channels for communication of the information." *Potts*, 121 F.3d at 1111. Even if the Act regulated speech (which it does not), application of the

three-part test from *Cantwell* shows that the Act imposes such a proper time, place and manner restriction.

First, contrary to Plaintiff's motion for preliminary injunction, the Act does not regulate any specific content of speech; but rather, prevents the non-consensual recording of any conversation.   Second, the Act is narrowly tailored to further the rights of speakers to be recorded only after consent is given.   The Act protects the speaker's right to privacy by precluding the dissemination of any utterances which are made without all participants' consent.  Third, the Act does not place constraints on receiving and/or transcribing all forms of non-consensual communication.   For example, in this case, the Plaintiff may watch and listen to encounters between citizens and police officers, as well as take notes recording such encounters.

### 4. Plaintiff's Citation To Certain Exemptions In The Act Allowing The Police To Audio Record Conversations Does Not Show Content Based Regulation.

Plaintiff alleges that the Act's implementation amounts to content-based speech regulation and is, therefore, subject to strict scrutiny analysis.   In support for its argument of content-based speech regulation, Plaintiff relies on the Act's exemptions, *i.e.*, conversations with a civilian who is the occupant of a police car, 720 ILCS 5/14-3(h)(b), and conversations recorded "simultaneously with the use of an in-car video camera during traffic and pedestrian stops," 720 ILCS 5/14-3(a). Compl., ¶ 26.   However, the mere fact that the Act allows for those individuals who may receive exemptions from the non-consensual prohibition on audio recording does not create speech discrimination.   The Act does not apply to any particular type of speech, instead, the Act applies universally to all non-consensual audio recording of any conversations except in those situations enumerated within the Act.

**B.** **Plaintiff Will Not Suffer Irreparable Harm In The Absence Of Preliminary Relief.**

As Plaintiff and its members have no First Amendment right to audio record the police or anyone else, the Act does not limit, even temporarily, Plaintiff's right to receive speech. As previously discussed, the Act limits only the non-consensual audio recording of conversations. Plaintiff's argument that it will suffer a loss of its First Amendment freedoms, for any amount of time, is simply not accurate. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976). In order for Plaintiff to suffer irreparable harm, the Act must violate Plaintiff's First Amendment rights. In this case, Plaintiff has no constitutional right to record and cannot cite any actual loss of First Amendment rights.

Interestingly, under Section 14-3(i) of the Act, if Plaintiff or its members want to audio record a policeman committing a criminal offense against them, such a recording is already exempt from prosecution under the Act. 720 ILCS 5/14-3(i)(2010). Plaintiff has alleged no facts demonstrating a probability of imminent injury in situations where its members are not the subject of unlawful behavior by the police.

As the Act does not impact the First Amendment rights of Plaintiff or its members and as the Act does not criminalize the audio recording of a person committing a criminal offense against the person recording the conversation, Plaintiff faces no threat of irreparable harm to its right of free speech and has no need or legal basis to seek extraordinary relief.

**C.** **The Balance Of Equities Does Not Tip In The Plaintiff's Favor.**

Balancing the equities favors Defendants in this matter because Defendants would suffer greater harm if an injunction is granted than Plaintiff would if the injunction is denied. Without providing any sort of framework on Plaintiff's proposed police monitoring plan, Plaintiff alleges that it will be prevented from engaging in protected speech due to the Act's restrictions on audio

recording law enforcement. In Plaintiff's complaint, Plaintiff alleges that the Illinois General Assembly created an unconstitutional law as applied to recording law enforcement officials in 1994; however, Plaintiff has decided to undertake its project and challenge the constitutionality only at this arbitrary time, some sixteen years after the enactment of the Act. (Compl. ¶ 25.) Moreover, Plaintiff seeks only to prevent the State's Attorney from prosecuting violations of the Act; Plaintiff is not asserting that such violators should not be arrested or charged with violations of the Act. Plaintiff's project is not time sensitive, but even if it was, Plaintiff is still allowed to observe any law enforcement within legal means. There is no immediate need to supplement any police monitoring with non-consensual audio recording when Plaintiff has other alternative means of engaging in such a project.

In the Defendant's case, any preliminary injunction could lead to permanent and detrimental effects to current and future prosecutions. If the State's Attorney is enjoined from prosecuting violations of the Act until this Court decides the merits of Plaintiff's lawsuit, the State's Attorney may be forced to abandon the prosecution of those cases pending in the Circuit Court of Cook County due to the strict timing constraints of Illinois law. In other words, if this Court grants an injunction against the Defendant, the Defendant's requirements to the accused will not be tolled and Defendant will still be required to properly commence any prosecutions of violations of the Act and joined charges in accordance with Illinois law.

Defendant is required to represent the State against violators of the Act and any injunction could create substantial inability for the State's Attorney to carry out that duty. Defendant is constitutionally mandated to carry out the prosecution of felony or misdemeanor crimes. *See* § 55 ILCS 5/3-9005(a)(6)(2010); *see also* Ill. Const., Art. VI, § 19. Moreover, pursuant to the Illinois Speedy Trial Act, 725 ILCS 5/103-5(a)(2010), Defendant is required to

11

commence all prosecutions within 120 days (for those in custody) or within 160 days (for those admitted to bail). Additionally, pursuant to 720 ILCS 5/3-5(b)(2010), most crimes are subject to an eighteen month (misdemeanor) or three year (felony) statute of limitations. Also, violations of the Act rarely exist in isolation; there is usually related conduct that violates other criminal statutes. Pursuant to 725 ILCS 5/111-4(a)(2010), which requires joinder for offenses based on the same act or acts which are part of the same comprehensive transaction, any violation of the Act must be prosecuted contemporaneously with any other charges arising from the same comprehensive transaction. Even if an injunction is granted, said injunction will not serve as a means of tolling the above Speedy Trial Act, mandatory joinder, and statute of limitations requirements of Illinois law. An injunction against criminal prosecution will create so much tension with existing Illinois criminal procedure that the Defendant will be prevented from ever prosecuting current violations of the Act.

