**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THE AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:10-cv-05235 |
| v. | ) ) | Judge Suzanne B. Conlon |
| ANITA ALVAREZ, Cook County State's Attorney, in her official capacity, | ) ) ) | Magistrate Judge Sydney I. Schenkier |
| Defendant. | ) | |

**PLAINTIFF ACLU'S COMBINED REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION AND
RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT .........................................................................................................2

I.     THE ACT AS APPLIED VIOLATES THE FIRST AMENDMENT. ...............................2

    A.    The Act as Applied Unconstitutionally Burdens the Right to Gather, Receive, and Record Information. ...........................................................2

    B.    The Act as Applied Is Subject to Strict Scrutiny, Not Mid-level Scrutiny. ............6

    C.    The Act as Applied Here Cannot Satisfy Strict Scrutiny. .......................................8

    D.    The Act as Applied Here Cannot Satisfy Mid-level Scrutiny. ................................8

        1.    The Act as Applied Does Not Advance the Privacy Interest. ......................9

        2.    The Act as Applied Does Not Advance the Law Enforcement Interest. ....................................................................................................12

        3.    The Act as Applied Fails the "Alternative Channels" Test. ......................14

II.    THE ACLU HAS SATISFIED ALL OTHER REQUIREMENTS FOR PRELIMINARY INJUNCTIVE RELIEF; IT HAS STANDING; AND THE YOUNGER DOCTRINE IS INAPPLICABLE. ...............................................................15

    A.    The ACLU Has Established Its Right to a Preliminary Injunction. .......................16

        1.    A Preliminary Injunction Against Enforcement of the Act Is Appropriate Relief. ...............................................................................16

        2.    The ACLU Is Experiencing Irreparable Harm, Which Has No Remedy at Law. ...................................................................................18

        3.    The Public Interest Favors a Preliminary Injunction. ...............................19

        4.    Balancing the Harm to the ACLU and the Public Interest with the Potential Harm to Defendant Justifies the Preliminary Injunction. ...........20

    B.    The ACLU Has Standing to Challenge the Act, and Its Challenge Is Ripe. ..........22

        1.    Standard of Review .................................................................................22

        2.    The ACLU Has Standing Because It Has Been and Continues to Be Deterred from Engaging in Its Program by Fear of Prosecution under the Act. .........................................................................................23

        3.    The ACLU's Challenge Is Ripe Because the Act Is Presently Deterring the ACLU Program. .................................................................25

    C.    The Younger Abstention Doctrine Is Inapplicable Where, as Here, There Is No Underlying State Case Against This Plaintiff. .............................................27

CONCLUSION.....................................................................................................28

# TABLE OF AUTHORITIES

Page(s)

CASES

*Abbott Labs. v. Mead Johnson & Co.*,
 971 F.2d 6 (7th Cir. 1992) ................................................................................................20

*Adams v. ARDC*,
 801 F.2d 968 (7th Cir. 1986) ...........................................................................................17

*Airport Commissioners v. Jews for Jesus, Inc.*,
 482 U.S. 569 (1987) .........................................................................................................15

*Allen v. Allen*,
 48 F.3d 259 (7th Cir. 1995) ..............................................................................................27

*Anderson v. City of Hermosa Beach*,
 – F.3d – , 2010 WL 3504298 (9th Cir. Sept. 9, 2010) ........................................................3

*Annex Books, Inc. v. City of Indianapolis*,
 No. 09-4156, – F.3d – (7th Cir. Oct. 1, 2010) ..................................................................13

*Apex Digital, Inc. v. Sears, Roebuck & Co.*,
 572 F.3d 440 (7th Cir. 2009) ............................................................................................22

*Bartnicki v. Vopper*,
 532 U.S. 514 (2001) .............................................................................................................9

*Berkemer v. McCarty*,
 468 U.S. 420 (1984) ...........................................................................................................11

*Boy Scouts of America v. Dale*,
 530 U.S. 640 (2000) .............................................................................................................8

*Brown v. Kerr-McGee Chem. Corp.*,
 767 F.2d 1234 (7th Cir. 1985) .........................................................................................17

*Buckley v. Valeo*,
 424 U.S. 1 (1976) ................................................................................................................8

*Builders Ass'n of Greater Chicago v. City of Chicago*,
 2001 WL 1464757 (N.D. Ill. Nov. 16, 2001) ...................................................................21

*Charles v. Carey*,
 627 F.2d 772 (7th Cir. 1980) ...........................................................................................17

*Chicago Cable Communications v. Chicago Cable Commn.*,
   879 F.2d 1540 (7th Cir. 1989) ..........................................................................9

*Chicago United Indus., Ltd. v. City of Chicago*,
   445 F.3d 940 (7th Cir. 2006) ............................................................................16

*Chicago v. Mosley*,
   408 U.S. 92 (1972)...........................................................................................6

*Christensen v. City of Wheaton*,
   2000 WL 204225 (N.D. Ill. Feb. 16, 2000) ........................................................17

*Christian Legal Society v. Walker*,
   453 F.3d 853 (7th Cir. 2006) .......................................................................18, 19

*Citizens United v. FEC*,
   130 S. Ct. 876 (2010).....................................................................................4, 6

*City of Ladue v. Gilleo*,
   512 U.S. 43 (1994).......................................................................................14, 15

*Conchatta Inc. v. Miller*,
   458 F.3d 258 (3rd Cir. 2006) ...........................................................................10

*Connell v. Hudson*,
   733 F. Supp. 465 (D.N.H. 1990) .......................................................................11

*Covenant Media of Illinois, L.L.C. v. City of Des Plaines*,
   2005 WL 2277313 (N.D. Ill. Sept. 15, 2005) .....................................................17

*Doran v. Salem Inn, Inc.*,
   422 U.S. 922 (1975).........................................................................................27

*Dorfman v. Meiszner*,
   430 F.2d 558 (7th Cir. 1970) ............................................................................11

*Elrod v. Burns*,
   427 U.S. 347 (1976).........................................................................................21

*Entm't Software Ass'n v. Chicago Transit Auth.*,
   696 F. Supp. 2d 934 (N.D. Ill. 2010) .................................................................17

*First Defense Legal Aid v. City of Chicago*,
   319 F.3d 967 (7th Cir. 2003) ............................................................................22

*Forty One News, Inc. v. County of Lake*,
   491 F.3d 662 (7th Cir. 2007) ............................................................................27

*Grosjean v. American Press Co.*,
   297 U.S. 233 (1936)................................................................................6

*Heffron v. ISKCON*,
   452 U.S. 640 (1981)................................................................................9

*Hodgkins v. Peterson*,
   355 F.3d 1048 (7th Cir. 2004) ............................................................9, 10

*Holder v. Humanitarian Law Project*,
   130 S. Ct. 2705 (2010)...................................................................7, 24, 25

*Hoover v. Wagner*,
   47 F.3d 845 (7th Cir. 1995) ...................................................................28

*Hudson v. Palmer*,
   468 U.S. 517 (1984)...............................................................................11

*Illinois Sporting Goods Ass'n v. County of Cook*,
   845 F. Supp. 582 (N.D. Ill. 1994) .........................................................17

*Imbler v. Pachtman*,
   424 U.S. 409 (1976)...............................................................................19

*Jackson v. City of Markham, Ill.*,
   773 F. Supp. 105 (N.D. Ill. 1991) .....................................................18, 20

*Jamison v. Texas*,
   318 U.S. 413 (1943)...............................................................................15

*Katz v. United States*,
   389 U.S. 347 (1967)...............................................................................11

*Kelly v. Borough of Carlisle*,
   2009 WL 1230309 (M.D. Pa. May 4, 2009), *aff'd*, – F.3d – (3rd Cir. Oct. 4, 2010) ...............5

*Klein v. Baise*,
   708 F. Supp. 863 (N.D. Ill. 1989) .........................................................17

*Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*,
   422 F.3d 490 (7th Cir. 2005) ................................................................23

*Lanza v. New York*,
   370 U.S. 139 (1962)...............................................................................11

*Lederman v. United States*,
   89 F. Supp. 2d 29 (D.D.C. 2000) ..........................................................15

*Loper v. NYPD,*
    999 F.2d 699 (2nd Cir. 1993)..................................................................................15

*Lovell v. City of Griffin,*
    303 U.S. 444 (1938)..............................................................................................15

*Lowery v. Schnorf,*
    1998 WL 341835 (N.D. Ill. June 18, 1998) .........................................................28

*Majors v. Abell,*
    317 F.3d 719 (7th Cir. 2003) ...............................................................................25

*Martin v. City of Struthers,*
    319 U.S. 141 (1943)..............................................................................................15

*Maryland v. Graber,*
    No. 12-K-10-647 (Cir. Ct. Harford County, Md.) ................................................11

*Matheny v. County of Allegheny,*
    2010 WL 1007859 (W.D. Pa. Mar. 16, 2010) .......................................................5

*McConnell v. FEC,*
    540 U.S. 93 (2003) (Scalia, J., dissenting)..............................................................4

*Metro Milwaukee Association of Commerce v. Milwaukee Co.,*
    325 F.3d 879 (7th Cir. 2003) ..........................................................................25, 26

*New York Times Co. v. Sullivan,*
    376 U.S. 254 (1964)................................................................................................6

