UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THE AMERICAN CIVIL LIBERTIES
UNION OF ILLINOIS,

                Plaintiff,

      vs.

ANITA ALVAREZ,

             Defendant.

10 C 5235

Honorable Judge
Suzanne B. Conlon

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

    Defendant, ANITA ALVAREZ, State's Attorney of Cook County ("State's Attorney Alvarez" or the "State's Attorney"), through her assistants, PATRICK T. DRISCOLL, JR., DONALD J. PECHOUS, PAUL A. CASTIGLIONE, JEFFREY S. MCCUTCHAN, and JAMES C. PULLOS, respond to Plaintiff's Motion for a Preliminary Injunction as follows:

**I.**    ***Younger v. Harris* Precludes Federal Intervention of the Act.**

    Plaintiff asserts that *Younger* does not apply because there is no pending criminal prosecution against the ACLU. *See Younger v. Harris*, 401 U.S. 37 (1971). Specifically, Plaintiff states "[t]he *Younger* doctrine applies only where there is an ongoing state proceeding against the particular plaintiff seeking relief in federal court." *See* Pl. Br., p. 27. Plaintiff cites that the only actual prosecution at this time is against a third-party, and Plaintiff contends that this prosecution does not invoke the *Younger* doctrine.

    *Younger* applies to this case because Plaintiff asserts that it faces imminent prosecution if it violates the Illinois Eavesdropping Act, 720 ILCS 5/14-1, et seq. ("the Act"). Plaintiff

contends that it has standing in this suit. Pl. Br., pp. 22-26. Plaintiff cannot have standing without facing an imminent threat of prosecution for violations of the Act; in other words, if Plaintiff has standing in this lawsuit, Plaintiff faces an imminent threat of prosecution for its program. Plaintiff submits that it has two choices: (1) comply with the Act, or (2) face prosecution by the Defendant. Pl. Br., p.26. Plaintiff unequivocally contends that "[u]nless enjoined by this Court, defendant will continue to prosecute, pursuant to the Act, people who audio record police officers performing their public duties in public places." Compl. ¶ 34. Plaintiff's insistence that is has standing inextricably implicates the *Younger* doctrine.

Because prosecution of the Plaintiff, according to its pleadings, is imminent, it will be allowed a prompt opportunity to resolve this dispute with the Act in criminal court. If a criminal prosecution is imminent, then a federal court "might well abstain on comity grounds – for the prosecution would offer [the plaintiff] an opportunity to present its legal arguments, and states are entitled to insist that their criminal courts resolve the entire dispute." *520 South Michigan Avenue Associates, Ltd. v. Devine*, 433 F.3d 961, 963 (7th Cir. 2005). In this case, Plaintiff asserts that it has the exclusive options of compliance with the Act or face prosecution. In proving this point, Plaintiff points to the prosecution of *People v. Drew*, No. 10-cr-4601 (Cook County Cir. Ct.), as an example of the Defendant's intention on enforcing violations of the Act.

Plaintiff asserts that *Younger* does not apply because it is not *currently* being prosecuted for violations of the Act. However, the court in *520 South Michigan* articulated a broader interpretation for abstention. The Seventh Circuit has stated that a court may apply the abstention doctrine if it finds that the plaintiff faces *imminent* prosecution. The underlying reasoning of this interpretation is that conflicts involving state issues should be promptly addressed in a state

proceeding; however, if this is not possible, then the federal court may resolve the dispute. It serves to mention that federal intervention should be restrained where, as in this case, both sides are separated from a pending criminal prosecution by only the decision to affirmatively execute the Plaintiff's program -- which Plaintiff ensures is its intention. As a result, Plaintiff's assertion that it has standing due to an imminent and actual injury, i.e., the threat of prosecution, has moored itself to *Younger* abstention. The court in *520 South Michigan* specifically realized that abstention under comity principles is based on substance and not form. 433 F.3d at 963. There is no substantial distinction between a criminal defendant because of a violation of the Act from an individual that represents that he will surely and immediately violate the Act. It would be inconsistent for Plaintiff to assert that its threat of prosecution is imminent for standing purposes but not imminent for *Younger*. Plaintiff is standing on the courthouse steps of a criminal prosecution in its allegations, and its conclusion that an Illinois state court cannot afford the appropriate and timely remedy in this imminent situation presents a narrow reading of *Younger* that is not supporter by *520 South Michigan*. The only just result in such a set of circumstances is that a federal court decline to intervene in such an issue that Plaintiff expresses will play out immediately in state court.

