## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| THE AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:10-cv-05235 |
| ANITA ALVAREZ, Cook County State's Attorney, in her official capacity, | ) ) ) ) | Judge Suzanne B. Conlon<br><br>Magistrate Judge Sydney I. Schenkier |
| Defendant. | ) ) | |

### PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
### TO AMEND JUDGMENT, TO FILE AN AMENDED COMPLAINT,
### AND FOR A PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiff The American Civil Liberties Union of Illinois (the "ACLU") alleges that the Illinois Eavesdropping Act (the "Act") violates the First Amendment as applied to certain civilian audio recording of on-duty police. On October 28, 2010, this Court held that the ACLU lacked standing, and dismissed the case without prejudice. *See* Dkt. Nos. 32-34. On November 18, the ACLU filed the pending motion. *See* Dkt. Nos. 35-36. The ACLU submitted a proposed amended complaint addressing the standing issues noted by this Court. On December 10, defendant Anita Alvarez opposed this motion, arguing that the proposed amendment is futile because the ACLU's allegations as amended do not establish standing. *See* Alv. Resp. pp. 1, 2, 4, 14.[1]

---

[1] As used herein, "ACLU Mem." means the opening memorandum in support of the pending motion (Dkt. No. 36), "Am. Compl." means the proposed amended complaint (Dkt. No. 36-1), "Connell Decl." and "Carter Decl." mean the ACLU's two supporting declarations (Dkt. Nos. 36-2 and 36-3), and "Alv. Resp." means the brief opposing the pending motion (Dkt. No. 39).

In so arguing, Alvarez ignores more than three decades of controlling decisions by the

U.S. Supreme Court and the Seventh Circuit.  Those decisions hold that parties have standing to

bring pre-enforcement Section 1983 challenges to statutes that arguably violate the First

Amendment so long as there is a credible threat of prosecution.  Such threat exists when (as here)

a statute is not moribund, it arguably applies to the plaintiff's intended conduct, and the

prosecutor has not disavowed an intention to enforce it.  This jurisprudence properly allows

courts to determine the First Amendment rights of parties prior to their engaging in the conduct

at issue.  Parties thus can avoid the Hobson's Choice of refraining from activity protected by the

First Amendment, on the one hand, or undertaking such activity at peril of criminal prosecution,

on the other.  *See* ACLU Mem. pp. 7-10.  Ignoring this jurisprudence, Alvarez argues for a rule

that would forbid pre-enforcement challenges unless prosecution is explicitly threatened.  *See*

*infra* Part I.

Alvarez also mischaracterizes the ACLU's allegations relevant to standing, even though

the ACLU could not have been clearer in this regard.  The ACLU Program is not limited to audio

recording crime committed by police against ACLU employees (*cf.* Def. Resp. pp. 3, 8, 9, 12), or

to misconduct committed by police against the general public (*id.* pp. 3, 4, 7, 8), or to situations

in which police consent to audio recording (*id.* pp. 8, 9).

The ACLU alleges that but for the credible threat of prosecution by Alvarez pursuant to

the Act, the ACLU currently would be engaging in the ACLU Program.  That is, ACLU

Executive Director (and putative plaintiff) Colleen Connell would already have directed ACLU

employee (and putative plaintiff) Allison Carter to record police officers, without consent, when

(a) the officers are performing their public duties; (b) the officers are in public places; (c) the

officers are speaking at a volume audible to the unassisted human ear; and (d) the manner of

recording is otherwise lawful.  *See* Am. Compl. ¶¶ 3, 20, 21, 25; Connell Decl. ¶¶ 7-14.  But for

this threat, Carter already would have undertaken this recording, and would continue to do so.

Carter Decl. ¶¶ 3-6.  For example, the ACLU, Connell, and Carter refrained from recording

police at particular events on June 10 and November 8, 2010, and will refrain from doing so at a

particular event in spring 2011, as well as at other events.  *See* Am. Compl. ¶¶ 22-23; Connell

Decl. ¶¶ 15-16; Carter Decl. ¶¶ 7-8.[2]

Three factors establish the existence of a credible threat that Alvarez will prosecute the

ACLU, Connell, and Carter, if Connell instructs Carter to undertake the ACLU Program, and

Carter does so.  *See* Am. Compl. ¶¶ 25, 32, 33, 39-40; Connell Decl. ¶ 18; Carter Decl. ¶ 18.

