IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS, ) ) ) Plaintiff, ) ) v. ) ) ANITA ALVAREZ, Cook County State's Attorney, in her official capacity, ) ) Defendant. ) ) ) ) ) ) | Case No. 10 CV 5235 Judge Sharon J. Coleman Magistrate Judge Sidney I. Schenkier |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

The gravamen of this suit is whether the Illinois Eavesdropping Act ("the Act") violates the First Amendment as applied to the ACLU Program of advancing police accountability by means of openly audio recording police officers, without their consent, when (1) the officers are performing their public duties; (2) the officers are in public places; (3) the officers are speaking at a volume audible to the unassisted human ear; and (4) the manner of recording is otherwise lawful. In light of the holdings of the Seventh Circuit in this case, *ACLU of Illinois v. Alvarez*, 679 F.3d 583 (7th Cir. 2012), plaintiff is entitled to summary judgment, to a declaratory judgment that the application of the Act to the ACLU Program violates the First Amendment, and to a permanent injunction that enjoins defendant from prosecuting plaintiff under the Act for audio recording on-duty police pursuant to the ACLU Program.

**UNDISPUTED MATERIAL FACTS**

A.   **The Illinois Eavesdropping Act**

The Act provides: "A person commits eavesdropping when he … [k]nowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation … unless he does so … with the consent of all of the parties to such conversation …." 720 ILCS 5/14-2(a)(1)(A). The Act broadly defines "conversation" as "any oral communication between 2 or more persons regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation." 720 ILCS 5/14-1(d).

The federal government, 39 states, and the District of Columbia each have a statute criminalizing the audio recording of certain in-person conversations – unlike Illinois – only if there is a reasonable expectation of privacy.[1] Two states other than Illinois extend their prohibitions on audio recording to conversations whether or not there is a reasonable expectation of privacy, but they do so in a manner substantially narrower than in Illinois. In Massachusetts, the ban extends only to "secret[] record[ing]," Mass. Laws Ch. 272 § 99(B)(4), and does not include those who "inform[]" the speakers or just "h[o]ld the tape recorder in plain sight."

---

[1] 18 U.S.C. § 2510(2); Ala. Code § 13A-11-30(1); Ariz. Stats. § 13-3001(8); Cal. Pen. Code § 632(a) & (c); Colo. Stats. § 18-9-301(8); 11 Del. Code § 2401(13); D.C. Code § 23-541(2); Fla. Stats. § 934.02(2); Ga. Code § 16-11-62(1); Haw. Stats. § 803-41; Idaho Code § 18-6701(2); Iowa Code § 808B.1(8); Ky. Stats. § 526.010, Commentary by Ky. Crime Comm'n; La. Stats. § 15:1302(14); 15 Maine Stats. §§ 709(4)(B) & 709(5); Md. Code, Cts. & Jud. Proc. §10-401(2)(i); Mich. Laws § 750.539a; Minn. Stats. § 626A.01(4); Miss. Code § 41-29-501(j); Mo. Stats. § 542.400(8); Neb. Stats. § 86-283; Nev. Stats. § 179.440; N.H. Stats. 570-A:1; N.J. Stats. § 2A:156A-2(b); N.Y. Penal Law § 250.05, Commentary by Donnino; N.C. Stats. § 15A-286(17); N.D. Code § 12.1-15-04(5); Ohio Code § 2933.51(B); 13 Okla. Stats. § 176.2(12); 18 Pa. Stats. § 5702; R.I. Laws § 12-5.1-1(10); S.C. Code § 17-30-15(2); S.D. Laws § 23A-35A-1(10); Tenn. Code § 40-6-303(14); Tex. Crim. Pro. Code § 18.20(2); Utah Code 77-23a-3(13); Va. Code § 19.2-61; Wash. Code § 9.73.030(1)(b); W.V. Code § 62-1D-2(h); Wis. Stats. 968.27(12); Wyo. Stats. 7-3-701(a)(xi).

*Commonwealth v. Hyde*, 750 N.E.2d 963, 971 (Mass. 2001). In Oregon, the ban does not apply if the speakers are "specifically informed" of the recording. Or. Stats. § 165.540(1)(c). As the Seventh Circuit held in the appeal in this case: "As best we can tell, the Illinois statute is the broadest of its kind; no other wiretapping or eavesdropping statute prohibits the open recording of police officers lacking any expectation of privacy." Slip op. at 22 n.4.[2] *See also id.* at 50 (holding that in this regard, the Illinois Eavesdropping Act is "a national outlier").

In the last two years, defendant Cook County State's Attorney Anita Alvarez has used the Act to prosecute at least three civilians who audio recorded on-duty police. ACLU Fact St. at ¶ 5. In the last eight years, at least eight other Illinois State's Attorneys have prosecuted at least eleven other civilians under the Act for audio recording on-duty police. *Id.* at ¶ 6.

