IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS, COLLEEN CONNELL, AND ALLISON CARTER, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 10 CV 5235 |
| v. | ) ) ) | Judge Sharon Johnson Coleman Magistrate Judge Sidney I. Schenkier |
| ANITA ALVAREZ, Cook County State's Attorney, in her official capacity, | ) ) ) ) | |
| Defendant. | ) | |

## AMENDED COMPLAINT

Plaintiffs the American Civil Liberties Union of Illinois ("the ACLU"), Colleen Connell, and Allison Carter, by their attorneys, as their Amended Complaint against defendant Anita Alvarez, in her official capacity as the Cook County State's Attorney, state as follows:

### I. NATURE OF THE CASE

1. This is a civil rights action challenging the constitutionality of the Illinois Eavesdropping Act, 720 ILCS 5/14 ("the Act"), as applied to the audio recording of police officers, without the consent of the officers, when (a) the officers are performing their public duties, (b) the officers are in public places, (c) the officers are speaking at a volume audible to the unassisted human ear, and (d) the manner of recording is otherwise lawful. This application of the Act violates the First Amendment to the U.S. Constitution. The plaintiffs seek declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 2201 *et seq*.

1

2.  For nearly a century, the ACLU has sought to protect and to expand the civil liberties and civil rights of all persons in Illinois. It has engaged in this constitutionally protected pursuit through public education, including publication through a variety of media, and advocacy before courts, legislatures, and administrative agencies. The corollary right to gather, receive, record, and disseminate information on matters of public importance relating to civil liberties and civil rights is integral to, and a necessary component of, these other protected activities.

3.  In the exercise of these rights, the ACLU (acting through its employees); Connell (as the ACLU's Executive Director and through her direct supervision of ACLU employees); and Carter (as the ACLU's Senior Field Manager and in performing her employment duties), have incorporated the use of common audio/video recording devices into the ACLU's ongoing monitoring of police in public places. Specifically, but for the Act, the ACLU, Connell, and Carter are presently prepared and would immediately audio record police officers, without the consent of the officers, when (a) the officers are performing their public duties, (b) the officers are in public places, (c) the officers are speaking at a volume audible to the unassisted human ear, and (d) the manner of recording is otherwise lawful (hereinafter "the ACLU program"). The ACLU, Connell, and Carter will carry out this ACLU program in Cook County, Illinois. The ACLU, Connell, and Carter will disseminate such recordings when appropriate to the public, and also use these recordings to petition the government for redress of grievances through its advocacy program.

4.  The Act makes audio recording police officers in these circumstances a felony. Due to a reasonable fear of arrest and prosecution under the Act by defendant,

the ACLU, Connell, and Carter are presently refraining from engaging in audio recording of police in public pursuant to the ACLU program. This suit seeks a declaration that such conduct is constitutionally protected, and an injunction against enforcement of the Act as applied to the ACLU program.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3) and (4).

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## III. THE PARTIES

7. The ACLU is a non-profit, non-partisan, statewide organization with more than 20,000 members and supporters dedicated to protecting and expanding the civil rights and civil liberties guaranteed by the Constitutions and civil rights laws of the United States and the State of Illinois. The ACLU is a not-for-profit corporation incorporated under the laws of the State of Illinois. In all matters relevant to this Amended Complaint, the ACLU acts by and through its staff of approximately 25 salaried employees who are under the direction of the ACLU's Executive Director, Connell.

8. Connell is the ACLU's Executive Director. In this capacity, she directs employees of the ACLU in creating and disseminating communications which further the ACLU's goals of protecting and expanding civil liberties and civil rights. In this capacity, but for the Act, Connell immediately would direct ACLU employees, including Carter, to audio record public police activity as part of carrying out the ACLU program.

9. Carter is the ACLU's Senior Field Manager. In this capacity, she has been selected by Connell to perform the actual audio/video recording of police as part of the ACLU program.

10. Alvarez is the Cook County State's Attorney. In this capacity, she is charged with the enforcement of the criminal laws of the State of Illinois, including the Act. She is sued solely in her official capacity for purposes of declaratory and injunctive relief.