For example, in the pending prosecution of *People v. Drew*, 10-CR-4601 (Cook County Cir. Ct.), if this Court grants a preliminary injunction, the State's Attorney could be precluded from prosecution if the criminal defendant demanded trial under the Speedy Trial Act and the criminal defendant's term runs prior to an injunction being dissolved. Additionally, if the State's Attorney chooses to prosecute only those joined charges, if any, and not violations of the Act in a timely manner, even if the State's Attorney prevails in this lawsuit, the State's Attorney will never be able to subsequently prosecute the criminal defendant's charge of violation of the Act (because of mandatory joinder). In short, an injunction will not prevent the accused from demanding trial in the underlying criminal case and the State's Attorney will be permanently barred from prosecuting any charge under the Act. Such factors no doubt influenced the decision

reached by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, *supra* at Section IIA of this Memorandum.

In the final analysis, Plaintiff's proposed regulatory injunction is contrary to principles of federalism and would ultimately undermine the enforcement of lawful Illinois criminal statutes. *See, e.g., First Defense Legal Aid v. City of Chicago*, 319 F.3d 967, 973 (7th Cir. 2003) (plaintiff legal aid organization did not have a First Amendment right to confer with witnesses that the police interview at the police station, plaintiff's request for an order enjoining this practice was improper, and ruling that any violations of the witnesses' rights "must be redressed after the fact (by damages or exclusion of evidence) rather than by a regulatory injunction issued in a case to which no witness is a party").

Moreover, according to Plaintiff's motion for preliminary injunction, the ACLU comprises, *inter alia*, "volunteers." If this Court entered a preliminary injunction applying only to members of the ACLU, such ruling would create a statutory exemption and affirmative defense for the "volunteers" of the ACLU. Such a *de facto* exemption would undermine the principles of federalism. Moreover, allowing those "volunteers" to stay a prosecution without any definite criteria of membership would create an untenable hardship on local law enforcement and state courts seeking to enforce the Act against non-ACLU "volunteers."

D.     **An Injunction Is Not In The Public's Interest.**

Plaintiff contends that a preliminary injunction will advance the public's interest in the First Amendment. As previously discussed, however, the Act does not violate the First Amendment. Moreover, and significantly, Plaintiff's proposed program to engage in non-consensual recording of the public's and police officers' conversations would be extremely invasive to the public's interest. The General Assembly expressed the will of the public when it

passed the Act. To protect the privacy of private conversations, the legislature decided to criminalize the audio recording of conversations without the consent of every party. The First Amendment does not preclude the General Assembly from making this legislative choice. Thwarting the will of the legislature without any constitutional command to do so does not serve the public interest.

Injunctive relief will also chill the efforts of police officers who are fearful of being constantly recorded at any time. The entry of an injunction allowing citizens to essentially conduct surveillance on those individuals that have been duly authorized to police our community-- without the constraints that the Fourth Amendment places on those who engage in State action -- will serve to discourage police from engaging in community service. As the Seventh Circuit has recognized, "[e]specially in a period of heightened public concern with the dangers posed by international terrorism, effective police work must be reckoned a national priority that justifies some sacrifice of competing interests." *Reynolds v. City of Chicago*, 296 F.3d 524, 530 (7th Cir. 1999).

No person would relish the idea of being video and audio recorded every moment they are at work. The police, as every other citizen, would consider that the constant threat of such an invasion of personal privacy chills their ability to perform their jobs freely. This concern for some small degree of personal privacy is readily understandable, and the public interest is not well served by forcing the police to investigate crimes and enforce the law while remaining under constant surveillance. To the extent that Plaintiff claims that its program is intended to record instances of police misconduct, Section 14-3(i) of the Act provides that a person could lawfully audiotape a conversation with the police if the person: (a) is under reasonable suspicion that the policeman is committing, is about to commit, or has committed a criminal offense and

(b) has reason to believe that evidence of the criminal offense may be obtained by the recording. (720 ILCS 5/14-3(i) (2010).) The current law furthers the interest in preventing the police from breaking the law. The proposed injunction purports to promote this very interest but, in fact, only serves to needlessly chill and undermine the efforts of the police to enforce the law.

Finally, if prosecutions for violations of the Act are broadly enjoined, nothing would prevent all citizens of the community from becoming subjects of various surveillance methods. As a result, Plaintiff's request may have a, presumably unintended, intrusive effect on citizens' privacy and speech interests.

## CONCLUSION

For the foregoing reasons, this Honorable Court should deny Plaintiff's motion for preliminary injunction.

Respectfully Submitted,

ANITA ALVAREZ
State's Attorney of Cook County

By:     /s/ James C. Pullos
        James C. Pullos
        ARDC#6275728

Patrick T. Driscoll, Jr.
Donald J. Pechous
Paul A. Castiglione
Jeffrey S. McCutchan
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602
(312) 603-5105