*Pearson v. Callahan,*
    129 S. Ct. 808 (2009).............................................................................................5

*People v. Beardsley,*
    115 Ill. 2d 47 (1986) ............................................................................................12

*Perry Educ. Assn. v. Perry Local Educators' Assn,*
    460 U.S. 37 (1983)................................................................................................15

*Planned Parenthood of Wisconsin v. Doyle,*
    162 F.3d 463 (7th Cir. 1998) ...............................................................................16

*Porter v. Bowen,*
    496 F.3d 1009 (9th Cir. 2007) .............................................................................10

*Potts v. City of Lafayette,*
    121 F.3d 1106 (7th Cir. 1997) .........................................................................5, 14

*Praefke Auto Elec. & Battery Co., Inc. v. Tecumseh Prods. Co., Inc.*,
    255 F.3d 460 (7th Cir. 2001) ...................................................................16

*Sherman v. Twp. High Sch. Dist. 214*,
    624 F. Supp. 2d 907 (N.D. Ill. 2007) .....................................................17

*Shirmer v. Nagode*,
    -- F.3d --, 2010 WL 3431627 (7th Cir. Sept. 2, 2010) ...........................25

*Smith v. Wisconsin Dept. of Agric., Trade, & Consumer Prot.*,
    23 F.3d 1134 (7th Cir. 1994) .................................................................26

*St. Charles Mfg. Co. v. St. Charles Furniture Corp.*,
    482 F. Supp. 397 (N.D. Ill. 1979) ..........................................................17

*Steffel v. Thompson*,
    415 U.S. 452 (1974) ...............................................................................27

*Storck USA L.P. v. Farley Candy Co.*,
    14 F.3d 311 (7th Cir. 1994) ...................................................................20

*Texas v. Johnson*,
    491 U.S. 397 (1989) .................................................................................7

*Turner Broadcasting Sys. v. F.C.C.*,
    512 U.S. 622 (1994) ...........................................................................6, 10

*Ty, Inc. v. Jones Group, Inc.*,
    237 F.3d 891 (7th Cir. 2001) .................................................................20

*United States v. Clark*,
    22 F.3d 799 (8th Cir. 1994) ...................................................................11

*United States v. Grace*,
    461 U.S. 171 (1983)................................................................................10

*United States v. O'Brien*,
    391 U.S. 367 (1968)....................................................................7, 8, 9, 10

*United States v. Popa*,
    187 F.3d 672 (D.C. Cir. 1999) ...............................................................10

*United States v. Turner*,
    209 F.3d 1198 (10th Cir. 2000) .............................................................11

*United States v. White*,
    401 U.S. 745 (1971)................................................................................11

*Vincenty v. Bloomberg*,
  476 F.3d 74 (2nd Cir. 2007)..................................................................................10

*Ward v. Rock Against Racism*,
  491 U.S. 781 (1989) ........................................................................................ passim

*Watseka v. Illinois Public Action Council*,
  796 F.2d 1547 (7th Cir. 1986), *aff'd*, 479 U.S. 1048 (1987)....................................13

*Weigand v. Vill. of Tinley Park*,
  114 F. Supp. 2d 734 (N.D. Ill. 2000) ...................................................................17

*Weinberg v. City of Chicago*,
  310 F.3d 1029 (7th Cir. 2002) ..............................................................................13

*Wisconsin Vendors, Inc. v. Lake County*,
  152 F. Supp. 2d 1087 (N.D. Ill. 2001) .................................................................17

*Younger v. Harris*,
  401 U.S. 37 (1971)........................................................................................... passim

STATUTES

720 ILCS 5/14-3(i)................................................................................................23

18 U.S.C. § 2510(2) ................................................................................................9

OTHER AUTHORITIES

Bob Roberts, *Officer's comments captured during traffic stop*, WBBM (March 20, 2010) ..........4

Commission to Investigate Allegations of Police Corruption, City of New York,
  *Commission Report* (1994) ..................................................................................14

David Bauder, *Cell-phone videos transforming TV news*, Wash. Post (Jan. 1, 2007)....................3

James G. Carr, *The law of electronic surveillance* (2010)...........................................11

Jeanne Meserve, *Passenger says TSA agents harassed him*, CNN.com (June 20, 2009) ..............4

Myron W. Orfield, Jr., *Deterrence, perjury, and the heater factor*, 63 U. Colo. L. Rev.
  75, 107 (1992)...................................................................................................14

Myron W. Orfield, Jr., *The exclusionary rule and deterrence*, 54 U. Chi. L. Rev. 1016,
  1049-50 (1987)..................................................................................................14

Patrick O'Connell, *Officer in trouble over motorist's video*, St. Louis Post Dispatch
  (March 18, 2008) ..............................................................................................4

Rodney A. Smolla, *Freedom of Speech* (2010) ........................................................................7, 9

Ronald D. Rotunda, *Treatise on Constitutional Law* (2008) ..........................................................9

Seth F. Kreimer, *Pervasive image capture and the First Amendment* U. Penn. L. Rev. __
    (forthcoming) ...........................................................................................................................3

## INTRODUCTION

The two motions before the Court—the ACLU's motion for a preliminary injunction and defendant's motion to dismiss—share a common question of law. That question is whether the ACLU has a First Amendment right to audio record, in a manner that is otherwise lawful, police officers engaged in their public duties in public places. The answer to that question is yes. Such audio recording are every bit as integral to freedom of expression as other forms of protected expression. Because no contrary compelling or even substantial state interest is served by the contested application of the statute, the Court should therefore find that the Illinois Eavesdropping Act (the "Act"), as applied to the ACLU's planned recording of police conduct, violates the First Amendment.

Such a finding also means that the ACLU has satisfied the likelihood of success requirement for receiving a preliminary injunction. And the irreparable harm requirement is plainly met since it is well-settled that First Amendment violations constitute irreparable harm *per se*. The ACLU has met the remaining requirements for a preliminary injunction too. In particular, the ACLU's program is in the public interest because it promotes government accountability.

In defending the propriety of applying the Act to the ACLU Program, defendant often mischaracterizes the relief that the ACLU seeks. For example, defendant asserts that the ACLU seeks to record and conduct surveillance of the police "every moment they are at work" without regard to any legitimate privacy interests police may have in, for example, the stationhouse. Def. PI Resp., p. 14.[1] But the ACLU could not have been clearer: it seeks only to record the police in public places while police are engaged in performing their public duties. In other words, in

---

[1] As used herein, "Pl. PI Br." means the ACLU's preliminary injunction opening brief (Dkt. #18), "Def. PI Resp." means defendant's preliminary injunction response brief (Dkt. #23), "Def. MTD Br." means defendant's motion to dismiss opening brief (Dkt. #19), "Compl." means the ACLU's complaint (Dkt. #1), and "Connell Decl." means the declaration of Colleen Connell in support of the ACLU's preliminary injunction motion (Dkt. #18-5).

places and under circumstances where it is clear that the police have no legitimate expectation of privacy.

Defendant argues that the ACLU lacks standing but that argument fails because defendant has not come forward with a factual showing to rebut the ACLU's facial showing of standing. Defendant also argues this Court should not proceed due to the *Younger* doctrine. But defendant is wrong since *Younger* would only apply were the ACLU currently being prosecuted by defendant in state court, which is not the case.

The ACLU submits that the Court should deny defendant's motion to dismiss and grant the ACLU's motion for a preliminary injunction.

## ARGUMENT

I. **THE ACT AS APPLIED VIOLATES THE FIRST AMENDMENT.**

The Act as applied to the ACLU Program unconstitutionally burdens the First Amendment right to gather, receive, and record information. *See infra* Part I.A. Because of the Act's speaker and viewpoint discrimination, it must pass strict scrutiny review by this Court to survive. *See infra* Part I.B. The Act fails this test. *See infra* Part I.C. Even if mid-level scrutiny applied, the Act still fails. *See infra* Part I.D. The ACLU's opening brief provided substantial legal authority, evidence, and argument on each of these points. Pl. PI Br., pp. 6-14. Defendant responded to none of it, and provided no evidence (and little legal authority) in support of her contrary position.

### A. The Act as Applied Unconstitutionally Burdens the Right to Gather, Receive, and Record Information.

The ACLU's opening brief, relying upon numerous judicial decisions, including two by the Seventh Circuit, demonstrated that there is a First Amendment right to record what other people are doing in public places by means of photographic, video, and audio devices. Pl. PI Br., pp. 7-9. Some of these cases explicitly recognize a right to take photos and video of on-duty police, and others explicitly acknowledge a right to take audio of other government officials. *Id.* In response, defendant simply minimizes the importance of this medium of expression. Def.

MTD Br., pp. 7, 9; Def. PI Resp., pp. 6, 11.  In doing so, defendant would lead this Court to an unconstitutional and backwards-looking result.

Audio recording of spoken words is an essential link in an indivisible chain of expression.  It is integral to contemporary communication, as exemplified in cell phones, YouTube, and the six o'clock news.  People use ubiquitous technology—rapidly, cheaply, and easily—to gather and retain information/expression occurring in public places, including spoken words.  People then share their recordings with others.  *See, e.g.,* David Bauder, *Cell-phone videos transforming TV news*, Wash. Post (Jan. 7, 2007) (discussing the impact on the traditional media of tens of millions of people gathering news themselves with personal cell phones with an audio/video function).  Here, the ACLU seeks to gather information through audio recording, and share it with the public and government to reform police policy.  In all of these cases, the initial action of making the audio recording is integral to the process of creating expression.