## II. **Plaintiff Does Not Establish That Plaintiff Has A Constitutional Right To Record Police Encounters.**

Plaintiff asserts that its police monitoring program is a valid derivation of the police officers' right to speak. In order for Plaintiff to arrive at this conclusion, Plaintiff submits that all police officers are willing speakers as a matter of law because police officers must speak during the execution of their official duties. Plaintiff's argument is flawed.

The Court has held that the predicate requirement for the freedom to receive is that of the "willing speaker." "Imagining the existence of a willing speaker runs contrary to the Supreme Court's command that injuries-in-fact must be 'actual or imminent, not conjectural or hypothetical.'" *Bond v. Utreras*, 585 F.3d 1061, 1078 (7th Cir. 2009). In fact, Plaintiff concedes that the right to receive information involves a "willing speaker;" however, Plaintiff stops its analysis at that point. Pl. Br., p.5. What Plaintiff has failed to recognize is that the right to receive does not exist without a willing speaker. In other words, as mentioned in *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756 (1976), freedom of speech presupposes a "willing speaker." Where a willing speaker exists, the protection afforded is to the communication, to its source and to its recipients both. *Id.* Under Article III standing requirements, "[w]hether the injury is phrased as a deprivation of information that the listener would find useful or the interference with a relationship between speaker and listener, a government regulation cannot cause that injury unless petitioners can identify a willing speaker." *Competitive Enterprise Institute v. U.S. Dep't of Transp.*, 856 F.2d 1563, 1566 (D.C. Cir. 1988).

Plaintiff ostensibly does not dispute this requirement; however, Plaintiff does not heed the gravity or the significance to the Court's requirement of a "*willing* speaker." Plaintiff draws an assumption that on-duty police officers are always willing speakers; however, this belies precedent's rationale. Plaintiff cannot seek redress for an infringement of its right to receive information without first establishing the existence of a regulation imposed on a willing speaker. *Virginia State Bd. of Pharmacy*, 425 U.S. at 756; *see Basiardanes v. Galveston*, 682 F.2d 1203, 1211 (5th Cir. 1982); *see also Frissell v. Rizzo*, 597 F.2d 840, 848 (3rd Cir. 1979)(holding that

recipients of protected speech only have standing to challenge the restrictions on speech if the speaker himself is precluded from making the challenge).

In this case, Plaintiff has not established that the police officers' speech is subject to a restriction or that the officers are precluded from making a challenge to such a restriction, both of which are necessary in order for the Plaintiff to seek relief under the "right to receive." Plaintiff does not allege that the Act restricts the speech of any of the participants to any conversations, and without alleging a restriction of a speaker, Plaintiff lacks standing to raise a right to receive claim. Instead, Plaintiff has extracted the concept of "right to receive" without regard to the context such a right was articulated, i.e., Plaintiff can only have a right to receive where a willing speaker is limited by a regulation. Because Plaintiff does not demonstrate that a speaker's right to speech is regulated, no further analysis is necessary to demonstrate Plaintiff's lack of standing.

However, assuming *arguendo* such a restriction exists; Plaintiff does not show a willing speaker. Furthermore, according to Plaintiff, an on-duty police officer presupposes a *willing* speaker because speaking to civilians is part of his job. This position is not justified by any supporting authority. The Court requires a speaker with a specific intent to voluntarily seek out an audience, and without such a speaker, the right to receive is not ripe. In other words, the Court requires that a speaker have a willing desire to be heard before a right to receive is created. Plaintiff's reasoning leads to the conclusion that *any* utterance implicitly contains the requisite "willingness" intent which then triggers a listener's right to receive. If the Court intended any speaker to be a willing speaker because the words are uttered, the Court would not have expressly required the speaker's specific intent of a "*willing* speaker" prior to the right to

receive; but rather, the Court would have held that any "speaker" automatically invokes the right to receive. This was not the Court's reasoning. In *Virginia State Bd. of Pharmacy*, the Court ensured that the speaker be allowed to decide whether he wanted to become a member of public discourse or whether he wanted to speak under limited circumstances, even if that includes as a member of a police department.