First, the Act and related Illinois criminal laws clearly allow Alvarez to do so.  *See* ACLU Mem.

pp. 11-14.  Second, despite ample opportunities Alvarez has never disavowed such prosecution.

*See* Am. Compl. ¶ 25(d).  Third, the Act is not moribund as applied to civilian audio recording of

on-duty police: Alvarez is now pursuing two such prosecutions, and seven other State's

Attorneys now are or recently have pursued such prosecutions.  *Id.* ¶¶ 39-40.  These allegations

establish standing, notwithstanding Alvarez's misstatements regarding the nature of the ACLU

Program.  *See infra* Part II.[3]

---

[2] Another occasion when the ACLU, Connell, and Carter would audio record police interactions with civilians, but for the credible threat of prosecution, is at a demonstration against police brutality planned to occur at the federal courthouse on January 20, 2011, in connection with the sentencing of former Chicago police Commander John Burge.  At the Court's request, the ACLU would submit a declaration on this point.

[3] Alvarez also argues that the ACLU's Rule 59(e) motion to amend the judgment is "misplaced," and that this Court need only reach the ACLU's Rule 15(a)(2) motion to amend.  *See* Alv. Resp. p. 2.  The ACLU stands by its arguments regarding the interplay here between Rules 15(a)(2) and 59(e).  *See* ACLU Mem. pp. 4-6 & n.1.

## I.    <u>THE LAW OF PRE-ENFORCEMENT STANDING.</u>

### A.    Controlling Precedent Allows Pre-Enforcement Challenges Where There Is a "Credible Threat of Prosecution."

The U.S. Supreme Court and the Seventh Circuit have long recognized Article III standing to bring pre-enforcement challenges to laws that violate the First Amendment. *See, e.g., Doe v. Bolton*, 410 U.S. 179, 188 (1973); *Babbitt v. UFW*, 442 U.S. 289, 298 (1979); *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988); *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2717 (2010); *Am. Booksellers Ass'n v. Hudnut*, 71 F.2d 323, 326-27 (7th Cir. 1985); *Kucharek v. Hanaway*, 902 F.2d 513, 516 (7th Cir. 1990); *Commodity Trend Service, Inc. v. CFTC*, 149 F.3d 679, 687 (7th Cir. 1998); *Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003); *520 S. Michigan Ave. Assocs. v. Devine*, 433 F.3d 961, 962-63 (7th Cir. 2006); *Brandt v. Vill. of Winnetka*, 612 F.3d 647, 649 (7th Cir. 2010); *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010). *Accord* Dkt. No. 19 (Alvarez's motion to dismiss) p. 3 ("A person need not risk arrest before bringing a pre-enforcement challenge under the First Amendment.").

The controlling question is whether there is "a credible threat of prosecution." *Babbitt*, 442 U.S. at 298. The plaintiff can show such a threat with two facts. First, the statute is not "moribund." *Doe*, 410 U.S. at 188; *New Hampshire Right to Life PAC v. Gardner*, 99 F.3d 8, 15 (1st Cir. 1996). *See also Bauer*, 620 F.3d at 708 ("the existence of a statute implies a threat to prosecute, so pre-enforcement challenges are proper"). Second, the prosecutor "has not disavowed any intention of invoking the criminal penalty." *Babbitt*, 442 U.S. at 302. *See also Am. Booksellers Ass'n*, 484 U.S. at 393 (same); *Commodity Trend Service, Inc.*, 149 F.3d at 687 ("a threat of prosecution is credible when a plaintiff's intended conduct runs afoul of a criminal statute and the Government fails to indicate affirmatively that it will *not* enforce the statute") (emphasis in original); *NRA v. City of Evanston*, 2009 WL 1139130, *3 (N.D. Ill. 2009) (Aspen,

J.) (holding that a prosecutor's statement "during litigation that it might never prosecute plaintiff or that it does not intend to prosecute plaintiff" does not comprise a "disavowal" of prosecution that bars pre-enforcement standing).

A plaintiff need not show she was "threatened with prosecution." *Doe*, 410 U.S. at 188. *Accord Majors*, 317 F.3d at 721 ("A plaintiff who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have threatened to prosecute him . . . ; the threat is latent in the existence of the statute."). Nor must plaintiff show that anyone has been prosecuted, *Babbitt*, 442 U.S. at 302, or that prosecution is "certain" and not subject to "some element of chance," *Brandt*, 612 F.3d at 649. *See also* ACLU Mem. pp. 7-10.