**B.     The ACLU Program**

The ACLU is a non-profit, non-partisan, statewide organization with more than 20,000 members and supporters dedicated to protecting the civil rights and liberties guaranteed by the U.S. and Illinois Constitutions and civil rights laws. ACLU Fact St. at ¶ 1. In advancing its associational goals, the ACLU regularly monitors police in public places. It does so at planned and spontaneous expressive events (such as parades, demonstrations, pickets, and leafleting) in public forums (such as streets, sidewalks, plazas, and parks), including events when the ACLU engages in its own expressive activity. *Id.* at ¶ 7. The ACLU now seeks to enhance its police monitoring in light of technological innovations. *Id.* at ¶ 8. In addition to its current methods of documentation (principally note-taking and photography), the ACLU intends to make audiovisual recordings. *Id.* at ¶ 8.

---

[2] The current Westlaw version of the Seventh Circuit's opinion does not contain page citations. *See ACLU of Illinois v. Alvarez*, 679 F.3d 583 (7th Cir. 2012). Accordingly, this memo cites to the Seventh Circuit's slip opinion. *See* Dkt. No. 54 (the certified copy of that opinion transmitted from the Seventh Circuit to this Court).

3

Specifically, the ACLU – along with putative plaintiffs Colleen Connell, the ACLU's Executive Director, and Allison Carter, the ACLU's Senior Field Manager – would immediately begin the ACLU Program of openly audio recording police officers, without their consent, when (1) the officers are performing their public duties; (2) the officers are in public places; (3) the officers are speaking at a volume audible to the unassisted human ear; and (4) the manner of recording is otherwise lawful. ACLU Fact St. at ¶¶ 2-3, 9, 14. Where appropriate, the ACLU would publish the information in such recordings to the general public, including through traditional print, broadcast, and cable media, and evolving internet and electronic media. *Id.* at ¶ 11. Moreover, the ACLU would use that information to petition government for redress of grievances, including before courts, legislatures, and administrative agencies. *Id.* at ¶ 12. Among the ACLU's goals are improving police practices, and detecting and deterring any police misconduct. *Id.* at ¶ 13.

Only one thing has stopped the ACLU Program: the reasonable fear of prosecution by Alvarez under the Act. ACLU Fact St. at ¶ 14.

C. **Procedural history of this case**

In August 2010, the ACLU filed its original complaint against Alvarez. Dkt. No. 1. The ACLU alleged that the Act violates the First Amendment as applied to the ACLU Program. *Id.* It sought to enjoin Alvarez from prosecuting the ACLU under the Act for implementing the ACLU Program. *Id.* In September 2010, the ACLU moved for a preliminary injunction (Dkt. Nos. 17, 18, 23, 26, 27), and Alvarez moved to dismiss (Dkt. Nos. 19, 26, 30). In October 2010, the district court dismissed the complaint under Rule 12(b)(1), holding that the ACLU failed to show standing by not sufficiently alleging threatened prosecution. Dkt. No. 32. The district

4

court also denied as moot the ACLU's preliminary injunction motion, Dkt. No. 32, and entered judgment dismissing the case without prejudice, Dkt. No. 34.

In November 2010, the ACLU moved under Rule 59(e) to amend the judgment so the ACLU could move under Rules 15(a)(2) and 21 to amend its complaint and renew its preliminary injunction motion. Dkt. No. 36. The ACLU filed a proposed Amended Complaint, which contained additional allegations regarding standing and added two plaintiffs (Connell and Carter). Dkt. Nos. 36, 36-1, 36-2, 36-3, 39, 40. In January 2011, the district court denied the ACLU's motion to amend the judgment and file an amended complaint, holding that while the ACLU's amendment solved the standing problems, amendment would by futile because the ACLU had not alleged a cognizable right under the First Amendment. Dkt. No. 41. The ACLU appealed. Dkt. No. 43.

On May 8, 2012, the Seventh Circuit Court of Appeals ruled as follows:

> [W]e reverse and remand with the following instructions: The district court shall [1] reopen the case and [2] allow the amended complaint; [3] enter a preliminary injunction enjoining the State's Attorney from applying the Illinois eavesdropping statute against the ACLU and its employees or agents who openly audio record the audible communications of law-enforcement officers (or others whose communications are incidentally captured) when the officers are engaged in their official duties in public places; and [4] conduct such further proceedings as are consistent with this opinion.

Slip op. at 52 (bracketed numbers added). *See also* D. 53 (the Seventh Circuit's mandate, stating the same). The Seventh Circuit's legal holdings and reasoning are discussed at length throughout the argument section below.