## IV. FACTS

**A. The right to gather, receive, record, and disseminate information**

11. The right to gather, receive, record, and disseminate information is grounded in the Free Speech Clause of the First Amendment. This right is further grounded in:

   (a) the Petition Clause of the First Amendment, if the purpose of gathering, receiving, or recording the information is to use it to petition government for redress of grievances; and

   (b) the Free Press Clause of the First Amendment, if the purpose of gathering, receiving, or recording the information is to publish and disseminate it to other people.

12. This First Amendment right to gather, receive, record, and disseminate information includes the right to audio record police officers in the circumstances described herein.

**B. The ACLU's exercise of its right to gather, receive, record, and disseminate information**

13. In pursuing its objectives of protecting and expanding civil rights and civil

4

liberties, the ACLU regularly gathers, receives, and records information from numerous sources, including by observing events in public places.

14. After gathering, receiving, and recording information, the ACLU regularly publishes and disseminates that information to the general public, and regularly presents that information to government bodies as part of the ACLU's efforts to petition the government for redress of grievances.

15. The ACLU regularly engages in its own expressive activity in public places, and regularly records its own expressive activity at these events.

C. **The ACLU program**

16. The ACLU presently, as it has in the past, monitors and observes police conduct in public places. In doing so, the ACLU seeks not only to observe and record the manner in which government employees perform their duties, but also to improve police practices, and to deter and detect any unlawful police interference with constitutional liberties. For example, the ACLU often monitors and observes police conduct at expressive activity in public places, including when the ACLU is engaged in its own expressive activity.

17. The ACLU has monitored, and will monitor, police at public demonstrations, protests, parades, assemblies, speeches, leafleting, and similar occasions and events. Such expressive events are sometimes planned, and on other occasions are spontaneous. The ACLU is presently able to, and intends to, monitor police activity both at planned expressive events and at spontaneous expressive events.

18. The ACLU often gathers, receives, and records information about police practices, and then publishes and disseminates that information to the general public, and uses that information to petition government for redress of grievances.

19. But for their reasonable fear of prosecution by Alvrarez under the Act (*see infra* ¶ 25), the ACLU, Connell, and Carter would immediately commence the aforementioned program of audio recording police officers in public, and use and disseminate such recordings. This program includes recording police conduct at expressive activity in public places, including when the ACLU is engaged in its own expressive activity.

20. Connell, the ACLU's Executive Director, has approved the expanded program of audio recording police as described above in paragraph 3. Connell joins with the ACLU in seeking to expand and protect civil liberties by implementing the ACLU program of monitoring police by audio recording police in public places to advance police accountability. But for the Act, Connell would immediately authorize and direct Carter (and other ACLU employees) to engage in such audio recording, but for her reasonable fear of imminent prosecution by Alvarez under the Act of Carter (the ACLU employee who made the recording), of Connell (the ACLU Executive Director who authorized and directed the recording), and of the ACLU itself. *See infra* ¶ 25.

21. Carter, the ACLU Senior Field Manager, will audio record police pursuant to the ACLU program described above in paragraph 3 when authorized and directed to do so by Connell. Carter joins with the ACLU and Connell in seeking to expand and protect civil liberties by implementing the ACLU program of monitoring police by audio recording police in public places to advance police accountability. Carter has a

6

reasonable fear of prosecution under the Act, should she audio record police officers as prescribed by the ACLU program. *See infra* ¶ 25.

22. On two recent occasions, the ACLU would have audio recorded police officers performing their public duties in public places, but for the reasonable threat of prosecution by Alvarez under the Act. *See infra* ¶ 25. On both occasions, ACLU employees did monitor police, but without audio recording. Specifically:

(a) On June 10, 2010, an ACLU employee monitored a Chicago Police Department program of suspicionless container searches on Chicago's lakefront; and

(b) On November 8, 2010, Carter monitored a protest held in Chicago at the James R. Thompson Center concerning the killing of Iraqi Christians.