Such chains of expression should be treated as a whole, and analyzed as pure expression. The chain's links should not be broken off, and treated as conduct outside First Amendment protection.  As Judge Bybee recently wrote, in a decision striking down a municipal ban on the tattoo process:

> [N]either the Supreme Court nor our court has ever drawn a distinction between the process of creating a form of pure speech (such as writing or painting) and the product of these processes (the essay or the artwork) in terms of the First Amendment protection afforded.  Although writing and painting can be reduced to their constituent acts, and thus described as conduct, we have not attempted to disconnect the end product from the act of creation.  Thus, we have not drawn a hard line between the essays John Peter Zenger published and the act of setting the type.  *Cf. Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue,* 460 U.S. 575, 582, 103 S.Ct. 1365, 75 L.Ed. 2d 295 (1983) (holding that a tax on ink and paper "burdens rights protected by the First Amendment").

*Anderson v. City of Hermosa Beach,* – F.3d – , 2010 WL 3504298, at *7 (9th Cir. Sept. 9, 2010). *See also* Seth F. Kreimer, *Pervasive image capture and the First Amendment*, 159 U. Penn. L. Rev. __ (forthcoming), manuscript, pp. 53-59 (Pl. PI Br., Ex. E) ("[T]he modern process of image [and audio] capture is an essential element in producing and ultimately disseminating

photos, videos and montages which modern first amendment doctrine recognizes solidly as protected media."). *See also McConnell v. FEC*, 540 U.S. 93, 251-52 (2003) (Scalia, J., dissenting) ("[E]ffective public communication requires the speaker to make use of the services of others. An author may write a novel, but he will seldom publish and distribute it himself. . . . To a government bent on suppressing speech, this mode of organization presents opportunities: Control any cog in the machine, and you can halt the whole apparatus."), *overruled by Citizens United v. FEC*, 130 S. Ct. 876 (2010).

Defendant suggests that a ban on audio recording on-duty police does not meaningfully burden the First Amendment right to gather information because there are other means of recording. Def. MTD Br., pp. 7, 9; Def. PI Resp., pp. 6, 11. But audio recording is critical to the form of expression the ACLU intends to create. Government cannot command a filmmaker to stop making a film on the grounds that the filmmaker is free to write a book instead. Neither can it require that a documentary about the observable performance of police be silent. We have lived for some time in the era of the "Talkies." Moreover, the self-authenticating quality of audio recordings differentiates it from the written word. Thus, audio recording provides a critical form of information which is qualitatively superior to other forms of information. If done properly, it provides an unassailable view of events. Accordingly, audio recording on-duty police performing their duties in public will significantly enhance the ACLU's efforts in educating the general public, reforming government policies, and even resolving testimonial disputes. *See* Pl. PI Br., pp. 8-9 (presenting evidence of unresolved police-civilian disputes absent audio, and resolution of such disputes with audio).[2]

---

[2] *See also* Patrick O'Connell, *Officer in trouble over motorist's video*, St. Louis Post Dispatch (Sept. 11, 2007) (civilian audio of officer's verbal abuse, and threat to "come up with" a reason to jail the civilian); Jeanne Meserve, *Passenger says TSA agents harassed him*, CNN.com (June 20, 2009) (civilian audio of agent calling him a "smartass," and saying "I'm not going to play your f**king game"); Bob Roberts, *Officers [sic] comments captured during traffic stop*, WBBM (March 20, 2010) (civilian audio of officer saying, "Normally when someone tells me why did I get pulled over, I tell them 'cause they're (expletive) black.'").

Defendant emphasizes the statement in *Potts v. City of Lafayette*, 121 F.3d 1106, 1111 (7th Cir. 1997), that the Constitution does not "guarantee the right to record a public event." Def. MTD Br., p. 7; Def. PI Resp., p. 5.  But the ACLU does not seek an absolute right—a "guarantee"—to record all public events in all circumstances.  Rather, the ACLU Program extends only to recordings, in a manner otherwise lawful, of on-duty police, in public places, speaking at an ordinary volume.  Compl., ¶ 3.  Significantly, in order to apply the mid-level "time, place, or manner" test, 121 F.3d at 1111, the *Potts* court necessarily concluded that audio recording of public events is protected by the First Amendment.[3]

Defendant also cites two cases holding, for purposes of qualified immunity from damages, that the right to audio record on-duty police is not clearly established.  Def. PI Resp., p. 5, and Def. MTD Br., p. 7, citing *Matheny v. County of Allegheny*, 2010 WL 1007859, at **4-6 (W.D. Pa. Mar. 16, 2010), and *Kelly v. Borough of Carlisle*, 2009 WL 1230309, at *9 (M.D. Pa. May 4, 2009), *aff'd*, – F.3d – (3rd Cir. Oct. 4, 2010) (attached as Ex. F).  Whether a constitutional right is clearly established is a separate question from whether such a right exists.  *See, e.g., Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009).  Neither decision, which the ACLU believes are wrongly decided, holds that such a right does not exist.

Defendant argues that the ACLU has no right to audio record on-duty police officers without their consent, because such officers supposedly are not willing speakers.  Def. PI Resp., pp. 5-6; Def. MTD Br., pp. 7-9.  Some of the "right to receive information" cases that buttress the right to audio record on-duty police, *see* Pl. PI Br., pp. 6-7, do involve a "willing speaker." However, on-duty police who speak to civilians in public at an ordinary volume are willing speakers.  While some officers might not want to be recorded, their desires are legally irrelevant: they are still willing speakers.  Once on-duty officers speak in public at an audible level, they may not restrict the rights of listeners.  Just as they may not stop a passerby from taking notes—or simply listening—they may not stop audio recording.

---

[3] For an explanation of why the allowed First Amendment restraint in *Potts* was narrowly tailored, but the restraint here is not, please *see infra* at p. 14.

In short, the ACLU Program lies at the heart of the Speech, Press, and Petition Clauses of the First Amendment, because the ACLU plans to disseminate its recordings to government and the public, and thereby advance police reform and government accountability. *See, e.g., New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964) (the First Amendment "was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people").[4]

### B. The Act as Applied Is Subject to Strict Scrutiny, Not Mid-level Scrutiny.

The Act's application here is not neutral. First, the Act discriminates among speakers: it allows on-duty police to make virtually any audio recording of civilians, while forbidding civilians to make virtually any audio recording of police. Pl. PI Br., pp. 2-3, 10-11. Second, this same one-sided license to record as applied to police-civilian conversations comprises viewpoint discrimination, because it forbids civilians (but not officers) from creating an audio record for later use to advance their viewpoint of what occurred. Pl. PI Br., pp. 2, 10. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (holding that government may not restrain speech "because of disagreement with the message it conveys," and that "government's purpose" is "the controlling consideration").

Speaker and viewpoint discrimination each trigger First Amendment strict scrutiny. *See* Pl. PI Br., pp. 10-11 (discussing *Turner Broadcasting*, *Citizens United*, *Rosenberger*, *Village of Schaumburg*, and *Entertainment Software Association*). *See also Chicago v. Mosley*, 408 U.S. 92, 100-01 (1972) (holding that government cannot restrain picketing by most groups, while allowing picketing by a favored group, unless government can prove that the former is "clearly

---

[4] The Press Clause protects an activity: news gathering and publishing. *See Grosjean v. Am.Press Co.*, 297 U.S. 233, 249-50 (1936) ("The evils to be prevented were not the censorship of the press merely, but any action of the government by means of which it might prevent such free and general discussion of public matters as seems absolutely essential to prepare the people for an intelligent exercise of their rights as citizens."). It does not privilege professional news organizations over lay organizations and individuals that gather and publish news. The ACLU routinely gathers and publishes newsworthy information. Connell Decl., ¶¶ 3-4; Compl., ¶¶ 2, 12. Thus, the ACLU enjoys Press Clause protection, though it is not part of the traditional news media. *Cf.* Def. PI Resp., p. 8; Def. MTD Br., p. 10.

more disruptive" than the latter, and rejecting "wholesale and categorical" supposition as evidence of such disparity); Rodney A. Smolla, *Freedom of Speech* (2010) ("Smolla"), §§ 11:7, 11:8, 11:18 (explaining that content-based restrictions on expressive conduct are First Amendment violations subject to strict scrutiny).[5] Even if the Act's application to the ACLU Program was properly viewed as a "time, place, or manner" regulation of expression in a public forum, or as a regulation of conduct that incidentally burdens speech—two propositions that the ACLU refutes immediately below—the Act's speaker and viewpoint discrimination would move the Act out of mid-level scrutiny and into strict scrutiny. *See Ward*, 491 U.S. at 791 (a "time, place, or manner" restraint must be "justified without reference to the content of the regulated speech"); *United States v. O'Brien*, 391 U.S. 367, 377 (1968) (a conduct regulation must be "unrelated to the suppression of free expression"). *See also Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2723 (2010) (rejecting the *O'Brien* test and applying heightened scrutiny, because the disputed restraint "regulates speech on the basis of its content"); *Texas v. Johnson*, 491 U.S. 397, 403 (1989) (holding that "a more demanding standard" than *O'Brien* applies if "the State's regulation is related to the suppression of free expression").