Plaintiff's reasoning calls into question why it would matter that an officer was on-duty and in public if the fact that any speaker will trigger a "right to receive/record." Plaintiff's interpretation would lead to untamed results, i.e., any private conversation that is overheard could be surreptitiously recorded since the existence of the speaker (although in private) automatically triggers the right to record, without regard for the speaker's intended audience. Although Plaintiff can't stand to bear it, the speaker has the right of first refusal in whether he or she is deprived of First Amendment liberties. Plaintiff's position improperly elevates the rights of the listener above the rights of the speaker.

Moreover, Plaintiff argues that the Act violates its right to record police encounters, but Plaintiff does not identify any precedent on point. Plaintiff relies on *Schnell v. City of Chicago*, 407 F.2d 1084, 1086 (7th Cir. 1969). However, in *Schnell*, the court held that members of the press sufficiently plead a cause of action where they sought injunctive relief allowing them to photograph the 1968 Democratic National Convention in Chicago and related street activities.

This lawsuit is highly distinguishable from *Schnell*. In *Schnell*, the court ruled that members of the press have stated a constitutional cause of action related to the news media's right to gather, including photograph, events related to the 1968 Democratic Convention. At the time that the court issued its opinion in that case, the court was allowing the press to record an

inherently public demonstration and gathering of political ideas. Even though we recall the history surrounding those events, the court in *Schnell* was not specifically granting the press a right to photograph police officers or conduct oversight on the officers' conduct.

In our case, Plaintiff asserts that "supporters" of the ACLU should be allowed to audio record any encounters with police so long as the encounter is public. Plaintiff does not allege that it intends to photograph or video record a public gathering and any such recordation of police is merely incidental. Plaintiff's position is far more direct. Plaintiff wants to audio record police officers who are on-duty and engaged in public encounters with civilians. Plaintiff's position runs afoul of the First Amendment's application.

In this case, Plaintiff does not demonstrate any press credentials; therefore, Plaintiff does not have a right to gather as a member of the press. Moreover, Plaintiff does not demonstrate how the police officers are attempting to engage in the free exchange of ideas during the ACLU program. Police officers at public events are not free to join or condemn the content of the speech; but rather, they provide the means to ensure safety in furtherance of such discourse within the framework of the Fourth Amendment. If these officers determine that peace is breached or violations of the law are on-going, the officers will act. Police officers do not assemble for the purpose of voicing their satisfaction or dissatisfaction with society, its members, or its institutions. In the event that it is necessary to approach a civilian under their duties, this encounter is not similar to a speaker at a public rally. In such a scenario, a police officer is attempting to enforce the law, whereas a speaker at a public rally is disseminating a message to the public.

Moreover, Plaintiff's ominous representations that the Act exempts all things law enforcement are inaccurate. If Plaintiff closely reads the Act, specifically 720 ILCS 5/14-3(h), (h-5), and (h-10), Plaintiff may discover that a police officer is not free to audio record with impunity. The General Assembly has articulated narrow exceptions to the application of the Act.

Moreover, *Potts v. City of Lafayette*, 121 F.3d 1106 (7th Cir. 1997) does not establish the right to record a public event. In *Potts*, the court upheld the City of Lafayette's prohibition of the plaintiff bringing in his tape recorder to a Ku Klux Klan rally without valid media credentials. In that case, the court held that "there is nothing in the Constitution which guarantees the right to record a public event." At 1111. In *Potts*, the court found that banning "weapons," including tape recorders at public meetings is permitted as a valid time, place, and manner restriction on First Amendment activities.

The holding in *Potts* provides clarity to the case at bar and bolsters Defendant's argument that there is no constitutional right to record. *Potts* stands for the proposition that a public gathering, where the speaker has an expectation of the unfettered dissemination of his utterances, there is no right to record such an event. Plaintiff's program highlights the dissonance from the decision in *Potts*. In other words, if Plaintiff's program was applied to the fact in the *Potts* case, Plaintiff would not seek to record the actors at the KKK rally; but rather, Plaintiff would assert a constitutional right to record the independent by-standers to such an event. Surely, if *Potts* stated that there is no right to record the willing speakers at a rally, then it only stands to reason that there is no right to record unwilling police officers engaging in their duties.