### B. Alvarez's Characterization of the Standard as Requiring Certain Prosecution Is Contrary to Law.

Alvarez ignores all of the foregoing jurisprudence in her brief opposing amendment. In particular, Alvarez seeks to establish a new and unprecedented rule under which certainty of prosecution is a prerequisite of pre-enforcement standing. *See* Alv. Resp. p. 6 (arguing that the ACLU lacks pre-enforcement standing because it "cannot assure that it will be charged," and it "may never be prosecuted"). *See also id.* at p. 8 (arguing that the ACLU must prove that "law enforcement will definitely investigate . . . and charge" it). Alvarez does so even though she conceded the opposite in her motion to dismiss: "A person who mounts a pre-enforcement challenge to a statute that he claims violates his freedom of speech need not show that the authorities have expressly threatened to prosecute him." Dkt. No. 19 p. 4.

The three cases Alvarez offers for her about face on this issue (*id.* at pp. 4-6) do not remotely support her new position. In *Boyle v. Landry*, 401 U.S. 77 (1971), the plaintiffs "made a search of state statutes and city ordinances with a view to picking out certain ones that they

thought might possibly be used by the authorities as devices for bad-faith prosecutions against them." *Id.* at 81. These plaintiffs then brought a suit that "deal[t] broadly and generally with" all of the provisions of numerous statutes that might theoretically be applied against the plaintiffs' First Amendment activity. *Id.* There was "nothing" in the complaint indicating that these plaintiffs were in "any jeopardy" of prosecution. *Id.* In these peculiar circumstances, the Court declined to consider a pre-enforcement challenge. After *Boyle*, the Court established the foregoing framework for pre-enforcement standing, where there is a credible threat of prosecution. *See, e.g., Doe*, 410 U.S. at 188; *Babbitt*, 442 U.S. at 298; *Am. Booksellers Ass'n*, 484 U.S. at 393; *Holder*, 130 S. Ct. at 2717. Contrary to Alvarez's suggestion (Alv. Resp. pp. 4-5), *Boyle* does not hold that pre-enforcement standing requires an explicit threat of prosecution.

In *O'Shea v. Littleton*, 414 U.S. 488 (1974), the plaintiffs brought suit against a judge and a magistrate, alleging discrimination in bond, jury fees, and sentencing. *Id.* at 490-92. The Court held that the plaintiffs lacked standing, reasoning that the plaintiffs did not allege "that any relevant criminal statute . . . is unconstitutional on its face or as applied," *id.* at 496, and that the plaintiffs could "conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct," *id.* at 497. Here, on the other hand, the three plaintiffs allege that the Act violates the First Amendment as applied to the ACLU Program, and that the only way they can conduct their activities so as to avoid prosecution is to refrain from engaging in the protected ACLU Program.

In *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), the Court held that the plaintiff lacked standing to enjoin chokeholds by LAPD officers. The Court reasoned in significant part that (a) the plaintiff did not allege an unlawful City policy (*i.e.*, a policy authorizing officers to choke civilians without provocation), and (b) the plaintiff could avoid injury without abstaining

from constitutionally protected activity (*i.e.*, the plaintiff could avoid being choked by abstaining from provoking officers). *Id.* at 105-06. On the other hand, in the foregoing pre-enforcement standing cases and in the case at bar, a government policy explicitly bans conduct that is protected by the First Amendment, and again, the only way to comply with that policy is to abstain from that protected conduct.

## II.    THE PLAINTIFFS HAVE PRE-ENFORCEMENT STANDING.

Under the pre-enforcement standing jurisprudence, *see supra* Part I(A), the ACLU, Connell, and Carter each have standing to challenge the Act as applied to audio recording police pursuant to the ACLU Program. *See infra* Parts II(A) and II(B). Alvarez's arguments regarding supposedly fatal contingencies are factually erroneous and legally irrelevant, *see infra* Part II(C), as are her arguments regarding plaintiffs' "personal stake" in this litigation, *see infra* Part II(D).