## ARGUMENT

Under the rulings of the Seventh Circuit in this case, (1) the First Amendment protects the ACLU Program, (2) Alvarez must satisfy at least mid-level scrutiny, and (3) Alvarez cannot

5

satisfy such scrutiny. Accordingly, plaintiff is entitled to summary judgment, a declaratory judgment, and a permanent injunction.[3]

## I. The First Amendment protects the ACLU Program.

Audio recording pursuant to the ACLU Program is a form of expression protected by the First Amendment. Slip op. at 3, 22-39. *See, e.g., id.* at 27 ("Audio recording is entitled to First Amendment protection"); *id.* ("First Amendment interests are quite strong" when, as here, the subjects of audio recording are "public officials performing their official duties in public," and the objective of recording is "free discussion of governmental affairs") (citation omitted). *Accord Glik v. Cunniffe*, 655 F.3d 78 (1st Cir. 2011) (holding that the First Amendment protects audio recording police).

The Seventh Circuit held that the contrary position of Alvarez – that audio recording under the ACLU Program is "wholly unprotected" by the First Amendment – is "extreme" and "extraordinary." Slip op. at 21. Reaching this conclusion, the Seventh Circuit rejected both Alvarez's interpretation of *Potts v. City of Lafayette*, 121 F.3d 1106 (7th Cir. 1997), and Alvarez's application of the "willing speaker" doctrine. Slip op. at 14-16.

## II. Alvarez must satisfy at least mid-level scrutiny.

Alvarez bears the burden of proving, at a minimum, that the application of the Illinois Eavesdropping Act to the ACLU Program can satisfy mid-level First Amendment scrutiny. Slip op. at 43 ("At the very least, the State's Attorney will have to justify this application of the eavesdropping statute under some form of intermediate scrutiny."). *See also id.* at 34 ("Any way

---

[3] The Seventh Circuit also held that the ACLU has pre-enforcement standing. Slip op. at 9-21.

you look at it, the eavesdropping statute burdens speech and press rights and is subject to heightened First Amendment scrutiny.").[4]

### III.     Alvarez cannot satisfy mid-level scrutiny.

To prevail on mid-level scrutiny, Alvarez must prove "a reasonably close fit" between her asserted interests (privacy and public safety) and the application of the Act to the ACLU Program. Slip op. at 44. This means that "the burden on First Amendment rights must not be greater than necessary" to advance her asserted interests. *Id.* As explained below, Alvarez cannot meet this burden as to either proffered interest.

Further, Alvarez has never offered any factual evidence to support enforcement of the Act against the ACLU Program. *See Weinberg v. City of Chicago*, 310 F.3d 1029, 1038 (7th Cir. 2002) ("In the context of a First Amendment challenge under the narrowly tailored test, the government has the burden of showing that there is evidence supporting its proffered justification."); *Annex Books, Inc. v. City of Indianapolis*, 624 F.3d 368, 369-70 (7th Cir. 2010).

####     A.     The Act as applied is not narrowly tailored to any privacy interests.

The Seventh Circuit held that "the eavesdropping statute is not closely tailored to the government's interest in protecting conversational privacy." Slip op. at 50. This conclusion is axiomatic because the conversations subject to the ACLU Program are not private. Slip op. at p. 3 ("the government's interest in protecting conversational privacy . . . is not implicated" by the ACLU program); *id.* at p. 46 ("Simply put, these privacy interests are not at issue here," because "[c]ommunications of this sort lack any 'reasonable expectation of privacy'"); *id.* at p. 48 ("this case has nothing to do with private conversations"); *id.* at p. 50 (the Act applied here "is not

---

[4] Plaintiff maintains its position that the proper legal test in this case is strict scrutiny. *See, e.g.,* Dkt. No. 18 (plaintiff's preliminary injunction memo of Sept. 30, 2010) at pp. 10-11. However, the Seventh Circuit concluded that "there is no need to resolve" whether strict scrutiny applies in this case, slip op. at 43, and instead applied mid-level scrutiny, *id.* at 43-52.

closely tailored to" the government's interest in conversational privacy); *id.* at p. 52 ("On the factual premises of this case, the statute does not serve the important governmental interest of protecting conversational privacy"). *See also id.* at p. 47 ("[B]y legislating this broadly – by making it a crime to audio record *any* conversation, even those that are *not* in fact private – the State has severed the link between the eavesdropping statute's means and its end.") (emphasis in original).