23. But for the reasonable threat of prosecution by Alvarez under the Act (*see infra* ¶ 25), Connell would authorize and direct Carter to audio record police, and Carter would audio record police, at planned and spontaneous events in Cook County in the future, including but not limited to the annual protest in spring 2011 in downtown Chicago in opposition to U.S. military policy in Iraq and Afghanistan.

24. The Act, by preventing the ACLU from implementing the ACLU program, directly and substantially prevents the ACLU from engaging in its important organizational activity of monitoring police conduct, and directly and substantially frustrates the ACLU's important organizational goal of advancing police accountability, and thereby protecting civil liberties.

D. **The ACLU's reasonable fear of prosecution**

25. For the following reasons, the ACLU, Connell, and Carter have a reasonable fear that if they implement the ACLU program, Alvarez will prosecute them pursuant to the Act:

(a) The Act on its face prohibits non-consensual audio recording of non-private conversations. *See infra* ¶ 32.

(b) The Illinois Legislature intended the Act to prohibit audio recording of non-private conversations with on-duty police. *See infra* ¶ 33.

(c) Alvarez is now prosecuting two cases under the Act in which civilians allegedly audio recorded on-duty police. *See infra* ¶ 39.

(d) In the original Complaint in this suit, the ACLU described the ACLU program of audio recording police as set forth above in paragraph 3. Alvarez has not in this litigation, or otherwise, indicated that the ACLU program does not violate the Act, or that Alvarez would not prosecute the ACLU or its employees for carrying out the ACLU program by audio recording police officers performing their duties in public. To the contrary, Alvarez stated in her motion to dismiss: "Plaintiff is precluded from audio recording any conversations without consent of all parties to such conversation, including encounters between law enforcement and citizens." Dkt. No. 19, at p. 7.

(e) In the last six years, at least seven other State's Attorneys have prosecuted at least nine other civilians under the Act for audio recording on-duty police, including one prosecution of civilians undertaking a program of monitoring on-duty police to promote police accountability. *See infra* ¶ 40.

(f) The Illinois criminal statutes impose criminal liability on persons who solicit criminal activity by other persons. *See, e.g.,* 720 ILCS 5/5-1 (providing that for purposes of the Illinois criminal statutes, a person is criminally liable when they are "legally accountable" for the criminal misconduct of another); 720 ILCS 5/5-2(c) (providing that a person has such liability if they "solicit" criminal acts by another person). Thus, if Connell authorizes and directs Carter to audio record police, and Carter does so, then Alvarez can prosecute Connell, as well as Carter.

(g) The Illinois criminal statutes impose criminal liability on private corporations that commit criminal activity directed by their top officials. *See, e.g.,* 720 ILCS 5/14-2 (prohibiting certain audio recording by a "person"); 720 ILCS 5/2-15 (providing that for purposes of the Illinois criminal statutes, a "person" includes a "private corporation"); 720 ILCS 5/5-4 (a)(2) (providing that for purposes of the Illinois criminal statutes, a corporation may be prosecuted for crimes authorized by high managerial agents). Thus, if Connell (the ACLU's Executive Director) authorizes and directs Carter to audio record police, and Carter does so, then Alvarez can prosecute the ACLU (a private corporation), as well as Carter and Connell.

(h) The Office of the Cook County State's Attorney repeatedly has prosecuted private corporations for criminal offenses. *See, e.g., People v. Universal Public Transp., Inc.*, 401 Ill. App. 3d 179, 192 (1st Dist. 2010) (corporation convicted for fraud); *People v. Bohne*, 312 Ill. App. 3d 705, 706 (1st Dist. 2000) (corporation indicted for tax impropriety); *People v. O'Neil*, 194 Ill. App. 3d 79, 88-89 (1st Dist. 1990) (corporation indicted for involuntary manslaughter).

### E.   A benefit of audio recording the police

26.   While most police officers perform their duties in a lawful manner, some police officers abuse their authority.

27.   In many cases, the only evidence of what happened during an encounter between police officers and civilians – including whether police officers and/or civilians behaved lawfully – will be the conflicting testimony of police officers and civilians.