In the alternative, strict scrutiny is appropriate here because the Act flatly bans the audio component of the ACLU Program in all public places, regardless of whether they are in public forums. Further, it does so on threat of criminal penalty. Mid-level scrutiny sometimes is appropriate when evaluating "time, place, and manner" regulations of speech in traditional and designated government forums. *See, e.g., Ward*, 491 U.S. at 791. But here, the Act as applied does not merely regulate the time, place, or manner of the ACLU's audio recording of police officers. Rather, it flatly bans all such audio recordings on penalty of criminal prosecution. *Cf.* Def. MTD Br., pp. 13-15 (advancing this test without supporting argument or authority); Def. PI Resp., pp. 8-9 (same).

---

[5] Thus, speaker and viewpoint discrimination trigger First Amendment strict scrutiny, even without an Equal Protection claim. *Cf.* Def. MTD Br., p. 13.

Likewise, this is not a generally applicable law that incidentally burdens speech. This is a flat ban on a type of speech. Admittedly, mid-level First Amendment scrutiny is sometimes appropriate when a conduct regulation incidentally effects speech. *See, e.g., O'Brien*, 391 U.S. 367 (applying mid-level scrutiny to expressive draft card burning). But the Act as applied here directly bans expressive activity, and not non-speech conduct. Specifically, the Act bans all non-consensual audio recording of spoken words, which ordinarily is done (and here, will be done) for the purpose of sharing that recording with others. The Act does not simply prohibit turning on a device incidentally related to speech. Rather, it prohibits using a device that only relates to speech. In cases like this one, courts apply strict scrutiny, and not mere *O'Brien* mid-level scrutiny. *See, e.g., Boy Scouts of Am. v. Dale*, 530 U.S. 640, 659 (2000) (rejecting the *O'Brien* test, because the disputed public accommodations law "directly and immediately" burdened the BSA's associational rights); *Buckley v. Valeo*, 424 U.S. 1, 16 (1976) (rejecting the *O'Brien* test, because "[s]ome forms of communication made possible by the giving and spending of money involve speech alone . . . ."). *Cf.* Def. MTD Br., p. 7 ("the act of audio recording a policeman or anyone else is conduct that does not implicate the First Amendment"); Def. PI Resp., pp. 3-4 (asserting that the Act "does not directly abridge free speech" and has a mere "incidental effect").

## C.     The Act as Applied Here Cannot Satisfy Strict Scrutiny.

The Act as applied to the ACLU Program cannot satisfy strict scrutiny. Defendant has not argued that it has any compelling interest in prohibiting civilian audio recording of the non-private conversations of on-duty police in public places. It has none. Also, the Act's ban on recording all conversations (private and non-private) is not the least restrictive means to achieve a compelling interest, especially in light of the Act's exemptions for police recording civilians. *See* Pl. PI Br., p. 11.

## D.     The Act as Applied Here Cannot Satisfy Mid-level Scrutiny.

Even were mid-level scrutiny the proper standard, defendant cannot possibly satisfy that standard. Under *O'Brien*, a restraint on expressive conduct "is sufficiently justified if it is within

the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. at 377.  Under *Ward*, a "time, place, or manner" regulations of speech in a public forum must be "justified without reference to the content of the regulated speech, . . . narrowly tailored to serve a significant governmental interest, and . . . leave open ample alternative channels for communication of the information." 491 U.S. at 791.  These two mid-level tests "embody the same standards."  *Hodgkins v. Peterson*, 355 F.3d 1048, 1057 (7th Cir. 2004).  *Accord* Ronald D. Rotunda*, Treatise on Constitutional Law* (2008), § 20.49(a); Smolla at §§ 9:10, 9:13, 9:15 - 9:17.  Government bears the burden of proof.  *Heffron v. ISKCON*, 452 U.S. 640, 658 (1981); *Chicago Cable Commc'ns v. Chicago Cable Comm'n.*, 879 F.2d 1540, 1548 (7th Cir. 1989).

Here, defendant proffers two government interests in support of applying the Act to the ACLU Program: the privacy of private conversations and effective law enforcement.  The Act as applied advances neither interest, and it fails to leave open ample alternative channels.

### 1. The Act as Applied Does Not Advance the Privacy Interest.

Defendant states that the governmental purpose behind the Act (as amended in 1994) is "[t]o protect the privacy of private conversations."  Def. PI Resp., p. 14.  *See also id.* at pp. 9, 13; Def. MTD Br., pp. 14-15.  The ACLU agrees that government has an interest in protecting the privacy of private conversations.  *See Bartnicki v. Vopper*, 532 U.S. 514, 532 (2001), (recognizing this interest, and reasoning that privacy "encourag[es] the uninhibited exchange of ideas and information among private parties").  This interest undergirds legitimate statutes that regulate the audio recording of private conversations.  *See, e.g.,* 18 U.S.C. § 2510(2) (limiting the federal eavesdropping statute's regulation of oral communications to those "uttered by a

person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation").[6]

In the context of mid-level scrutiny, narrow tailoring means the government "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Ward*, 491 U.S. at 799; *Turner Broad. Sys. v. F.C.C.*, 512 U.S. 622, 682 (1994). Here, "a substantial portion of the burden on speech" (*i.e.*, the application of the Act to the non-private conversations subject to the ACLU Program) "does not serve to advance" the government's goals (*i.e.*, protecting the privacy of private conversations). The ACLU Program extends only to conversations where: (1) a police officer is performing their public duties; (2) the officer is in a public place;[7] (3) the officer is speaking at a volume audible to the unassisted human ear; and (4) the person making the recording is acting in a manner that is otherwise lawful. *See* Compl., ¶ 1. Thus, among other things, there is no harassment or stalking of officers, no interference with officers, and no trespassing. Accordingly, there is an insufficient nexus between the Act's ends, and its application to the ACLU Program. *See also* Pl. PI Br., pp. 11-12. Without this nexus, speech restraints fail *O'Brien* and/or *Ward* scrutiny.[8]

---

[6] Defendant obliquely suggests a separate interest in protecting "the rights of speakers to be recorded only after consent." Def. PI Resp., p. 9; Def. MTD Br., p. 14. However, there is no government interest that is "important or substantial," *O'Brien*, 391 U.S. at 377, or "significant," *Ward*, 491 U.S. at 791, in preventing the recording of non-private conversations, whether or not such recording is consensual, for all the reasons set forth in this part.

[7] Thus, the ACLU Program would not result in an officer being "constantly recorded at any time," or at "every moment they are at work." Def. PI Resp., p. 14.

[8] *See, e.g., United States v. Grace*, 461 U.S. 171, 181 (1983) (insufficient nexus between a ban on expressive activity on Supreme Court sidewalks, and the interests in traffic flow and safety); *Hodgkins*, 355 F.3d at 1060-62 (insufficient nexus between a juvenile curfew with an inadequate exception for First Amendment activity, and the interest in safety); *Porter v. Bowen*, 496 F.3d 1009, 1021-26 (9th Cir. 2007) (insufficient nexus between a ban on "vote swapping," and the interests in preventing voter fraud and corruption); *Vincenty v. Bloomberg*, 476 F.3d 74, 86-87 (2nd Cir. 2007) (insufficient nexus between a ban on spray paint possession, and the interest in preventing unlawful graffiti); *Conchatta Inc. v. Miller*, 458 F.3d 258, 267-68 (3rd Cir. 2006) (insufficient nexus between a ban on nude performances in all facilities serving alcohol, and the interests in preventing prostitution and diminution in property values); *United States v. Popa*, 187 F.3d 672 (D.C. Cir. 1999) (insufficient nexus between a ban on anonymous harassing phone calls, as applied to a critic of government, and the interests in preventing harassment).

Courts routinely hold that both police officers and civilians engaged in such officer-civilian conversations have no reasonable expectation of privacy, and thus that the audio recording of such conversations does not violate statutory bans on recording private conversations. *See* Pl. PI Br., pp. 12-14 (collecting cases). *See also Maryland v. Graber*, No. 12-K-10-647 (Cir. Ct. Harford County, Md.), slip op. of Sept. 27, 2010, *attached* as Ex. G, at pp. 4-11 (so holding last week); James G. Carr, *The law of electronic surveillance* (2010) at § 3.5, p. 3:5 ("Law enforcement officers have no reasonable expectation of privacy concerning their utterances when they question suspects, [or] conduct a traffic stop or arrest . . . .").