### III. **The Act Does Not Restrict Content-Based Speech.**

Plaintiff misapplies the concepts of content based speech restrictions. Plaintiff asserts that the Act discriminates among speakers and content. Plaintiff relies on *Chicago v. Mosley*, 408 U.S. 92, 100-101 (1972) to support its argument that favoring one group over another amounts to viewpoint discrimination. In *Mosley*, the Court held that an ordinance that allows only peaceful labor picketing but not any other types of picketing implicates Equal Protection and the First Amendment. In *Mosley*, the Court identified that picketing is expressive conduct and favoring one viewpoint to another requires that the regulation is narrowly tailored to serve a substantial governmental interest. *Id.* at 99.

*Mosley* is not applicable to this case. The Act does not apply differently to any group engaged in expressive conduct. First, audio recording is not expressive conduct. Second, although a police officer, in narrow situations, like a traffic stop with a mounted in-car camera, is allowed to record the conversation of the subject(s) of the traffic stop pursuant to *720 ILCS 5/14-3(h)*, the Act does not apply to any particular viewpoints. The Act does not apply differently to any speakers that hold historical viewpoints to those that hold the opposite historical viewpoint. The Act applies uniformly to all civilians, with narrow exceptions for police officer-civilian encounters.

Plaintiff states that the act discriminates among speakers because "it allows on-duty police to make virtually any audio recording of civilians, while forbidding civilians to make virtually any audio recording of police. P. 6. Moreover, this same "one-sided license" forbids civilians from creating an audio record for later use to advance their viewpoint of what occurred. P.6. Plaintiff asserts that audio recording is essential to advance the Plaintiff's viewpoint. In

reality, Plaintiff is referring to a desire to bolster its credibility through creating audio recording. Plaintiff apparently submits that the value of its viewpoint will be maximized by audio recording; however, no authority advances such a position.

Plaintiff argues that the Act imposes viewpoint discrimination against the ACLU because a police officer can audio record certain encounters where the Plaintiff is precluded. For example, in Plaintiff's only evidence with any evidentiary value is the affidavit Ex. C of Pl. PI. In that document, Plaintiff proffers that its viewpoint was discriminated against during June 2010 because it was unable to audio/video record the Chicago Police Department who were engaging in the suspicionless searches of containers on public ways near Chicago's lakefront. Plaintiff's own example does not support the contention that this was viewpoint or speaker discrimination. Plaintiff does not support what viewpoint is treated unfairly. Moreover, in this example, the police are not allowed a special exemption because they are police officers under the Act. Closer reading suggests that the police are not allowed to audio record these encounters, unless in the context of those exemptions specifically enumerated by the Act.

Despite Plaintiff's best efforts to attach content based restrictions, Plaintiff cannot establish such discrimination.

## IV. <u>The Act Is A Valid Time, Place, and Manner Restraint.</u>

Assuming that Plaintiff has a constitutional right to record a police officer encounter with a civilian, the Act provides a valid content neutral time, place, and manner restraints.

The Act precludes the recording of almost any conversation, regardless of the subject or viewpoint of the conversations which is being recorded. "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is

whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.* "Government regulation of expressive activity is content neutral so long as it is '*justified* without reference to the content of the regulated speech.'" *Id.* (emphasis original).

In this matter, the Act does not distinguish among the subject or viewpoint which is precluded from being recorded. Plaintiff asserts that the Act's exemptions, although on extremely limited bases, amount to viewpoint discrimination. Plaintiff's argument is unsupported and irrational. Perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991). Plaintiff's argument is not developed on this point other than to ask this court to draw its own conclusions.

A regulation of the time, place, or manner of protected speech must be narrowly tailored to serve the government's legitimate, content-neutral interests but that it need not be the least restrictive or least intrusive means of doing so." *Ward*, 491 U.S. at 798. A statute is narrowly tailored if it targets and eliminates no more than the exact source of the "evil" it seeks to remedy. *Frisby v. Schultz*, 487 U.S. 474, 485 (1988). "As a general matter, it is clear that a State's interest in protecting the safety and convenience of persons using a public forum is a valid governmental objective." *Heffron v. Int'l Soc. for Krishna Consciousness*, 452 U.S. 640, 650 (1981)(citations omitted). Consideration of a forum's special attributes is relevant to the constitutionality of a

regulation since the significance of the governmental interest must be assessed in light of the characteristic nature and function of the particular forum involved. *Id.*

Plaintiff contends that where a police officer is allowed to audio record a civilian encounter, it too should be free to do so. Accordingly, these exemptions that Plaintiff identifies are: (1) the use of a police officer's in- car video camera; (2) conversations with an occupant inside a police car; and (3) conversations during the use of a taser. *See* Compl. ¶ 26, *see also* 720 ILCS 5/14-3(h), (h-5), and (h-10). The State has a legitimate basis for precluding Plaintiff from audio recording these encounters.