### A.    The Act Applies to Carter, Connell, and the ACLU.

If Connell instructs Carter to audio record police pursuant to the ACLU Program, and Carter does so, then the letter and intent of the Act would clearly be violated, and Alvarez could prosecute Carter (the person who made the recording), Connell (the person who solicited it), and the ACLU (the corporation whose top manager solicited it). This is shown at length in the ACLU's proposed amended complaint, and its supporting memo and declarations. *See* ACLU Mem. pp. 11-14; Am. Compl. ¶¶ 25, 32-33, 39-40; Connell Decl. ¶ 18; Carter Decl. ¶ 18.

In opposing amendment, Alvarez offers no argument that she cannot in such circumstances prosecute the ACLU, Connell, and Carter under the Act.[4] Indeed, Alvarez concedes this point. *See* Alv. Resp. p. 8 ("ACLU attempts to elevate the mere *ability* to

---

[4] Alvarez notes that eavesdropping is not part of the ACLU's corporate mission, or its staff's scope of employment. *See* Alv. Resp. p. 10. But nothing in Illinois' criminal laws suggests this would diminish the ACLU's criminal liability. In any event, audio recording on-duty police is part of the ACLU's corporate mission of protecting civil liberties, and that clearly falls within its staff's scope of employment.

7

prosecute to a credible *threat* of prosecution") (emphasis in original); *id.* at p. 10 ("Plaintiff alleges that because the State's Attorney has the *ability* to prosecute under various theories of solicitation, accountability, and/or violation of the Act, there is a credible *threat* of prosecution.") (emphasis in original). *See also* Dkt. No. 19 (Alvarez's motion to dismiss) p. 7 ("Plaintiff is precluded [by the Act] from audio recording any conversations without consent of all parties to such conversations, including encounters between law enforcement and citizens."). Thus, any questions that this Court might have regarding the Act's applicability to the ACLU and its staff for undertaking the ACLU Program (*see* Dkt. No. 33 pp. 4-5) have been fully answered.

*Shirmer v. Nagode*, 621 F.3d 581 (7th Cir. 2010), discussed in Alvarez's response at pp. 2-3, 5, further proves this point. There, the Seventh Circuit held that where a criminal statute "cannot fairly be read to prohibit" the plaintiff's planned First Amendment activity, the plaintiff lacks injunctive standing to challenge that statute. *Id.* at 587. On the other hand, the court also held that "when an ambiguous statute arguably prohibits certain protected speech, a reasonable fear of prosecution can provide standing for a First Amendment challenge." *Id.* at 586. *See also id.* at 587 ("If we had any indication that the police were even arguably acting within the scope of the [challenged criminal statute] when they arrested plaintiffs, then these plaintiffs could have standing to challenge the facial constitutionality of that provision and to request injunctive relief."). Here, the Act not only can be "fairly read" to prohibit the ACLU Program, it clearly does so, as Alvarez admits, and no one claims the Act is ambiguous. *See also* Dkt. No. 26 (ACLU response to motion to dismiss) at p. 25 (further discussing *Shirmer*).

### B. The Act Is Not Moribund, and Alvarez Has Not Disavowed Prosecution.

Alvarez does not suggest that the Act is moribund. Indeed, she is now prosecuting two civilians under the Act for audio recording on-duty police, and seven other State's Attorneys

now are or recently have prosecuted nine other civilians for doing so. *See* Am. Compl. ¶¶ 39-40; Connell Decl. ¶¶ 18(c), 18(e); Carter Decl. ¶¶ 18(c), 18(e); Connell Decl. Exhs. A – I. Alvarez's attempt to distinguish the facts in her prosecutions from the case at bar (Alv. Resp. pp. 7, 9) provides no basis to conclude that Alvarez would not prosecute the ACLU, Connell, and Carter.

To the contrary, Alvarez repeatedly has chosen not to disavow prosecution of the ACLU, Connell, and Carter under the Act should Connell instruct Carter to audio record police pursuant to the ACLU Program. For this reason alone, the ACLU, Connell, and Carter have pre-enforcement standing to challenge the Act, based on a "a credible threat of prosecution." *Babbitt*, 442 U.S. at 298. *See also supra* Part I(A); ACLU Mem. pp. 9-10.