This Seventh Circuit's privacy holding applies to *civilians* recorded by the ACLU Program, as well as police. The preliminary injunction ordered by the Seventh Circuit extends to "communications of law-enforcement officers (and others whose communications are incidentally captured)." Slip op. at p. 52. Moreover, the court responded to the dissent's concerns about "the privacy interests of civilians who communicate with the police" by explaining that (1) the Act improperly "obliterates the distinction between private and non-private" by criminalizing audio recording "regardless of whether the communication is private *in any sense*" (emphasis in original), and (2) the Act "must be more closely tailored to serve" privacy "in order to avoid trampling on speech and press rights." Slip op. at p. 51.

**B.      The Act as applied is not narrowly tailored to any public safety interests.**

Alvarez cannot meet her burden of proving that the application of the Act to the ACLU Program advances public safety, because the three safety interests cited by Alvarez "are not threatened here." Slip op. at p. 49. First, Alvarez argued that the ACLU Program will discourage civilians from "candidly speak[ing] with law enforcement, including those conversations conditioned on confidentiality." The Seventh Circuit rejected this argument, explaining: "Anyone who wishes to speak to police officers in confidence can do so; private police-civilian communications are outside the scope of this case." *Id.*

8

Second, Alvarez argued that application of the Act to the ACLU Program will "limit opportunities of the general public from gaining access to matters of national and local security." The Seventh Circuit rejected this argument, explaining: "Police discussions about matters of national and local security do not take place in public where bystanders are within earshot; the State's Attorney has made no effort to connect this law-enforcement concern to the communications at issue here." *Id.*

Third, Alvarez argued that application of the Act to the ACLU Program will "reduce the likelihood of provoking persons during officers' mercurial encounters." The Seventh Circuit rejected this argument, explaining: "police may take all reasonable steps to maintain safety and control, secure crime scenes and accident sites, and protect the integrity and confidentiality of investigations. While an officer surely cannot issue a 'move on' order to a person because he is recording, the police may order bystanders to disperse for reasons related to public safety and order and other legitimate law enforcement needs." *Id.*

### C. The Act as applied does not leave adequate alternative channels.

The Seventh Circuit refrained from deciding whether mid-level scrutiny in the context of this case requires Alvarez to prove not just narrow tailoring, but also the presence of "adequate alternative channels for this kind of speech." Slip op. at 50. Plaintiff's position is that Alvarez should be required to prove this factor. The ACLU Program comprises, among other things, First Amendment activity in a public forum. The "alternative channels" factor is an element of the mid-level test applied to "time, place, and manner" restraints on speech in a public forum. *See, e.g., Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989).

Alvarez cannot meet her burden of proving that the ACLU has "adequate alternative channels" to audio recording police encounters pursuant to the ACLU Program. *See* Slip op. at

50 (it is "highly unlikely" that alternatives to audio recording "could be considered reasonably adequate substitutes," because "audio and audiovisual recording are uniquely reliable and powerful methods of preserving and disseminating news and information about events that occur in public" and have a "self-authenticating character").

**IV.    The ACLU is entitled to a permanent injunction.**

A permanent injunction is granted when the plaintiff proves: "(1) success, as opposed to a likelihood of success, on the merits; (2) irreparable harm; (3) that the benefits of granting the injunction outweigh the injury to the defendant; and, (4) that the public interest will not be harmed by the relief requested." *ADT Sec. Srvcs., Inc. v. Lisle-Woodridge Fire Prot. Dist.*, 672 F.3d 492, 498 (7th Cir. 2012), quoting *Collins v. Hamilton*, 349 F,3d 371, 374 (7th Cir. 2003). The ACLU easily satisfies all four of these elements.

As to the first and the third of these factors, the argument above clearly shows that the ACLU has succeeded on the merits,[5] and that the ACLU Program will not burden any of Alvarez's interests (and thus that the balance of the equities supports the ACLU). As to the second and fourth of these factors: "The loss of First Amendment freedoms is presumed to constitute an irreparable injury for which money damages are not adequate, and injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

---

[5] Indeed, the Seventh Circuit in this case held that "the ACLU has a *strong* likelihood of success on the merits of its First Amendment claim." Slip op. at p. 52 (emphasis added).

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that this Court award it summary judgment, a declaratory judgment, and a permanent injunction.

DATED: June 26, 2012

Respectfully submitted:

_s/ Richard J. O'Brien_____
Counsel for plaintiff

| | |
|---|---|
| HARVEY GROSSMAN | RICHARD J. O'BRIEN |
| ADAM SCHWARTZ | LINDA R. FRIEDLIEB |
| KAREN SHELEY | MATTHEW D. TAKSIN |
| Roger Baldwin Foundation | Sidley Austin LLP |
|    of ACLU, Inc. | One South Dearborn |
| 180 N. Michigan Ave. Suite 2300 | Chicago, IL 60603 |
| Chicago, IL 60601 | (312) 853-7000 |
| (312) 201-9740 | |