28.   In many cases, audio recordings of police-civilian encounters will provide critical evidence that is not available from testimony, photographs, or silent videos.

29.   Indeed, on many occasions in the last decade, audio/video recordings made by civilians of police-civilian encounters have helped to resolve testimonial disputes about alleged police misconduct. Sometimes these audio/video recordings have tended to disprove allegations of police misconduct, and sometimes they have tended to prove allegations of police misconduct.

30.   Federal, state, and local law enforcement agencies have deployed tens of thousands of audio/video recording devices for purposes of documenting certain interactions between police officers and civilians. For example, many police squad cars are equipped with audio/video recording devices that document traffic stops. One law enforcement purpose of these audio/video recording devices is to deter and detect police misconduct, and to disprove false accusations of police misconduct.

31.   Indeed, as more fully explained below, *see infra* ¶¶ 35-36, the Illinois Eavesdropping Act exempts audio/video recordings made by police of conversations between police and civilians during traffic stops, in order to protect both the civilians and the officers from false testimony about these conversations. There is no constitutionally

10

valid basis for allowing police to make such audio recordings, while criminalizing the conduct of civilians who do so.

### F. The Illinois Eavesdropping Act

32. The Illinois Eavesdropping Act criminalizes the use of a machine to record certain conversations – even if the conversations are not private. Specifically:

(a) The Act provides that "[a] person commits eavesdropping when he . . . [k]nowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation . . . unless he does so . . . with the consent of all of the parties to such conversation . . . ." 720 ILCS 5/14-2(a)(1)(A).

(b) The Act defines "conversation" to mean "any oral communication between 2 or more persons *regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation*." 720 ILCS 5/14-1(d) (emphasis added).

(c) The Act defines "eavesdropping device" to include "any device capable of being used to hear or record oral conversation . . . ." 720 ILCS 5/14-1(a).

(d) The Act provides that a first offense of eavesdropping is a Class 4 felony, 720 ILCS 5/14-4(a), which is punishable by a sentence of imprisonment of one to three years, 730 ILCS 5/5-4.5-45.

33. The legislative purpose of extending the Act to non-private conversations was to criminalize civilian audio recordings of police officers performing their public duties in public places. Specifically:

(a) In 1986, in *People v. Beardsley*, 115 Ill. 2d 47 (Ill. 1986), the Illinois Supreme Court held that an element of the criminal offense created by the then-

11

existing version of the Act was "circumstances which entitle [the parties to a conversation] to believe that the conversation is *private* and cannot be heard by others who are acting in a lawful manner." 115 Ill. 2d at 53 (emphasis added). The *Beardsley* case involved a motorist who audio recorded a police officer during a traffic stop. *Id.* at 48-49. The Court held that this motorist did not violate the Act, because the conversation was not private.

          (b)       Eight years later, in 1994, Illinois amended the Act with Public Act 88-677, also known as House Bill 356. This new law adopted the current definition of "conversation," to wit: "any oral communication between 2 or more persons regardless of whether one or more of the parties intended their communication to be of a private nature under circumstances justifying that expectation."

          (c)       On May 19, 1994, during Senate floor debate regarding this bill, the Senate sponsor stated that the bill had earlier passed out of that chamber "to reverse the Beardsley eavesdropping case . . . ." *See* Tr. at p. 42.

      34.       In this regard, the current Illinois Eavesdropping Act is abnormal. The federal ban on audio recording certain conversations, and the vast majority of such state bans, extend only to private conversations – as the Illinois Eavesdropping Act did, before it was amended in 1994 for the purpose of reversing the *Beardsley* decision. Only a handful of states have extended their eavesdropping bans to non-private conversations. And most of those states, unlike Illinois, do not extend their prohibitions to open and obvious recording, as opposed to secret recording.

12

35. The Illinois Eavesdropping Act exempts certain audio recordings by law enforcement officials of conversations between law enforcement officials and members of the general public. Examples include:

(a) Conversations recorded "simultaneously with the use of an in-car video camera" during "traffic stops, pedestrian stops," and similar events. 720 ILCS 5/14-3(h).