Likewise, courts routinely hold that civilians have no reasonable expectation of privacy when they speak with or around law enforcement officials, and thus that police audio recording of such conversations does not violate the Fourth Amendment. *See, e.g., Hudson v. Palmer*, 468 U.S. 517 (1984) (conversation in a jail cell); *United States v. White*, 401 U.S. 745, 750 (1971) (conversation with a police informant who is wearing a wire); *Lanza v. New York*, 370 U.S. 139, 143 (1962) (conversation in a jail visitors' room); *United States v. Turner*, 209 F.3d 1198, 1201 (10th Cir. 2000) (conversation in a police squad car); *United States v. Clark*, 22 F.3d 799, 801-02 (8th Cir. 1994) (same). *See also Berkemer v. McCarty*, 468 U.S. 420, 438 (1984) (holding that police need not provide *Miranda* warnings during routine traffic stops, because "the typical traffic stop is public, at least to some degree"). More fundamentally, "[w]hat a person knowingly exposes to the public . . . is not a subject of Fourth Amendment protection." *Katz v. United States*, 389 U.S. 347, 351 (1967). When police and civilians speak with each other at audible levels in public, they plainly expose their words to each other and to all passersby, and thus neither has a reasonable expectation of privacy under the Fourth Amendment. Further, in upholding a First Amendment right to record other people in public places, courts have rejected the argument that such recording unduly harms the subjects. *Connell v. Hudson*, 733 F. Supp. 465, 471 (D.N.H. 1990) (rejecting as "paternalistic" the argument that photography of car crash victims invaded their "privacy"); *Dorfman v. Meiszner*, 430 F.2d 558, 562 (7th Cir. 1970)

11

(rejecting the argument that audio, video, and photography of people at a courthouse plaza would have an "unstabling effect on witnesses, jurors, and parties").

It is quite ironic that defendant advances a privacy interest in support of the application of the Act to the ACLU Program, in light of the Act's history. In *People v. Beardsley*, 115 Ill. 2d 47, 53 (1986), the Illinois Supreme Court held that the Act did not prohibit exactly what the ACLU seeks to do here—audio record on-duty police in public places—because police had no legitimate expectation of privacy in such situations. The legislature then extended the Act to non-private conversations, in order to overrule *Beardsley*, even though the Illinois Supreme Court had just held that there is no legitimate expectation of police privacy.

In short, application of the Act to the non-private police-civilian conversations subject to the ACLU Program plainly does not advance a government interest in protecting the privacy of private conversations. The narrow injunction the ACLU seeks—limited solely to these non-private conversations—would not create a "slippery slope" to "ubiquitous 'public' surveillance" of conversations (Def. PI Resp., p. 7), and would not undermine legitimate statutes that regulate the audio recording only of private conversations (*id.* at p. 7 n.1).

> ### 2. The Act as Applied Does Not Advance a Law Enforcement Interest.

Defendant claims that applying the Act to the ACLU Program advances a government interest in effective law enforcement. Def. PI Resp., pp. 14-15 (baldly asserting, without evidence or explanation, that the ACLU Program would "chill and undermine the efforts of the police"). Government has an important interest in effective law enforcement. But this interest is advanced rather than obstructed by the ACLU Program.[9]

Most critically, defendant offers no evidence whatever in support of its assertion. "In the context of a First Amendment challenge under the narrowly tailored test, the government has the

---

[9] Defendant also asserts that the ACLU "implicitly . . . intends . . . actions which will provoke a police officer's response," *i.e.*, "lawless[]" ACLU actions such as "harassment" of police and "breach of the peace." Def. MTD Br., pp. 14-15. In fact, under the ACLU Program, "the manner of recording is otherwise lawful." Compl., ¶ 1; Connell Decl., ¶ 8. . The ACLU will not breach the peace. In any event, narrow tailoring requires government to penalize the unlawful conduct, not ban the lawful speech.

burden of showing that there is evidence supporting its proffered justification." *Weinberg v. City of Chicago*, 310 F.3d 1029, 1038 (7th Cir. 2002). The self-serving and speculative testimony of defendant government officials will not suffice. *Id.*, citing *Watseka v. Illinois Public Action Council*, 796 F.2d 1547, 1556 (7th Cir. 1986), *aff'd*, 479 U.S. 1048 (1987). *See also, e.g., Annex Books, Inc. v. City of Indianapolis*, No. 09-4156, – F.3d – (7th Cir. Oct. 1, 2010) (attached as Ex. H) (on mid-level review, rejecting as insufficient the government's proffered evidence). Here, defendant offers no evidence, self-serving or otherwise, just conclusory argument. For this reason alone, defendant has failed to satisfy her burden of proving that the Act as applied here advances effective law enforcement.

Several other factors demonstrate that defendant cannot satisfy this burden. First, the Act itself exempts virtually all on-duty police audio recordings of civilians. Pl. PI Br., pp. 2-3. The legislative sponsor of this carve-out explained that allowing such audio recordings would *advance* the government interest in protecting both police and civilians from false testimony. *Id.* If police audio recordings of civilians advance effective law enforcement, it is nonsensical to assert that civilian audio recordings of police cannot *diminish* effective law enforcement.

Second, the eavesdropping statutes enacted by the federal government and all but a few other states extend only to private conversations. *Id.* at pp. 3-4 & n.1. Courts in these jurisdictions repeatedly have held that police-civilian conversations are not private, and thus that recording such conversations does not violate the eavesdropping statutes. *Id.* at pp. 13-14; *supra* at Part I.D.1. Thus, virtually every state other than Illinois has determined that civilian audio recordings of on-duty police do not diminish effective law enforcement. The ACLU is unaware of any reports from these jurisdictions of audio recording that diminished law enforcement effectiveness, and defendant offers none.

Third, civilian audio recording of on-duty police will advance accountability and transparency, which in turn will increase public trust in law enforcement—a *sine qua non* of effective law enforcement. Civilian audio-recording of on-duty police should assist the majority of police, who are doing their jobs lawfully, by rebutting any false accusations against them. As

13

to police who would do their jobs unlawfully, civilian audio recording will deter such misconduct—which will advance effective law enforcement. Where such officers persist in misconduct, civilian audio recording will help identify the particular officers in need of additional training, or perhaps punishment or removal from the force. Absent audio recordings, swearing contests now prevent government from resolving most sworn civilian allegations of officer misconduct. Pl. PI Br., p. 8. In some of these cases, police may be lying.[10] Again, audio will increase accountability—and thus promote effective law enforcement.

Not to the contrary is *Potts v. City of Lafayette*, 121 F.3d 1106, 1111 (7th Cir. 1997), which upheld as narrowly tailored a ban (with a media exemption) on bringing into a KKK rally items that could be used as weapons, including tape recorders. The government purpose was to stop tape recorders from being used as weapons—a legitimate concern, because "personal items, such as a reporter's tape recorder, had been used to injure attendees" at prior KKK rallies. *Id.* at 1109. But here, government seeks to stop civilians from using tape recorders as tape recorders, and not as weapons. It is a restraint intended to prevent a person from participating in expressive activity, *i.e.*, gathering and recording information about spoken words, including those of on-duty police. Further, the use of a tape recorder as a device to record speech does not pose any threat to public safety.

### 3.    The Act as Applied Fails the "Alternative Channels" Test.

A "time, place, or manner" regulation must "leave open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791. Here, the issue is alternative channels of information gathering. An audio recording often will provide critical evidence not available from other sources. *See supra* at p. 4 & n.2; Pl. PI Br., pp. 8-9. *Cf.* Def. PI Resp., p. 9;

---

[10] *See, e.g.,* Commission to Investigate Allegations of Police Corruption, City of New York, *Commission Report* (1994) at pp. 36-43 (collecting evidence of police perjury) (attached as Ex. I); Myron W. Orfield, Jr., *Deterrence, perjury, and the heater factor*, 63 U. Colo. L. Rev. 75, 107 (1992) (a survey showing that judges disbelieved police testimony 18% of the time, prosecutors disbelieved it 19% of the time, and public defenders disbelieved it 21% of the time); Myron W. Orfield, Jr., *The exclusionary rule and deterrence*, 54 U. Chi. L. Rev. 1016, 1049-50 (1987) (a survey showing that 19% of police officers believed police perjury was "reasonably common").

Def. MTD Br., p. 14. Just as government cannot suppress movie making because it allows book writing, government cannot suppress audio recording of police because it allows note taking.

Moreover, the Act as applied here comprises a flat ban on the ACLU Program, and "laws that foreclose an entire medium of expression" raise "particular concern" because they "can suppress too much speech." *City of Ladue v. Gilleo*, 512 U.S. 43, 55 (1994). Such flat bans on expressive modes typically are struck down. *Id.* (ban on yard signs); *Martin v. City of Struthers*, 319 U.S. 141, 145-49 (1943) (ban on distributing literature door-to-door); *Jamison v. Texas*, 318 U.S. 413, 416 (1943) (ban on distributing handbills on public streets); *Lovell v. City of Griffin*, 303 U.S. 444, 451-52 (1938) (ban on distributing leaflets within municipality).[11]

## II.    THE ACLU HAS SATISFIED ALL OTHER REQUIREMENTS FOR PRELIMINARY INJUNCTIVE RELIEF; IT HAS STANDING; AND THE *YOUNGER* DOCTRINE IS INAPPLICABLE.

As shown in Part I and in its opening brief, the ACLU has clearly satisfied the first requirement for preliminary injunctive relief—*i.e.,* a likelihood of success on the merits—and defendant's arguments to the contrary are unpersuasive. Defendant's arguments as to the other requirements for issuance of preliminary injunctive relief fare no better. Defendant's argument that the requested injunction will impermissibly disrupt the status quo of unconstitutional enforcement of the Act is flatly contrary to settled law. *See* Part *infra* II.A.1. Defendant's irreparable injury arguments likewise fly in the face of settled law recognizing that abridgement of First Amendment freedoms constitutes irreparable harm *per se*. *See infra* Part II.A.2; Pl. PI Br., Argument, § II. And defendant's public interest and balance of the equities arguments ignore the constitutional values at issue as well as the uncontested evidence presented by the ACLU. *See infra* Parts II.A.3, II.A.4; Pl. PI Br., Argument, §§ III, IV.