In *Colten v. Kentucky*, 407 U.S. 104, 109 (1972), the Court held that a disorderly conduct ordinance was not violative of an individual's First Amendment where it prohibited an officer from conducting his official duties at a traffic stop. The Court reasoned that a State has "a legitimate interest in enforcing its traffic laws and its officers were entitled to enforce them free from possible interference or interruption from bystanders, even those claiming a third party interest in the transaction." *Id.* The Court's reasoning is relevant here.

In this case, Plaintiff's are seeking the same rights of audio recording as provided under the above stated exemptions to the Act. However, law enforcement has a legitimate interest in only allowing police officers these exemptions. These exemptions demonstrate either the use of an automobile or the use of a taser. Police officers have an interest in keeping out interference or interruption in these situations in order to make sure that the officer can concentrate on the community's safety at large.

## V. **Plaintiff Has Not Demonstrated An Actual and Imminent Injury.**

Plaintiff does not meet the elements required to establish standing for prospective injunctive relief because Plaintiff cannot establish the nature and source of a First Amendment right under the Act. *See Bond v. Utreras*, 585 F.3d 1061, 1073 (7th Cir. 2009). In order to establish standing for prospective injunctive relief, the plaintiff must show that: (1) it is under threat of an actual and imminent injury in fact; (2) there is a casual relation between that injury and the conduct to be enjoined; and (3) it is likely, rather than speculative or hypothetical, that a favorable judicial decision will prevent or redress that injury. *Summers v. Earth Island Institute*, 129 S. Ct. 1142, 1149 (2009).

In this case, Plaintiff contends that members or supporters of its organization will take to the streets to conduct surveillance of police officers where "(1) a police officer is performing their [sic] public duties; (2) the officer is in a public place; (3) the officer is speaking at a volume audible to the unassisted human ear; and (4) the person making the recording is acting in a manner that is otherwise lawful." *See* Compl., ¶ 1, Pl. Comb. Br., p. 10. Plaintiff operates as a non-for-profit organization containing 20,000 members and supporters, including officers, board members, employees, agents, and volunteers. Compl. Wherefore Cl. ¶ B, Compl. ¶ 7. Yet, even with all of these individuals participating in Plaintiff's proposal, Plaintiff's pleadings do not show any imminent and actual harm.

Plaintiff's pleadings result in only speculative injury that is not supported by its pleadings. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983). Plaintiff alleges that it will participate in audio recording police officers and disseminating such recordings; however, Plaintiff cannot perform this function without participation of individuals. Plaintiff has not

asserted that such participation is embraced by membership and that these individuals will advance these goals in the strict manner the ACLU represents. Plaintiff has only pleaded an organizational goal: audio record police-civilian encounters. However, Plaintiff must assert more than a goal that is thwarted, but assert that membership is attempting to audio record the police but for the enforcement of the Act. Plaintiff attaches no affidavits in response to Defendant's Motion to Dismiss offering support to its representation that any members are currently dissuaded from conducting audio surveillance because of the Act.

Plaintiff argues that it has sufficiently pleaded a narrow cause of action against the application of the Act vis-à-vis Plaintiff's police monitoring program. In reality, Plaintiff has alleged that it *believes* that membership will not carry out its organizational goal of conducting police monitoring because of the Act. Plaintiff's conclusion requires this Court to assume the conduct of third parties that they will carry out the conduct as suggested without any proof.

## CONCLUSION

Defendant requests that this Honorable Court dismiss Plaintiff's Complaint in its entirety.

Respectfully Submitted,

ANITA ALVAREZ
State's Attorney of Cook County

By:     /s/ James C. Pullos
James C. Pullos
ARDC#6275728

Patrick T. Driscoll, Jr.
Donald J. Pechous
Paul A. Castiglione
Jeffrey S. McCutchan
Assistant State's Attorney
500 Richard J. Daley Center
Chicago, Illinois 60602