### C. Alvarez's Contingencies Are Legally Irrelevant and Factually Erroneous.

Alvarez argues that all three plaintiffs lack pre-enforcement standing, because four supposed contingencies might prevent Alvarez from prosecuting plaintiffs under the Act: (1) ACLU staff might not locate police misconduct to record; (2) the recordings might fall within the Act's narrow exemption for recording criminal acts against the person making the recording; (3) the police might consent to recording; and (4) Alvarez might elect not to prosecute, and has never explicitly threatened to prosecute. Each of these supposed contingencies is factually wrong and legally irrelevant.[5]

---

[5] Two other factual misstatements by Alvarez bear emphasis. First, the ACLU will not deploy its members to record police; it will only deploy its employees to do so. *Compare* Alv. Resp. pp. 4, 6 n.1; *with* Am. Compl. p. 18. Second, the ACLU does not intend to undertake surreptitious audio recording. *Cf.* Alv. Resp. p. 9.

### 1. The Possibility That ACLU Staff Won't Find Police Misconduct.

Alvarez argues that injury is speculative because it is possible that the ACLU employees undertaking the ACLU Program will not locate police misconduct to audio record.[6]  This wholly mischaracterizes the ACLU Program.  Without regard to specific acts of police misconduct, the ACLU routinely monitors police conduct in public places, including at planned and spontaneous expressive events, and the ACLU will continue to do so.  *See* Am. Compl. ¶¶ 16-17; Connell Decl. ¶¶ 7-8; Carter Decl. ¶¶ 3-4.  But for the credible threat of prosecution, the ACLU, Connell, and Carter already would have added audio recording to this monitoring on at least two particular occasions in 2010.  *See* Am. Compl. ¶ 22; Connell Decl. ¶ 15; Carter Decl. ¶ 7.  And but for this threat, the three plaintiffs immediately would add audio recording to this ongoing police monitoring and would, for example, record police at a planned event in spring 2011.  *See* Am. Compl. ¶¶ 19-21, 23; Connell Decl. ¶¶ 9, 13, 16; Carter Decl. ¶¶ 5-6, 8.  Thus, it is certain that ACLU employees implementing the ACLU Program will locate police officers to audio record.  *Cf.* Alv. Resp. p. 8.

Further, ACLU employees implementing the ACLU Program will audio record police interacting with civilians, whether or not those officers are engaged in misconduct at the time.  This ACLU policy rests on several considerations.  First, such monitoring will deter police misconduct.  Second, some police misconduct is unpredictable and brief, so an ACLU employee would have insufficient time to turn on her recorder before the misconduct ended.  Third, it often

---

[6] *See, e.g.,* Alv. Resp. p. 3 ("ACLU does not allege the identity of persons engaging in misconduct, the specific misconduct at issue, or the person harmed by the alleged misconduct.  Without such specificity, ACLU essentially argues that it has standing to challenge the Act because its members or employees will travel from place to place searching for police misconduct to audio record."); *id.* p. 4 ("ACLU alleges that it wants to monitor police conduct so that it can audio tape misconduct when its members happen to see it.  ACLU, therefore, alleges not only abstract injury but also abstract government misconduct.").  *See also id.* pp. 7-8.

will be difficult to determine whether a police officer's use of force was reasonable without considering the prior police-civilian conversation, so it is important to record even apparently innocuous conversations.  Fourth, the ACLU intends to record police practices that it considers improper, even if they are technically lawful (such as certain check points), and then use those recordings to petition government to end such practices.  Fifth, recordings of proper police activity can be used in petitioning, for example, to seek support for proper activity, or to condemn improper activity by way of contrast.

As the ACLU has often stated, the ACLU Program applies when (a) the officers are performing their public duties; (b) the officers are in public places; (c) the officers are speaking at a volume audible to the unassisted human ear; and (d) the manner of recording is otherwise lawful.  *See* Am. Compl. ¶ 3.  The ACLU Program is not limited to police engaged in misconduct.  Thus, while it is possible that ACLU employees will not discover police misconduct, this possibility does not remotely diminish the certainty that ACLU employees will find police officers to record, and will record them.

### 2.    The Possibility That a Statutory Exemption Applies.

Alvarez argues that injury is speculative because it is possible that the audio recording pursuant to the ACLU Program will fall within the Act's exemption for recording by one conversation participant who reasonably suspects that he is about to be the victim of a crime committed by another conversation participant.  *See* Alv. Resp. pp. 3, 8, 9, 12, discussing 720 ILCS 5/14-3(i).  This argument lacks merit.