(b) Conversations with a civilian who is "an occupant of a police vehicle." 720 ILCS 5/14-3(h-5).

(c) Conversations recorded "during the use of a taser or similar weapon or device" if the device is equipped with audio recording technology. 720 ILCS 5/14-3(h-10).

36. The legislative purpose of the statutory exemptions in the preceding paragraph is to deter and detect police misconduct, and rebut false accusations of police misconduct. Specifically:

(a) In 2009, Illinois amended the Act with Public Act 96-670, also known as House Bill 1057. This new law amended the foregoing exemption (h) to its current form, and created the foregoing exemptions (h-5) and (h-10).

(b) On April 2, 2009, during House debate regarding this bill, the House sponsor stated as follows the legislative purpose:

> When there's audio, then there is no question as to what was said or what wasn't said and if someone is accused of doing something or saying something, this is the proof that they would have as a citizen also, not only for protection of law enforcement, but for the citizens to have the proof in hand as to what actually happened at that particular [moment].

13

*See* Tr. at pp. 83-84. *See also id.* at p. 84 (stating that such audio recording provides "protection for both" police and civilians).

37. Police officers performing their public duties in public places, and speaking at a volume audible to the unassisted human ear, have no reasonable expectation that the words they speak are private and will not be recorded, published, and disseminated.

**G.** **Application of the Act to audio recording the police**

38. The Act is not moribund, and it is commonly enforced in the context at issue here in Cook County, as well as other Illinois counties. As intended by the Illinois General Assembly, police officers and prosecutors have used the Act to arrest and prosecute members of the general public who made audio recordings of police officers performing their public duties in public places and speaking at a volume audible to the unassisted human ear.

39. For example, defendant the Cook County State's Attorney currently is prosecuting at least two different alleged violations of the Act:

(a) Alvarez currently is prosecuting a civilian for allegedly violating the Act by audio recording a police officer who was arresting him in a public place. The civilian moved to dismiss, arguing that the application of the Act to his audio recording violated the First Amendment. Alvarez successfully opposed the motion. The eavesdropping charges are now pending. *See People v. Drew*, No. 10-cr-4601 (Cook County Circuit Ct., charges filed Dec. 15, 2009).

(b) Alvarez currently is prosecuting another civilian for allegedly violating the Act by audio recording on-duty police officers. According to the testimony

14

elicited by Alvarez's office at the preliminary hearing, the two internal affairs officers at the time were interviewing the civilian regarding her allegation that another police officer had committed misconduct against her. *See People v. Moore*, No. 10-cr-15709 (Cook County Circuit Ct., charges filed Aug. 31, 2010).

40. At least seven other State's Attorneys in Illinois have brought eavesdropping charges under the Act against at least nine other civilians who made audio recordings of police officers performing their public duties in public places:

(a) The Champaign County State's Attorney in 2004. *See People v. Thompson*, No. 04-cf-1609 (6th Judicial Circuit Ct.).

(b) The Winnebago County State's Attorney in 2005. *See People v. Wight*, No. 05-cf-2454 (17th Judicial Circuit Ct.).

(c) The Will County State's Attorney in 2006. *See People v. Babarskas*, No. 06-cf-537 (12th Judicial Circuit Ct.).

(d) The Crawford County State's Attorney in 2009. *See People v. Allison*, No. 09-cf-50 (2nd Judicial Circuit Ct.).

(e) The DeKalb County State's Attorney in 2010. *See People v. Parteet*, No. 10-cf-49 (16th Judicial Circuit Ct.).

(f) The Kane County State's Attorney in 2010. *See People v. Biddle*, No. 10-cf-421 (16th Judicial Circuit Ct.).

(g) The Vermillion County State's Attorney in 2010. *See People v. Fitzpatrick*, No. 10-cf-397 (5th Judicial Circuit Ct.).