---

[11] Likewise, "an outright ban on expressive activity within a traditional public forum is almost by definition not narrowly tailored." *Lederman v. United States*, 89 F. Supp. 2d 29, 41 (D.D.C. 2000). *Accord Perry Educ. Ass'n. v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (in traditional public forums, "the government may not prohibit all communicative activity"). *See, e.g., Airport Commissioners v. Jews for Jesus, Inc.*, 482 U.S. 569, 575-76 (1987) (striking down a ban on all "First Amendment activities" in an airport); *Loper v. NYPD*, 999 F.2d 699, 705 (2nd Cir. 1993) (striking down ban on begging in public places throughout the city "because of the total prohibition it command[ed]").

Defendant also argues without evidence that the ACLU lacks standing. But the ACLU has standing to bring this challenge, because it has been and continues to be deterred from audio recording police speaking audibly in public by a reasonable fear of prosecution under the Act. That harm would be rectified by the grant of an injunction. *See infra* Part II.B. Finally, defendant's argument that the *Younger* doctrine precludes prosecution is wrong as a matter of law, as the *Younger* doctrine does not apply where, as here, there is no state court proceeding involving the particular plaintiff bringing the constitutional challenge in federal court. *See infra* Part II.B.

**A.      The ACLU Has Established Its Right to a Preliminary Injunction.**

**1.      A Preliminary Injunction Against Enforcement of the Act Is Appropriate Relief.**

Defendant's argument (Def. PI Resp., pp. 2-3) that the requested injunction against enforcement of the Act should be denied because it would disrupt and not preserve the status quo is one that has been squarely rejected by the Seventh Circuit. "A preliminary injunction is often said to be designed to maintain the status quo pending completion of the litigation. This is not the happiest formula—in fact it's both inaccurate (as preliminary injunctions are often issued to enjoin the enforcement of a statute or contract and thus interfere with existing practices) and empty." *Praefke Auto Elec. & Battery Co., Inc. v. Tecumseh Prods. Co., Inc*., 255 F.3d 460, 464 (7th Cir. 2001) (also collecting citations on this point). *See also Chicago United Indus., Ltd. v. City of Chicago,* 445 F.3d 940, 944 (7th Cir. 2006) ("Preliminary relief is properly sought only to avert irreparable harm to the moving party. Whether and in what sense the grant of relief would change or preserve some previous state of affairs is neither here nor there. To worry these questions is merely to fuzz up the legal standard.") (citations omitted).

Were the law otherwise, no person could secure preliminary injunctive relief against continued enforcement of an unconstitutional statute, such as the one here. In fact, courts regularly issue preliminary injunctions prohibiting enforcement of a statute likely to be found unconstitutional pending final resolution of the case. *See, e.g, Planned Parenthood of Wisconsin*

*v. Doyle,* 162 F.3d 463 (7th Cir. 1998) (granting preliminary injunction on appeal prohibiting enforcement of "partial birth abortion" statute); *Adams v. ARDC*, 801 F.2d 968 (7th Cir. 1986) (approving district court's preliminary injunction of enforcement of attorney disciplinary rule); *Charles v. Carey*, 627 F.2d 772 (7th Cir. 1980) (granting on appeal preliminary injunction against enforcement and operations of portions of statute pertaining to abortions); *Entm't Software Ass'n v. Chicago Transit Auth.*, 696 F. Supp. 2d 934 (N.D. Ill. 2010) (granting preliminary injunction enjoining an allegedly unconstitutional ordinance); *Sherman v. Twp. High Sch. Dist. 214*, 624 F. Supp. 2d 907 (N.D. Ill. 2007); *Covenant Media of Illinois, L.L.C. v. City of Des Plaines*, 2005 WL 2277313 (N.D. Ill. Sept. 15, 2005); *Wisconsin Vendors, Inc. v. Lake County*, 152 F. Supp. 2d 1087 (N.D. Ill. 2001); *Weigand v. Vill. of Tinley Park*, 114 F. Supp. 2d 734 (N.D. Ill. 2000); *Christensen v. City of Wheaton*, 2000 WL 204225 (N.D. Ill. Feb. 16, 2000); *Illinois Sporting Goods Ass'n v. County of Cook*, 845 F. Supp. 582 (N.D. Ill. 1994); *Klein v. Baise*, 708 F. Supp. 863 (N.D. Ill. 1989).

Defendant points to no case in which a court permitted continued violation of constitutional rights due to some need to preserve an unconstitutional status quo pending final resolution of the case at hand. [12]  In this case, the appropriate preliminary relief—given the ongoing irreparable harm from the violation of the ACLU's First Amendment rights—is an injunction prohibiting enforcement of the Act against the ACLU while conducting its Program pending resolution of this case on the merits.

---

[12] Defendant's citations do not support its position.  In *Brown v. Kerr-McGee Chem. Corp.*, 767 F.2d 1234 (7th Cir. 1985) (Def. PI Resp., p. 2), the relief sought was removal of waste from a contaminated property.  The court reasoned that if Kerr-McGee were still dumping waste on the property, a preliminary injunction against further dumping of wastes—that is, a change in the hypothetical status quo—would be appropriate.  However, given that Kerr-McGee had not operated on the property for 22 years, it would be "irrational" for a district court to enter a preliminary injunction ordering Kerr-McGee to remove the wastes pending resolution of the case.  *Id.* at 1240.  This was highlighted by the court's ultimate finding that the relief sought was preempted by federal law.  *Id.* at 1242-43.  Likewise, in *St. Charles Mfg. Co. v. St. Charles Furniture Corp.*, 482 F. Supp. 397, 405 (N.D. Ill. 1979), the court enjoined the defendant's ongoing use of the trademark at issue.  In neither case did a need to maintain the status quo factor into the decision to grant or not grant, respectively, a preliminary injunction.  To the extent that the Court finds, which the ACLU respectively submits is unnecessary, that a return to a "last peaceable, uncontested status" is necessary, then the ACLU submits that that status last occurred in 1994 prior to the Act's amendment to extend to public conversations.

### 2. The ACLU Is Experiencing Irreparable Harm, Which Has No Remedy at Law.

Defendant does not dispute the black letter law that a First Amendment violation is *per se* irreparable harm. *See* Pl. PI Br., Argument, § II; *see also Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("The loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate."). Instead, defendant argues that there is no First Amendment right (Def. PI Resp., p. 10), which is refuted *supra* in Part I.

Defendant also argues that "Plaintiff has alleged no facts demonstrating a probability of imminent injury." Def. PI Resp., p. 10. In fact, the ACLU has pled and submitted evidence demonstrating that it intends to begin a Program to audio record the police in public (Compl., ¶¶ 3, 16, 32; Connell Decl., ¶¶ 8-10); that it intended to do so as early as June 2010 (Connell Decl., ¶ 13); and that it has been deterred from engaging in the program by threat of prosecution (Compl., ¶¶ 29-31, 33-34; Connell Decl., ¶¶ 11-14).[13] Further, the ACLU has submitted evidence that expressive activity occurs in public places in Chicago on a recurring basis and that that the ACLU intends to engage in the ACLU Program at such events as they occur. Connell Decl., ¶ 14. In contrast, defendant has proffered no evidence. *See Jackson v. City of Markham, Ill.*, 773 F. Supp. 105, 109 (N.D. Ill. 1991) (granting plaintiff's motion for preliminary injunction and finding that "defendants do not dispute, by way of counter-affidavit or other evidence, plaintiff's contention that she could not reach her intended audience from across the street because the sidewalk on the east side of the highway is separated [and therefore] defendants have not adequately disputed plaintiff's likelihood of success on the merits and that plaintiff does have a 'better than negligible' chance of prevailing on her claims").[14]

---

[13] Additional evidence of the reasonableness of the ACLU's fear of prosecution is the attached charging documents in the following prosecutions under the Act: Christopher Drew in Cook County (Ex. J); Sekiera D. Fitzpatrick in Vermillion County (Ex. K); Adrian and Fanon Parteet in DeKalb County (Ex. L); Michael Allison in Crawford County (Ex. M); and Edward Martel Miller and Patrick D. Thompson in Champaign County (Ex. N-Ex. O).

[14] Defendant also relies here upon a discussion of exemption (i) to the Act, which is addressed *infra* in Part II.B.2.

The deterrence of the ACLU's exercise of its First Amendment rights is irreparable harm that cannot be remedied by a later award of damages. The lack of an adequate remedy at law is further proven by the existence of prosecutorial immunity precluding a claim for damages against defendant. *See Imbler v. Pachtman,* 424 U.S. 409, 431 (1976) ("[I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983.").