Again, the ACLU Program extends to police conduct that is not reasonably suspected to be criminal.  For example, it extends to recording official police programs that might be technically lawful but nonetheless are objectionable (such as certain checkpoints); to police

activity at demonstrations, even where there is no indication of present or future police misconduct (because some misconduct is unpredictable and brief, and the reasonableness of some force rests on preceding conversations); to police misconduct that does not comprise a crime; and to police misconduct where a civilian without legal training cannot possibly be expected to determine whether there is reasonable suspicion of a crime. Indeed, only rarely will there be reasonable suspicion that police are about to commit a crime against a civilian in public.

Even in the unusual case when an ACLU employee reasonably suspects criminal misconduct by a police officer against a civilian, this statutory exemption only extends to recording "by or at the request of a person . . . who is a party to the conversation." 720 ILCS 5/14-3(i). Thus, ACLU recording will not fall within the exemption unless (a) the victim requests the recording, or (b) the ACLU employee is the victim. Both possibilities are highly unlikely. Victims of police assault generally will not have the opportunity to ask someone else to record; for example, Rodney King did not ask George Holliday to make his famous recording. Likewise, police generally will not assault ACLU employees who are using audio/video recorders. These improbable applications of the statutory exemption do not diminish the credible threat of prosecution in the overwhelming number of instances where the Act clearly applies. *See generally Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973) (under the doctrine of overbreadth, a statute can be struck down on its face if it prohibits a "substantial" amount of First Amendment activity). If this Court is concerned with these two unlikely applications of the statutory exemption, they might be excluded from declaratory and injunctive relief. *See also* ACLU Mem. p. 11 n.4; Dkt. No. 26 (ACLU's response to motion to dismiss) pp. 23-24.

### 3.     The Possibility of Police Consent to Audio Recording.

Alvarez argues that injury is speculative because the police officers audio recorded by ACLU employees pursuant to the ACLU Program might consent to the recording, in which case the Act would not be violated.  *See* Alv. Resp. pp. 8, 9.  This argument fails, because the ACLU employees undertaking the ACLU Program will not seek consent from the police prior to recording.  After all, the gravamen of this litigation is that it violates the ACLU's First Amendment rights for consent to be necessary.  Moreover, it would not be practicable in most cases for ACLU employees to seek consent (*e.g.*, when a single ACLU employee arrives at a large demonstration where numerous police are already interacting with numerous civilians).

### 4.     <u>The Possibility That Alvarez Might Elect Not to Prosecute.</u>

Alvarez argues that injury is speculative because she might elect not to prosecute Carter, Connell, and the ACLU for undertaking the ACLU Program.[7]  In support, Alvarez argues that she has not explicitly threatened plaintiffs with such prosecution,[8] and that she has no policies regarding such prosecution.[9]  Strikingly, however, Alvarez once again fails to disavow such prosecution.  In so arguing, Alvarez seeks to turn upside down the settled law of pre-enforcement standing.  As shown above, plaintiffs face a credible threat of prosecution, and thus have pre-

---

[7] *See* Alv. Resp. p. 6 ("if Plaintiff's members committed the acts outline in its program, they may never be prosecuted under the Act"); *id.* at p. 8 ("ACLU attempts to elevate the mere *ability* to prosecute to a credible *threat* of prosecution") (emphasis in original); *id.* at p. 10 ("Plaintiff alleges that because the State's Attorney has the *ability* to prosecute under various theories of solicitation, accountability, and/or violation of the Act, there is a credible *threat* of prosecution.") (emphasis in original).

[8] *See* Alv. Resp. p. 9 ("[T]he ACLU, Connell, and Carter have never been arrested, accused, charged, prosecuted, *or threatened with prosecution* for its premeditated violation of the Act. . . .  Plaintiff does not allege that any arresting agency in Cook County has *promised or guaranteed* that the ACLU, Connell, or Carter will be investigated, arrested, and *charged* with a violation fo the Act for participating in the ACLU Program.") (emphasis added).

[9] *See* Alv. Resp. p. 9 (arguing that the ACLU proffered no "memoranda, general orders, or affidavits" that show "a policy" to prosecute activity like the ACLU program).

enforcement standing, based on the facts that the Act is not moribund, that it extends to the ACLU Program, and that Alvarez has not disavowed prosecution. The absence of a specific threat to prosecute plaintiffs is legally irrelevant. *See supra* Part I(A).