41. The foregoing prosecution by the Champaign County State's Attorney targeted civilians who, for purposes of advancing police accountability, had undertaken a

program of audio recording on-duty police officers performing their jobs in public places.

42. In the face of felony charges under the Act, several of the foregoing criminal defendants pled guilty to reduced misdemeanor charges of attempted eavesdropping.

**H.     Necessity of and entitlement to injunctive relief**

43. The ACLU, Connell, and Carter are prepared and intend immediately to undertake the aforementioned program of making audio recordings of police officers in public.

44. The ACLU has refrained from audio recording police officers on two occasions since June 2010. *See supra* ¶ 22.

45. The ACLU, Connell, and Carter have a reasonable fear that if they make audio recordings of police officers, Alvarez will prosecute the ACLU, Connell, and Carter for violation of the Act. This reasonable fear is based on the factors set forth above at paragraph 25.

46. Unless enjoined by this Court, Alvarez can – and has not indicated that she would not – prosecute, pursuant to the Act, the ACLU, Connell, and Carter for carrying out the ACLU program of audio recording police officers performing their public duties in public places.

47. The ACLU, Connell, and Carter are suffering, and will continue to suffer, irreparable harm as a result of refraining from carrying out the aforementioned program of audio recording police officers carrying out their public duties in public places.

48. The ACLU, Connell, and Carter have no adequate remedy at law.

16

## V. CLAIM FOR RELIEF

49. The allegations of paragraphs 1 through 48 are realleged and incorporated by reference as if fully set forth herein.

50. The Act violates the First Amendment to the U.S. Constitution, as applied to the audio recording of police officers, without the consent of the officers, when (a) the officers are performing their public duties, (b) the officers are in public places, (c) the officers are speaking at a volume audible to the unassisted human ear, and (d) the manner of recording is otherwise lawful.

51. Among other things, this application of the Act is unlawful because:

    (a) The Free Speech Clause of the First Amendment protects the right to gather, receive, record, and disseminate the information at issue herein.

    (b) The Free Speech Clause and the Petition Clause of the First Amendment protect the right to gather, receive, record, and disseminate the information at issue herein for purposes of using that information to petition government for redress of grievances.

    (c) The Free Speech Clause and the Free Press Clause of the First Amendment protect the right to gather, receive, or record the information at issue herein for purposes of disseminating and publishing that information to other people.

## VI. PRAYER FOR RELIEF

WHEREFORE, the ACLU, Connell, and Carter respectfully request the following relief:

    A. Entry of a declaratory judgment holding that the Act violates the First Amendment, as applied to the audio recording of police officers, without the consent of

the officers, when (a) the officers are performing their public duties, (b) the officers are in public places, (c) the officers are speaking at a volume audible to the unassisted human ear, and (d) the manner of recording is otherwise lawful.

B.      Entry of a preliminary injunction, and then a permanent injunction, that enjoins defendant the Cook County State's Attorney from prosecuting plaintiffs the ACLU, Connell, and Carter, and other ACLU employees as directed by Connell, under the Act for audio recording police officers, without the consent of the officers, when (a) the officers are performing their public duties, (b) the officers are in public places, (c) the officers are speaking at a volume audible to the unassisted human ear, and (d) the manner of recording is otherwise lawful.

C.      Award the ACLU, Connell, and Carter their reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

D.      Award such other and further relief as this Court may deem just and proper.

DATED:  July 10, 2012

Respectfully submitted:

s/      Richard J. O'Brien
_____
Counsel for plaintiff

| | |
|---|---|
| HARVEY GROSSMAN | RICHARD J. O'BRIEN |
| ADAM SCHWARTZ | LINDA R. FRIEDLIEB |
| KAREN SHELEY | ROBERT LEIGHTON |
| Roger Baldwin Foundation of ACLU, Inc. | MATTHEW D. TAKSIN |
| 180 N. Michigan Ave. Suite 2300 | Sidley Austin LLP |
| Chicago, IL 60601 | One South Dearborn |
| (312) 201-9740 | Chicago, IL 60603 |
| | (312) 853-7000 |