### 3. The Public Interest Favors a Preliminary Injunction.

Defendant asserts that the proposed preliminary injunction would disfavor the public interest because it would thwart the will of the legislature, chill the efforts of police officers, and intrude on the privacy rights of citizens. Def. PI Resp., pp. 13-15. The first of these proffered public interests is contrary to law; the other two are devoid of factual support. First, if a statute is unconstitutional, it simply does not matter if enjoining enforcement of the statute might be viewed as "thwarting the will of the people." *See Christian Legal Soc'y*, 453 F.3d at 859 ("[I]njunctions protecting First Amendment freedoms are always in the public interest."). If the law were otherwise, no injunction could ever issue against enforcement of an unconstitutional statute or ordinance. But, as discussed *supra* at Part II.A.1, state statutes, municipal ordinances, and other legislative acts are regularly subject to preliminary injunctions where they impinge on constitutional freedoms. This is consistent with a fundamental tenet of our constitutional framework: i.e., that it is the role of the judicial branch to thwart even a majority from trampling fundamental freedoms.

Defendant's asserted privacy interest is a red herring since the preliminary injunction sought is one limited to recording conversations with on-duty police in public at a volume audible to the unassisted human ear, and not private conversations. No privacy interest attaches to those conversations. *See* Pl. PI. Br., Argument, § I.C; *supra* at Part I.D.1. This is further demonstrated by exemptions (h), (h-5), and (h-10) of the Act, which allow recording of similar interactions between police and civilians. Defendant's argument that police officers would be

chilled by the injunction should be ignored, because it is a factual argument and it is not supported by a shred of evidence. *See Jackson*, 773 F. Supp. at 109. Moreover, defendant grossly mischaracterizes the relief the ACLU seeks, asserting that "[n]o person would relish the idea of being video and audio recorded every moment they are at work" and that the relief the ACLU seeks would put the police under "constant surveillance." Def. PI Resp., p. 14. But, of course, the relief the ACLU seeks would do nothing of the sort. The ACLU does not dispute that the police have limited privacy rights in locations where they have a reasonable expectation of privacy—in locker rooms, in offices where there is no public admittance, etc. The relief the ACLU seeks would only allow recording in places where it is clear beyond peradventure that police have no legitimate expectation of privacy. *See* Pl. PI. Br., Argument, § I.C; Compl., Prayer for Relief; *supra* at Part I.D.1.

> **4. Balancing the Harm to the ACLU and the Public Interest with the Potential Harm to Defendant Justifies the Preliminary Injunction.**

Balancing the hardships "involves a two-step process. First, the court must assess the plaintiff's chance of success. Next, it must balance the hardships in accordance with this determination." *Storck USA L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). The court weighs these factors using a "sliding scale" approach, whereby "the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms need favor the plaintiff's position." *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). *See also Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992) (same).

As discussed in Part I, the ACLU has a substantial likelihood of prevailing on its constitutional claim. And the harm from such infringement of its First Amendment rights is per se irreparable. *See supra* Part II.B.2. The public interest in a case involving the infringement of constitutional freedoms also favors an injunction. *See supra* Part II.B.3. This is particularly true here given the benefits of audio-recording police-civilian interactions in public. In this case, balancing is not difficult as the likelihood of success, the irreparable harm, and the public interest all point to the propriety of an injunction.

Defendant makes a potpourri of arguments under the rubric of balancing the equities. None of them have merit. First, defendant argues that the ACLU waited too long to bring this challenge (Def. PI Resp., p. 11), but cites no case law to support this argument and does not invoke the doctrine of laches as any impediment to the relief the ACLU seeks. In other words, the argument is makeweight without any substance. Moreover, it is wrong. *See Builders Ass'n of Greater Chicago v. City of Chicago*, 2001 WL 1464757, at *2 (N.D. Ill. Nov. 16, 2001) (holding that as long as an unconstitutional statute "remains in force" "it is subject to constitutional scrutiny"). And it was only recently that the ACLU decided to augment its program of monitoring on-duty police in public places by using audio/video recorders.

Defendant next argues that since the ACLU has only asked this Court to enjoin prosecution under the Act, such an injunction will leave the police free to arrest the ACLU for audio recording the police in public. Def. PI Resp., p. 11. However, if this Court awards the preliminary injunction, defendant presumably will so advise the police departments in this county. Presumably, those departments will respond by not arresting the ACLU or its agents for engaging in the kinds of audio recordings subject to the ACLU Program. Even if police make such arrests, the preliminary injunction would provide the substantial benefit of preventing prosecution. This litigation as now configured will most efficiently resolve the pertinent legal and factual disputes, despite defendant's suggestion that plaintiff should sue more government officials.

Defendant's argument that the ACLU's project is "not time sensitive" fails because even a short-term deprivation of First Amendment rights is irreparable and justifies the requested preliminary relief. *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). Here, the ACLU has already been deterred from taking action in June 2010. Connell Decl., ¶ 13. In a large vibrant city like Chicago, activities involving the police could occur on any given day, including a demonstration involving First Amendment activity,

(*see* Connell Decl., ¶ 14), and the ACLU would be deterred from exercising its First Amendment right to record the interactions between police and civilians.

Defendant speculates that a preliminary injunction "could lead to permanent and detrimental effects to current and future prosecutions." Def. PI Resp., p. 11. However, this is not a harm to the public interest if the prosecutions are in violation of the Constitution. As discussed *infra* in Part II.C, the ACLU is not currently being prosecuted, and the ACLU's challenge here is not precluded by the prosecution by defendant of others under the Act.[15]

Defendant cites to *First Defense Legal Aid v. City of Chicago*, 319 F.3d 967, 973 (7th Cir. 2003), a case that is fundamentally distinct from this one. *First Defense Legal Aid* dealt with whether an attorney had a right to confer with a witness in police custody in a police station, which is, as the court noted, not a public forum. *Id.* It focused on the right of the police to regulate the stationhouse. In this case, the ACLU is seeking to enjoin prosecution under the Act for exercising its First Amendment rights to record police officers in public.[16]

**B.    The ACLU Has Standing to Challenge the Act, and Its Challenge Is Ripe.**

**1.    Standard of Review**

Despite its statement that this Court "may properly look beyond the jurisdictional allegations of the Complaint and view whatever evidence has been submitted" (Def. MTD Br., p. 2), defendant has challenged the ACLU's standing *without submitting any evidence*. Thus, defendant has filed a "facial challenge" where "the court does not look beyond the allegations of the complaint, which are taken as true for purposes of this motion." *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444-45 (7th Cir. 2009) (comparing a "facial challenge"

---

[15] As a matter of sound and responsible public policy, a public official should desist in the prosecution of specific conduct held protected by the First Amendment by a federal court.

[16] Defendant also gives lip service to "principles of federalism" in the context of an injunction prohibiting defendant from prosecuting the ACLU under the statute but not others. Defendant provides neither citation to authority nor elaboration on how principles of federalism are implicated. Moreover, as indicated in the discussion of the *Younger* doctrine, issuing an injunction against prosecution of the ACLU for violation of the Act would not implicate any notion of federalism recognized by that doctrine. *See infra* Part II.C.

with a "factual challenge" where the court looks beyond the pleading to any submitted evidence to determine whether in fact the court has subject matter jurisdiction).  "A motion to dismiss for lack of standing should not be granted unless there are no set of facts consistent with the complaint's allegations that could establish standing."  *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 498 (7th Cir. 2005).[17]

## 2. The ACLU Has Standing Because It Has Been and Continues to Be Deterred from Engaging in Its Program by Fear of Prosecution under the Act.

As defendant recognizes, "[a] person need not risk arrest before bringing a pre-enforcement challenge under the First Amendment."  Def. MTD Br., p. 3.  Further, "[a] person who mounts a pre-enforcement challenge … need not show that the authorities have expressly threatened to prosecute him."  *Id.*, p. 4.  Here, defendant does not dispute that the ACLU intends to engage in a program of monitoring public police activity by means including common audio/video recording devices.  Compl., ¶¶3, 16.  Nor does defendant dispute that the ACLU is restrained from engaging in this conduct due to a fear of arrest and prosecution.  *Id.*, ¶¶4, 33-35. Further, defendant has not argued that it will not prosecute the ACLU for violations of the Act. Defendant's argument that there is no First Amendment right at issue is substantively addressed in Part I, *supra.*

Defendant argues that the ACLU is insulated from prosecution by the Act's exemption (i), which permits recording by a party (or another at the request of a party) "under reasonable suspicion that another party to the conversation is committing, is about to commit, or has committed a criminal offense against the person or a member of his or her immediate household."  *See* 720 ILCS 5/14-3(i); Def. MTD Br., pp. 5-6.  Defendant's argument is simply wrong.  The ACLU Program applies "when (a) the officers are performing their public duties, (b) the officers are in public places, (c) the officers are speaking at a volume audible to the unassisted human ear, and (d) the manner of recording is otherwise lawful."  Compl., ¶3.  Thus,

---

[17] If evidentiary support were deemed appropriate, the Connell Declaration attests to the allegations of the complaint relevant to standing.  *See* Connell Decl., ¶¶ 3-13.

the ACLU Program applies regardless of how the police act, how they are reasonably expected to act, and to whom their actions are directed.  Among other things, the ACLU Program extends to recording official police programs that might be technically lawful but nonetheless are objectionable; police activity at demonstrations, even where there is no indication of present or future police misconduct; police misconduct that does not comprise a crime; police misconduct where a civilian without legal training cannot possibly be expected to determine whether there is reasonable suspicion of a crime; and police misconduct that comprises a crime committed against a third party.  *Cf.* Def. MTD Br. at p. 5 (erroneously asserting that the ACLU Program only extends to "criminal conduct").  In all of these aspects of the ACLU Program, exemption (i) of the Act would provide no defense.  Indeed, only rarely will there be reasonable suspicion that police are about to commit a crime in public.