Alvarez's related arguments lack merit. While a party can establish pre-enforcement standing without showing any prior prosecutions under the challenged Act, *see, e.g., Babbitt*, 442 U.S. at 302, the credible threat of prosecution in this case is enhanced by Alvarez's current prosecution of two other civilians for audio recording on-duty police, and similar prosecutions brought by seven other State's Attorneys. *See* Am. Compl. ¶¶ 39-40. Alvarez seeks to minimize her own prosecutions by identifying factual distinctions (indoor versus outdoor venues, and open versus surreptitious recording). *See* Alv. Resp. pp. 7, 9. Likewise, she seeks to minimize the other State's Attorneys' prosecutions by noting the autonomy of these officials. *Id.* at 7, 8. The critical point, however, is that reasonable civilians, aware of these prosecutions, will refrain from any audio recording of on-duty police, regardless of these distinctions.

Similarly, while Alvarez may not have prosecuted an organization under the Act (Alv. Resp. p. 10), she has not disavowed doing so, she has prosecuted organizations under other statutes, and she has prosecuted two individuals under the Act. *See* Am. Compl. ¶¶ 25, 39. Thus, there is a credible threat that Alvarez will prosecute the ACLU if Connell instructs Carter to undertake the ACLU Program, and Carter does so.

Finally, while Alvarez speculates that some police officers recorded by ACLU employees won't sign criminal complaints, *see* Alv. Resp. p. 9, Illinois criminal law allows prosecution of a felony absent a victim's complaint. Moreover, the ACLU has identified nine recent Illinois cases where police cooperated in the prosecution of civilians who audio recorded police, and Alvarez has identified no counter-examples.

### D.  Plaintiffs Have the Requisite "Personal Stake."

The ACLU, Connell, and Carter have a personal stake, protected by the First Amendment, in promoting police accountability by means of audio recording certain on-duty police pursuant to the ACLU Program, and then disseminating those recordings and using them to petition government for improved police policies.  *See* Am. Compl. ¶¶ 2, 7, 13-20; Connell Decl. ¶¶ 2, 4-14; Carter Decl. ¶¶ 2-5.  This personal stake by itself establishes all three plaintiffs' standing.  Nonetheless, Alvarez argues that the three plaintiffs do not have a "personal stake" in any "unlawful encounters between citizens and police" that they might record, because they would be mere "third party" observers to such encounters.  *See* Alv. Resp. pp. 10-12.  This argument is legally irrelevant because plaintiffs do not need a personal stake in other people's Fourth Amendment rights to be free from unreasonable police force, detentions, and the like.[10] They do need, and do have, a personal stake in their own constitutional rights.  The ACLU, Carter, and Connell have already been deterred from exercising their First Amendment rights by a credible threat of prosecution by Alvarez, and they continue to be deterred from doing so.

### CONCLUSION

The ACLU respectfully requests that the Court grant its motion to amend the judgment, to amend the complaint, and for a preliminary injunction.

DATED:  December 16, 2010

<div style="margin-left:40%">

Respectfully submitted,

THE AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS

By:___/s/Adam Schwartz_____
   One of Its Attorneys

</div>

---

[10] While defendant suggests that the Petition Clause only extends to the remedy of litigation (*see* Alv. Resp. pp. 11-12), the Petition Clause in fact "extends to all departments of the Government," and does not protect just "access to the courts."  *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

Richard J. O'Brien
Linda R. Friedlieb
Matthew D. Taksin
Sidley Austin LLP
One South Dearborn Street
Chicago, IL 60603
(312) 853-7000

Harvey Grossman
Adam Schwartz
Karen Sheley
Roger Baldwin Foundation of ACLU, Inc.
180 N. Michigan Ave., Suite 2300
Chicago, IL 60601
(312) 201-9740

## <u>CERTIFICATE OF SERVICE</u>

I, Adam Schwartz, an attorney, hereby certify that on the 16th day of December, 2010, I

served to the party listed below a true and correct copy of **PLAINTIFF'S REPLY IN**

**SUPPORT OF ITS MOTION TO AMEND JUDGMENT, TO FILE AN AMENDED**

**COMPLAINT, AND FOR A PRELIMINARY INJUNCTION**, via ECF electronic delivery,

before the hour of 4:30 pm.


By:      /s/ Adam Schwartz
One of the Plaintiffs' Attorneys



TO:   Paul Anthony Castiglione
Patrick T. Driscoll, Jr.
Jeffrey McCutchan
Donald J. Pechous
James Charles Pullos
Cook County State's Attorney's Office
500 Richard J. Daley Center
Chicago, Illinois 60602