Defendant admits that the Act prohibits the ACLU Program.  Def. MTD Br., p. 7 ("Plaintiff is precluded from audio recording any conversations without consent of all parties to such conversation, including encounters between law enforcement and citizens.").  Further, defendant is actively prosecuting at least one person under the act for the same conduct.  Compl., ¶30.[18]  The ACLU thus has a reasonable fear of prosecution.

The case law cited by defendant demonstrates that the ACLU has standing to bring this pre-enforcement challenge.  In *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2717 (2010), in the context of a pre-enforcement First Amendment challenge, the Supreme Court found a threat of prosecution, and thus standing, where (1) the plaintiffs intended to engage in the prohibited activities, (2) the government had charged others with violations of the statute at issue, and (3) the government had not indicated that the plaintiffs would not be prosecuted if they followed through with their intended activities.  Those facts are virtually identical to those pled by the ACLU here.

---

[18] And other state's attorneys have prosecuted other individuals other the Act.  Compl., ¶31.

The Seventh Circuit's decision in *Shirmer v. Nagode*, – F.3d –, 2010 WL 3431627 (7th Cir. Sept. 2, 2010) (Def. MTD Br., pp. 3-4), likewise demonstrates by counter-example why the ACLU has standing here. In that case, the two plaintiffs peacefully demonstrated at the annual Taste of Chicago festival, when they were unlawfully ordered to disperse under the city's "disorderly conduct" ordinance, and then arrested. *Id.* at **1-2. The Seventh Circuit held that while the plaintiffs had standing to pursue "their claims for damages based on what may well have been unlawful arrests that also interfered with expression protected by the First Amendment," they did not have standing to seek an injunction. *Id.* at *3. Their arrest was clearly not authorized by the disorderly conduct ordinance, so an injunction against application of the ordinance would not have any impact. *Id.* at *5. If, however, there was ambiguity about whether the arrest was authorized under the statute, "a reasonable fear of prosecution can provide standing for a First Amendment challenge." *Id. See also Majors v. Abell,* 317 F.3d 719, 721 (7th Cir. 2003) ("[I]f it arguably covers [the conduct], and so may deter constitutionally protected expression…, there is standing"). Here, the Act clearly prohibits the planned ACLU Program, which is far broader than the audio recording permitted under exemption (i).

As in *Holder,* the ACLU intends to engage in the activities prohibited by the Act by audio recording police in public without their consent. As in *Holder*, defendant has charged others with violations of the Act in question. And, as in *Holder*, defendant has not indicated that the ACLU will not be prosecuted for violating the Act when it undertakes the ACLU Program described at Paragraph 3 of the Complaint. Thus, the ACLU faces a credible threat of prosecution and has standing to bring this claim.

### 3. The ACLU's Challenge Is Ripe Because the Act Is Presently Deterring the ACLU Program.

The ACLU's challenge to the Act is ripe because the Act is presently deterring the ACLU from audio recording police officers in public. *See, e.g.,* Compl., ¶ 33. The cases cited by defendant demonstrate the point. In *Metro Milwaukee Association of Commerce v. Milwaukee Co.*, 325 F.3d 879 (7th Cir. 2003) (Def. MTD Br., pp. 4-5), the Seventh Circuit found

that a challenge to a local ordinance was ripe where the ordinance had *never* been enforced. The court reasoned that "even though enforcement is not certain, the mere threat of future enforcement has a present concrete effect" on the plaintiff's actions. *Id.* at 882. "When a party is faced with the choice between the disadvantages of complying with an ordinance or risking the harms that come with noncompliance, we are satisfied that an actual 'case or controversy' exists that allows a court to act." *Id.* at 883. *See also Smith v. Wisconsin Dept. of Agric., Trade, & Consumer Prot.*, 23 F.3d 1134, 1141-42 (7th Cir. 1994) ("[P]laintiff should not be required to face the Hobson's choice between forgoing behavior that he believes to be lawful and violating the challenged law at the risk of prosecution.").

Defendant argues that the ACLU has "alleged no facts demonstrating a probability of imminent injury" because "[i]t is sheer speculation on the part of Plaintiff that its members will happen onto a confrontation between the police and third parties." Def. MTD Br., p. 6. Again, this is a distortion of the ACLU Program, which would not involve "happen[ing] onto" confrontations between the police and third parties, but rather would involve monitoring and observing police conduct in public places, including at rallies. Compl., ¶¶14, 16. No confrontation is required. The police would be monitored regardless of the nature (legal, illegal, or in between) of their conduct, or of what the police conduct was reasonably expected to be. *Id.*, ¶3. The ACLU's injury stems from the likelihood that if it begins audio recording police in public (again, regardless of the legality or reasonably expected legality of the police conduct), it would be prosecuted by defendant under the Act. That is evidenced by the ongoing criminal prosecution of Mr. Drew (*id.*, ¶ 30) and other recent prosecutions under the Act in Illinois (*id.*, ¶31).

Like the plaintiffs in the cited cases, the ACLU faces Hobson's choice: either comply with the Act and refrain from engaging in its Program in order to avoid prosecution, or begin the Program and face prosecution by defendant. In this situation, there can be no doubt that the claim is ripe.

C.    **The Younger Abstention Doctrine Is Inapplicable Where, as Here, There Is No Underlying State Case Against This Plaintiff.**

Defendant repeatedly argues (Def. PI Resp., pp. 3-4; Def. MTD Br., pp. 11-13) that *Younger v. Harris*, 401 U.S. 37 (1971), precludes this Court from hearing this case and granting the requested relief.  This argument is contrary to law.  The *Younger* doctrine applies only where there is an ongoing state proceeding against the particular plaintiff seeking relief in federal court. "In the absence of [a state] proceeding . . . a plaintiff may challenge the constitutionality of the state statute in federal court."  *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 930 (1975).  The U.S. Supreme Court in *Doran* rejected defendant's argument here—*i.e.,* that a prosecution of a non-party in state court precludes a federal claim brought by the ACLU.  In *Doran*, three bars initially filed suit seeking injunctive relief from a city ordinance precluding topless dancing.  *Id.* at 924.  Two of the three suspended the topless entertainment pending the federal litigation, but the third did not, and was prosecuted.  *Id.*  The Supreme Court held that each bar "should be placed in the position required by our cases as if that respondent stood alone."  *Id.* at 929.  The Supreme Court then held that the one bar (M&L) that had been prosecuted was subject to *Younger* abstention, while the two that had not been subject to prosecution while challenging the statute were not.  *Id.* at 930.  *See also id.* at 931 ("Moreover, neither declaratory nor injunctive relief can directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs, and the State is free to prosecute others who may violate the statute.").

"*Younger* abstention is appropriate *only* when there is an action in state court against the federal plaintiff and the state is seeking to enforce the contested law in that proceeding."  *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 665 (7th Cir. 2007) (emphasis added).  *See also Steffel v. Thompson*, 415 U.S. 452, 472 (1974) ("Requiring the federal courts totally to step aside when no state criminal prosecution is pending against the federal plaintiff would turn federalism on its head."); *Allen v. Allen*, 48 F.3d 259, 261 (7th Cir. 1995) ("[T]hese abstention doctrines extend only to parties to ongoing state court litigation while specifically leaving non-parties free

to pursue their claims."); *Lowery v. Schnorf*, 1998 WL 341835, *4 (N.D. Ill. June 18, 1998) ("The *Younger* abstention doctrine, however, extends only to parties to the ongoing state court litigation.").

In *Hoover v. Wagner*, 47 F.3d 845, 848 (7th Cir. 1995), the Seventh Circuit made clear why the *Younger* doctrine is inapplicable in precisely these circumstances, where the plaintiff is not currently being prosecuted in state court:

> They fear eventual prosecution if they continue with their protest activities, but no prosecution has been instituted . . . . The plaintiffs do not now have and may never have an opportunity to make their constitutional arguments by way of defense to a prosecution or other proceeding brought by the state against them, unless they violate the injunction, and they are not required to do that in order to get a determination of its constitutionality.

There is no pending state court prosecution of the ACLU so the *Younger* doctrine plainly does not apply.

## CONCLUSION

For all of the reasons addressed above, the ACLU respectfully requests that the Court deny defendant's motion to dismiss and grant a preliminary injunction prohibiting defendant from enforcing the Act as applied to the ACLU's audio recording of police officers, without the consent of the officers, when: (1) the officers are performing their public duties; (2) the officers are in public places; (3) the officers are speaking at a volume audible to the unassisted human ear; and (4) the manner of recording is otherwise lawful.

DATED: October 6, 2010

Respectfully submitted:

s/ Richard J. O'Brien

_____
Counsel for plaintiff

| | |
|---|---|
| HARVEY GROSSMAN | RICHARD J. O'BRIEN |
| ADAM SCHWARTZ | LINDA R. FRIEDLIEB |
| KAREN SHELEY | MATTHEW D. TAKSIN |
| Roger Baldwin Foundation of ACLU, Inc. | Sidley Austin LLP |
| 180 N. Michigan Ave. Suite 2300 | One South Dearborn |
| Chicago, IL 60601 | Chicago, IL 60603 |
| (312) 201-9740 | (312) 853-7000 |